UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIALOGO, LLC and <br> DIRECT MERCHANTS S.A., INC., <br><br> Plaintiffs, <br><br> v. <br><br> LILLIAN SANTIAGO BAUZÁ, <br> EL DIALOGO, LLC, and <br> FRANCISCO JAVIER SOLÉ, <br><br> Defendants. | CIVIL ACTION NO. 05-30076-MAP |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR SHORT ORDER OF NOTICE and FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Dialogo, LLC ("the Company" or "Dialogo, LLC") and Direct Merchants S.A., Inc. ("DMSA") (collectively, "Plaintiffs") hereby, on an emergency basis, move for a temporary restraining order and/or a preliminary injunction against Defendants Lillian Santiago Bauzá and El Dialogo, LLC ("collectively, "Defendants"). At this time, Defendants will publish another edition of the newspaper "El Dialogo" on April 1, 2005, which will cause irreparable harm to Plaintiffs. Accordingly, Plaintiffs respectfully request expedited consideration of this motion for emergency injunctive relief.

**INTRODUCTION**

This is an action brought under the Lanham Act, 15 U.S.C. § 1125(a), and pendant state law claims against Defendants Lillian Santiago Bauzá, El Dialogo, LLC, and Francisco Javier Solé for the Defendants' unauthorized appropriation and use of Plaintiff Dialogo, LLC's mark

1

"El Dialogo" and its assets, equipment, employees and goodwill.

In June, 2004, Plaintiff DMSA and Defendant Lillian Santiago Bauzá entered into two agreements to create the company, Dialogo, LLC, which was formed to publish the Spanish-English newspaper titled "El Dialogo." From July 1, 2004 until February 2005, the Company (with Ms. Santiago Bauzá serving as the publisher) published El Dialogo and distributed that newspaper in Western Massachusetts. Without notice, in February, 2005, Ms. Santiago Bauzá drafted a letter to DMSA stating that she was unilaterally closing down the Company.

Defendant Santiago Bauzá then took virtually all of the assets and property of the Company, including trade secrets, proprietary information, goodwill, equipment, and employees, moved them to new office space and published a false, imitation newspaper titled "El Dialogo." Defendant Santiago Bauzá subsequently established a new company, El Dialogo, LLC, to publish this newspaper. As set forth below, Defendants' actions have caused (and continues to cause) Plaintiffs to suffer irreparable harm.

## BACKGROUND

In May and early June of 2004, Lillian Santiago Bauzá ("Santiago Bauzá") approached Gerry Pike, Managing Director of DMSA, to discuss the possibility of engaging in a venture with DMSA. Affidavit of Gerry Pike ("Pike Aff.") ¶ 3. The purpose of the venture was to develop a Spanish language and bilingual print and media business. Id. at ¶ 4.

In early June 2004, Ms. Santiago Bauzá wanted a contract to set forth the obligations of the parties. In an e-mail sent in early June, Ms. Santiago Bauzá stated:

> I need to come to some understanding with you before we enter this new adventure in both our professional and business lives. I really need a tangible contract that we can start building from.

Ms. Santiago Bauzá continued, "I am moving on with the plan I presented to you. I am working

very hard to have a new Dialogo by July 1st." Pike Aff. ¶¶ 5, 6 and Ex. 1.

Later, on June 9, 2004, Gerry Pike of DMSA sent to Ms. Santiago Bauzá a copy of the organizational documents for the formation of the new company, Dialogo, LLC between DMSA and Ms. Santiago Bauzá. These documents included a Venture Agreement and an Operating Agreement and Members Agreement (Dialogo, LLC) for the new company. Pike Aff. ¶ 9. On June 9, Ms. Santiago Bauzá executed these documents on her own behalf and returned them to DMSA by facsimile. Id. at ¶ 10.

As contemplated in the Venture Agreement, and as set forth in the Operating Agreement and Members Agreement (Dialogo, LLC) ("the Operating Agreement"), DMSA and Ms. Santiago Bauzá entered into the Operating Agreement to form a limited liability company called Dialogo, LLC. Pike Aff. ¶ 11. Under the Operating Agreement, DMSA agreed to make a capital contribution of up to $50,000 and Ms. Santiago Bauzá made a capital contribution of $1.00. Id. As set forth in the Operating Agreement, the membership interests of the Company are as follows: DMSA - 51%, Ms. Santiago Bauzá - 49%. Id.

Under the Venture and Operating Agreements, Ms. Santiago Bauzá and DMSA formed a joint venture and agreed that, among other things:

- They would create a limited liability company called Dialogo LLC for the joint venture and that Ms. Santiago Bauzá had a 49% membership interest and DMSA had a 51% membership interest;

- The Company will be managed by a board of directors, consisting of two representatives from DMSA and one designated by Ms. Santiago Bauzá;

- DMSA and LSB [Lillian Santiago Bauzá] shall through the Company jointly pursue the Spanish language and bilingual print and media business;

- Ms. Santiago Bauzá shall devote her efforts exclusively to the Company, and she shall not provide "such services, directly or

3

> indirectly for itself [sic] or any other entity or person to the extent it relates to the Business;"

- They will keep confidential the proprietary information of the Company.

Pike Aff. ¶¶ 12-16, Exs. 4 and 5. Shortly after Ms. Santiago Bauzá agreed to the terms of the Operating and Venture Agreements, she wrote an e-mail to Gerry Pike of DMSA to provide an update of the Company. In this e-mail, she plainly stated, "All new business are [sic] under Dialogo LLC contract." Pike Aff. ¶ 18 and Ex. 6.

On or about July 1, 2004, the Company published and distributed the first issue of its bilingual newspaper, **El Diálogo**. Pike Aff. ¶ 19. It published numerous issues after that, on a bi-weekly basis, from July, 2004 until February, 2005. Id. From July, 2004 through February, 2005, the Company developed the trademark and trade name "El Diálogo." Through its development and use of the mark/name of "El Diálogo," the Company created substantial goodwill in this asset. Id.

During this period, the Company operated as set forth in the Venture Agreement and Operating Agreement. Pike Aff. ¶ 21. In August, 2004, the Company engaged the services of Ana Morales, a free lancer, for, among other things, the creation of a website for the newspaper, **El Diálogo**. The website, www.eldialogo.com, became operational on or about October 15, 2004. Id. at ¶ 20.

On or about January 6, 2005, because of the Company's initial success, it hired Francisco Javier Solé as the Director of Advertising Sales for the Company pursuant to an employment agreement. Pike Aff. ¶ 22. Under that agreement, Mr. Solé agreed, among other things, that he would not directly or indirectly compete with the business of the Company and would keep confidential the Company's proprietary information. Id.

4

In early February, Ms. Santiago Bauzá sent Gerry Pike of DMSA an e-mail indicating the continuing positive momentum of the business and stated:

> Gerry, the newspaper is on an incredible moment to grow, since Francisco arrived we had implemented many systems that are going to help us get the accounts we need . . . .

Id. at ¶ 23 and Ex. 8.

In mid-February, the Managing Director of DMSA (Gerry Pike) was nearly completely incapacitated and could not monitor the developments at the Company. Pike Aff. ¶ 24. At this time, Ms. Santiago Bauzá was preparing to take the assets of the Company and open up under a new and deceptively similar name ("El Dialogo, LLC") without DMSA. Id. at ¶ 26. She drafted a letter dated February 17, 2004 (that she did not send to DMSA until more than a week later) to inform DMSA that she was unilaterally closing down the business of the Company (which she had no authority to do). Id. at ¶ 27 and Ex. 10.

In February 2005, Ms. Santiago Bauzá physically moved the employees, assets, and equipment of the Company out of its location at Suite 405, 250 Open Square Way in Holyoke to a new location located in the same building at Suite 120, 4 Open Square in Holyoke. Pike Aff. ¶ 31. Mr. Solé discontinued to work for the Company and went to work for Ms. Santiago Bauzá's new business. Id. at ¶ 25.

On each of March 1, 2005 and March 15, 2005, Ms. Santiago Bauzá published an edition of a newspaper styled and titled "**El Diálogo.**" Pike Aff. ¶ 32. As reflected in the March 15, 2005 false, imitation, edition of **El Diálogo,** the newspaper is virtually unchanged from the previous editions of **El Diálogo**. Id. at ¶ 37.

On March 15, 2005, Ms. Santiago Bauzá established a new Massachusetts limited liability company called El Dialogo, LLC (hereinafter "Newco"). Pike Aff. ¶ 33. The

5

Certification of Organization of Newco states that, "[t]he specific nature of the business of the Limited Liability Company is to operate, run, and publish a newspaper and conduct any other lawful business, trade, purpose or activity, which the members may determine to be beneficial to the company." Id. at ¶ 34. Of course, this business is virtually identical to the business of the Company. See Pike Aff. ¶ 4 and Ex. 4, at 6.

## ARGUMENT

The familiar requirements for obtaining preliminary injunctive relief are: (i) a likelihood of success on the merits; (ii) irreparable injury to Plaintiff absent injunctive relief; (iii) which injury outweighs any harm to Defendant resulting from an injunction; and (iv) no harm to the public interest. *See, e.g., I.P. Lund Trading v. Kohier Co.*, 163 F.3d 27, 33 (1st Cir. 1998); *Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989); *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988).

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

   A.   Defendant Santiago Bauzá breached her contracts and fiduciary duties to Diálogo, LLC, and misappropriated proprietary information and trade secrets from Diálogo, LLC.

The Operating Agreement obligated Ms. Santiago Bauzá to take all actions "for the Company in connection with the business of the Company" and to keep all company information "confidential." Pike Aff., Ex. 4, at 22. The contract also prevents her from disclosing "to any person or entity, directly or indirectly, any Proprietary Information (as hereinafter referred) relating to the Company's business without the prior written consent of the LLC." Id. The Operating Agreement defines "Proprietary Information" as "all advertiser and subscription lists, advertiser and subscription prospects, marketing information and data, product information, strategic or technical information, financial information, supplier information, billing rates and

6

advertiser provided information, documents and data." *Id.* When Ms. Santiago Bauzá took all of Diálogo, LLC's business records, property, contracts and customers to her new business, she clearly violated this provision.

This taking was also a theft of Diálogo, LLC's trade secrets. A trade secret is defined in Mass. G.L c. 266, Sec. 30, as "anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement." The information taken by Ms. Santiago Bauzá is "management information". "Further, confidential information, even if not truly a trade secret, and even if there is no ascertainable damage, is entitled to protection by injunction." *Transkaryotic Therapies, Inc. v. Bain & Co., Inc.*, 14 Mass.L.Rptr. 397, 2002 WL 799694 *3 (Mass. Super. 2002); *see also Warner-Lambert Company v. Execuquest Corporation*, 427 Mass. 46, 50 (1998).

Ms. Santiago Bauzá's conduct also constituted a breach of her fiduciary duty to Diálogo, LLC and her partner, DMSA. "Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." *Donahue v. Rodd Electrotype Co. of New England, Inc.*367 Mass. 578, 593 (1975).

B.  Defendants are infringing Diálogo, LLC's common-law trademarks.

Section 43(a) of the Lanham Act creates a federal cause of action for infringement of an unregistered trademark and such a mark should thus receive essentially the same protection as those that are registered. *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 780-81 (1992) (Stevens, J., concurring). Thus, the likelihood of confusion test for infringement is the same for

7

registered and unregistered marks. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1199-1201 (9th Cir. 1979); 4 J. Thomas McCarthy, *McCarthy on Trademarks* § 27:18 (4th ed. 2003).

Diálogo, LLC must therefore only prove three elements: (1) that it "uses and thereby 'owns', a mark"; (2) that Defendants are "using the same or a similar mark"; and (3) that such "use is likely to confuse the public, thereby harming the plaintiff." *Anheuser-Busch, Inc. v. Caught-On-Bleu, Inc.*, 288 F. Supp. 2d 105, 113-14 (D.N.H. 2003).

Defendants are using the identical name, "El Diálogo", and the identical format, layout, and appearance for their new newspaper as was used for the El Diálogo paper published by Diálogo, LLC. Advertisers and readers cannot distinguish the new paper from the genuine El Diálogo.

II.   DEFENDANTS CONDUCT THREATENS THE VERY EXISTENCE OF DIALOGO, LLC, WHICH IS RECOGNIZED FORM OF IRREPARABLE HARM.

The First Circuit has "recognized that the loss of a unique or fleeting business opportunity can constitute irreparable injury." *Starlight Sugar, Inc. v. Soto* 114 F.3d 330, 332 (1st Cir. 1997); *see also Hyde Park Partners v. Connolly,* 839 F.2d 837, 853 (1st Cir.1988) (injunction may be appropriate where timing, in tender offer context, is crucial); *see also Baccarat,* 102 F.3d at 18-19 ("[A] plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business.... If [it] suffers a substantial injury *that is not accurately measurable* or adequately compensable by money damages, irreparable harm is a natural sequel.") (citations omitted) (emphasis added). By jeopardizing the existence of Diálogo, LLC, and threatening to ruin forever Diálogo, LLC's opportunity to publish a successful Spanish language newspaper called El Diálogo, Defendant's conduct threatens irreparable harm unless enjoined.

III.  THE BALANCE OF HARMS FAVORS PLAINTIFFS.

The injunction would only require Defendants to stop using property that is not theirs, to return that property to its rightful owner and to stop using a name and format for their paper that is confusingly similar to those owned by the Plaintiffs.

IV.  THE PUBLIC INTEREST FAVORS PREVENTING PUBLIC CONFUSION AND ENSURING THAT THE GENUINE EL DIÁLOGO IS PUBLISHED.

The public interest here involves honoring the contract rights and intellectual property rights of Diálogo, LLC, and preventing the public by being confused by a competing publisher publishing a counterfeit version of El Diálogo.

## CONCLUSION

For the foregoing reasons, the Court should grant the emergency application for temporary restraining order and motion for preliminary injunction.

                                    DIALOGO, LLC and
                                    DIRECT MERCHANTS S.A., INC.

                                    By its attorneys,

Dated:  March 30, 2004              _____
                                    George P. Field (BBO No. 164520)
                                    Seth W. Brewster (BBO No. 551248)
                                    Attorneys for Plaintiffs
                                    VERRILL DANA, LLP
                                    One Boston Place
                                    Suite 2330
                                    Boston, MA  02108
                                    (617) 367-0929
                                    gfield@verrilldana.com
                                    sbrewster@verrilldana.com

P:\sbrewster\Dialogo\memsuppmottroandpreliminj.doc