UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DIALOGO LLC, and<br>DIRECT MERCHANTS, S.A., INC.<br>    Plaintiffs<br>v<br><br>LILLIAN SANTIAGO BAUZA,<br>EL DIALOGO, LLC, and<br>FRANCISCO JAVIER SOLE<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 05-30076MAP |

**AFFIDAVIT OF LILLIAN SANTIAGO BAUZA IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Lillian Santiago Bauza, under oath do hereby depose and say:

1.  I am a Defendant in this action.

2.  I have reviewed the complaint, and the affidavits of Mr. Pike and Ms.Romero that
    were filed in this action.

3.  In September of 2003, my husband and I, along with another couple formed a
    corporation known as Dialogo Bilingue, Inc., a Massachusetts corporation. The
    purpose of the corporation was to produce a bilingual newspaper to serve the
    Latino communities needs in the greater Holyoke area

4.  The newspaper was produced under the name of 'Dialogo Bilingue'.  The first
    issue was published in June 2003.  It began as a monthly publication.  In
    February 2004, it became a bimonthly.

5. The paper that was produced in 2003 is the same in all respects, i.e., bilingual format, layout, content, and advertisements, as the newspaper produced today, except for the name on the masthead.

6. The content, structure and format of the newspaper, as well as all advertisers, were established by me shortly after I began running the newspaper in June 2003. This was about one year before I became involved with plaintiff DMSA or Gerry Pike.

7. Dialogo Bilingue published this newspaper until approximately the middle of June, 2004. At that time, the other 50% shareholders decided to withdraw from the corporation. In May of 2004, the newspaper was not running in the black, and I was forced to use my own personal funds to pay creditors to keep the paper running.

8. I continued to publish the newspaper at that time, prior to any involvement with Mr. Pike or DMSA.

9. In April of 2003, I, with my former partners, purchased the domain name "Dialogo". Then, with my own funds, on June 10, 2004, I purchased the domain name 'El Dialogo'. It was my intent at that time to use that name for future publications of the newspaper. (See Network Solutions and Register Site e-mail confirmations and invoices attached as Exhibit A).

10. In June of 2004, I attempted to obtain Bank financing in the form of a line of credit in the amount of $25,000-$50,000, that would allow the newspaper to continue being published.

11. At this same time, in June of 2004, I was approached by Mr. Pike of DMSA, who was known to me, as he and my husband had other business dealings, not related to the newspaper.

12. Mr. Pike proposed that rather than using a bank, he/DMSA would provide the financing that I was seeking.

13. I told him that I wanted to start El Dialogo as soon as possible, and he proposed the following; (a) he would establish a capital account with "starting capital" of $50,000.00, from which to draw from as needed, (b) I would have exclusive control over the operation of the business, editorial issues, and employment issues, and (c) because of his financial investment, DMSA would have a 51% interest in the business and I would have a 49% interest in the business.

14. Mr. Pike also insisted that I devote my full time and energies to the newspaper and convinced me that I should resign my position as Director of Employee Assistance Programs at Holyoke Medical Center, which I did in reliance on his promises to provide financial support for the venture.

15. I agreed to this proposal in June of 2004 by signing the Venture Agreement and Operating Agreement attached to the Complaint. My only contribution to the venture was a capital contribution of one dollar. I did not transfer or assign to the LLC any assets of my existing newspaper business including the "El Dialogo" name, advertiser lists or any other personal property or proprietary information which I owned when I was first approached by Mr. Pike.

16. When I started this relationship with DMSA and Mr. Pike, I already had in place rental space, office equipment, and supplies which I was using to put out the newspaper.

17. Mr. Pike did purchase a computer with software to run the newspaper. Unfortunately, the software was inadequate. I had to expend $1,000 to solve the problem. Mr. Pike/DMSA never contributed or purchased any other equipment or supplies for the newspaper.

18. Mr. Pike urged me to move into space in the same complex which was already occupied by a venture he was involved in with my husband. I agreed to do so on order to save costs.

19. When this relationship started with Mr. Pike, I already had established regular advertisers including Balise Auto, Acuna Real Estate and Holyoke Health Center. I also had ongoing contracts with a printer and a distributor. I also had a graphic artist and salesperson as employees. After the relationship with DMSA began, I continued to publishe the newspaper with the same advertisers, vendors and employees.

20. Although DMSA had promised to provide starting capital of $50,000 and the Operating Agreement so provided, neither Mr. Pike nor DMSA ever provided any starting capital for the business or established any capital account to draw upon.

21. From the very beginning of the joint venture, I had problems with DMSA paying the bills. I had to use my own money ($500.00) to set up an operating account and expend some additional costs because neither Pike nor DMSA would pay them. I had a conversation with Mr. Pike at that time and inquired when he would be setting up the account with the $50,000, so that we could pay our bills in a timely fashion. He was non-committal. He informed me that he would only pay rent for the newspaper through the end of September. I told him that to do so was contrary to our Agreement. He argued that by October of 2004, the business should be self-sufficient and not require his further financial support. This was contrary to what he had promised and what was written in the agreements which I had entered into with DMSA.

22. On or about October of 2004, I directed one of my employees to construct a web site, using the domain name I had purchased the previous year.

23. The format and content of the newspaper during this time, other than its name,

had not changed.

24. Between July and the end of September 2004, Mr. Pike and I exchanged
numerous e-mails and had many telephone conversations. Though the
substance of these communications were varied, they all inevitably also included
my queries as to where was his promised financial contribution, and the fact that
the newspaper was constantly running between $5,000-$7,000 in debt.

25. Because the newspaper was unable to pay its debts, I was constantly shuffling
payments to various vendors to keep everyone happy. I was able to prevail upon
my banker to offer the newspaper overdraft protection. Mr. Pike's response to my
complaints was always that he felt the newspaper should be self-sufficient by
October of 2004. At this point in time, DMSA/Mr. Pike had contributed
approximately $18,618.00 toward rent, payroll and accounting services. (See
DMSA attached as Exhibit B) Neither Mr. Pike nor DMSA has paid any expenses
since December 21, 2004.

26. By October 2004, no capital account with funds had been set up as promised.
Despite my assertions, Mr. Pike refused to establish the funds he said he would
to financially support the newspaper. However, true to his previous promise, in
October of 2004, Mr. Pike ceased paying salaries or rent, despite the fact that the
newspaper had absolutely no funds to do so.

27. Mr. Pike was always aware of the financial condition of the newspaper, as I
would forward to him, on a monthly basis, all financials related to the newspaper,
including revenue and accounts payable.

28. In October of 2004, I spoke with and wrote to Mr. Pike about the cessation of
funds to pay employees. He repeated what he had said before, and claimed now
that he was not obligated to contribute those funds. I explained to him that the
newspaper could not exist much longer under these circumstances and therefore
the deficits would need to be taken care of if the newspaper were to survive. He
agreed to do so, yet with the exception of a check for $900, the required funds

never arrived.

29. At the beginning of November 2004, I wrote a letter to Mr. Pike in which I indicated that the Joint Venture was not working because he/DMSA was not living up to its terms, and as a result, the newspaper was not able to pay its creditors or its employees despite the increase in circulation. I told him that the newspaper could not continue to operate unless he immediately made the necessary contributions. I also suggested to him that the relationship should cease.

30. From August through February of 2004, I either spoke or met with Mr. Pike 8-10 times to discuss the need for his living up to his part of the venture by supplying his promised $50,000 contribution. Each and every time, Mr. Pike either ignored my requests or refused to respond.

31. I again wrote to Mr. Pike about arrearages on December 15, 2004. I heard no response, and no monies were forthcoming. (See e-mail attached as Exhibit C.)

32. In the beginning of February, I recommended that a Mr. Sole be hired to improve the advertising sales of the newspaper. Mr. Pike met with Mr. Sole and agreed to hire him. He was to be paid in part as an employee with a salary, and partly on commissions. When he was hired, I explained to Mr. Pike that the newspaper did not have the funds to pay Mr. Sole. Mr. Pike agreed to pay him $2,000 per month.

33. Mr. Sole was never paid, and on February 28, 2005 he resigned. (See letter of resignation attached as Exhibit D)

34. During the month of February, we also lost the services of Gabriela Romero. Her work product had seriously deteriorated to the point where it was potentially causing a loss of several of our advertisers.

35. With the loss of Romero and the resignation of Sole, it became clear to me that the newspaper and its relationship with DMSA was not going to survive.

36. I could not risk incurring further financial obligations for the newspaper knowing that DMSA and Mr. Pike were clearly not interested in contributing further funds, despite the fact that they had never put up the amount they had agreed to in the first place, or were even making an effort to reduce the deficits the newspaper was experiencing.

37. Furthermore, the unavailability of cash flow required that I use the bank overdraft available to get the printer paid for the February edition. (The bank is still owed $700.00.) I was also required to cease the newspaper's relationship with The Valley Advocate, which was our sole means of distribution.

38. I told this to Mr. Pike when I met with him in mid January of 2005. Once again there was no willingness on his part to comply with his contractual obligations of the joint venture. I told him the relationship needed to come to an end. I told him that one or the other needed to buy the other out. His response was "what do I want with a newspaper"?

39. Therefore, in early March 2005, I informed Mr. Pike that it was impossible to continue the joint venture and that I was ceasing operations of the newspaper to avoid further debt. (see my letter attached as Exhibit E.)

40. I returned or made available all assets, which DMSA had purchased. I have not taken any salary since December 1, 2004. I have not taken any dividends or profits form the joint venture. Given that the newspaper was always running at a loss, this would have been impossible.

41. On or about March 10, 2005, I took out a loan in my own name, in the amount of $5,000 to pay some of the financial obligations that the newspaper had and which DMSA refused to pay. (a) I paid Francisco Sole $2,000 in wages for the work he did for the newspaper in January and February 2005; (b) I paid Ana

Morales (an employee) $1,450 for wages due; (c) I paid One Stop Technology $750 for web site work it was owed; and (d) I paid $625 in wages to our graphic artist Javier.

42. The current accounts payable stands at approximately $7219.  (See accounts payable report attached as Exhibit F).

43. I still remain committed to serving the Latino community, and with that in mind I did form a new company, under Massachusetts law, using the name El Dialogo LLC. The same name that was the domain name I had established almost two years earlier. The newspaper that I now publish is the same as the one I published before my involvement with Mr. Pike or DMSA.

44. I have a registered trademark for El Dialogo recorded here in Massachusetts which was certified by the Commonwealth on March 21, 2005. (See Exhibit G). It is my understanding that having registered the trademark in my name, I am presumed to be the owner.  I am not aware of any trademarks registered by Dialogo LLC in the Commonwealth.

45. To my knowledge, Dialogo LLC is not registered to do business in the Commonwealth of Massachusetts.

46. Upon information and belief, Ms. Romero has been offered a position by Mr. Pike or DMSA in the possible continuation of Dialogo LLC. Her assertions that I am using Dialogo assets in my new business are false.

47. Neither my company nor I employ Francisco Sole.

48. I was unaware of any illness on the part of Mr. Pike. Since our meeting in mid January produced no different result than what had been the history of our relationship since September, my decision to close the business would not have changed. Secondly, Mr. Pike was aware of the tenuous nature of the continued existence of the newspaper from our ongoing communications right through mid

February.

49. All advertisers now, are the ones we had with Dialogo Bilingue, Inc., there are no new ones.


Signed under the pains and penalties of perjury this ___ day of April, 2005.




LILLIAN SANTIAGO BAUZA


## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

On this 6th day of April, before me, the undersigned notary public, personally appeared Lillian Santiago Bauza and, proved to me through satisfactory evidence of identification, which was a Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.


Tarena N. Hines, Notary Public

My Commission Expires:  December 24, 2010


CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 4/6/05

EXHIBIT A

**E U D O R A** **Web Mail**

mfrau@eudoramail.com    [ LOG OUT ]  (Not you? click here)                    powered by: **LYCOS** 

- **Mail Home**

  **MailBox Folders**

  ------------

Compose
Address Book
Options
System Status

**MailBox: Read Mail**

[ REPLY ] [ REPLY ALL ] [ FORWARD ] [ DELETE ]  [ –Move to Folder– ◆ ]

[          ] [          ]          ]

**Date:** Thu, 17 Apr 2003 16:47:41 -0400
**From:** "RegisterSite.com Support" <support@registersite.com>
                [          ] [          ]          ]
**Subject:** Account for dialogo successfully created!
**To:** "Manuel Frau-Ramos" <mfrau@eudoramail.com>

Text Size:

Dear Manuel,

Thank you for creating an account at RegisterSite.com.
We look forward to meeting your domain name services needs.

Your username is: dialogo

You can manage your account and begin registering domain names by logging
in to your control panel at                              . If
you have any problems or questions, feel free to contact our support
team
at                         . We're available 24 hours a day to answer all
your questions.

Sincerely,
RegisterSite.com Support

"High on Service, High on Quality"
------------------------------
*A service of Nitin Networks*

[ REPLY ] [ REPLY ALL ] [ FORWARD ] [ DELETE ]  [ –Move to Folder– ◆ ]

**AT&T** Wireless

» **Lycos Worldwide**



**RegisterSite.com**
Nitin Networks
2 Tamarack Circle
Fishkill, NY 12524
**Email**: support@registersite.com

**Billed To:**
Manuel Frau-Ramos
Manuel Frau-Ramos
PO Box 572
Amherst, MA 01004-0572

**Date:** 2003-04-17 04:53:02 PM
**Ref. No.:** VEMA25977927
**Username:** dialogo

| Item Description | # Yrs. | Total |
|---|---|---|
| dialogobilingue.com <br> - Premium Plan ($35/yr) | 2 | $70 |
| | Subtotal: | $70 |
| | Total: | $70 |

*Thank you for choosing*
*RegisterSite.com!*

DIALOGO
HOLYOKE O3

NetworkSolutions

  

**4**
ORDER
COMPLETE

# THANK YOU FOR YOUR ORDER

**PLEASE PRINT THIS PAGE AS A COPY OF YOUR RECEIPT**

## YOUR LOGIN INFORMATION

**This is your only record of your password**

You will receive an e-mail confirmation that your order is complete in approximately 24 hours.

**User ID: eldialogonews**          **Password: opensquare**

Start managing your account now by logging in to Account Manager.

[ LOG IN ]

## YOUR ORDER SUMMARY

| | | **Your Price ($US)** |
|---|---|---|
| **Order Number: 173043927  Date: 06/10/2004** | | |
| **Account Number: 28939808** | | |
| **Credit Card:** MASTERCARD xxxxxxxxxxxx0912 | | |
| **Domain Name: eldialogi.com** | 3 Years - Save 28% | $74.97 |
| +Private Registration | 3 Years | $27.00 |
| **Domain Name: eldialogo.com** | 3 Years - Save 28% | $74.97 |
| +Private Registration | 3 Years | $27.00 |

For your protection, the domain name you have registered has Domain Protect turned on. You may change the Domain Protect status at anytime through the Account Manager.

**Total    $203.94**

## Name you want already taken?    [ LEARN MORE ]

Back to top | About Us | Partnerships | Contact Us | Site Map

Home    Register a Domain    Create a Web Site    Buy E-mail    Purchase Hosting    Promote Your Site    Grow Your Business    Free Offers    Renew Services    Account Manager



Review our Privacy Policy, Service Agreement, and Legal Notice
© Copyright 2004 Network Solutions. All rights reserved.

FREE OFFERS    WHOIS    VIEW ORDER    CUSTOMER SERVICE    ADD

| HOME | REGISTER A DOMAIN | HOST YOUR WEB SITE | CREATE A WEB SITE | BUY E-MAIL | PROMOTE YOUR SITE | GROW YOUR BUSINESS | Y |

## ACCOUNT MANAGER

- **Account Manager Home**
- View Domain Name List
- View Account List

Merge User IDs/Accounts

Edit User Info
Edit User ID/Password

**Edit Account Contacts**

Register Domain Names
Renew Services

Transfer Domain Names
View Transfer Status

> **Thousands of names expire every day.**

**ABOUT ACCOUNT MANAGER**

Tour Account Manager

Account Manager User Guide

**FREQUENTLY ASKED QUESTIONS**

How do I edit my Web site?

How do I check my E-mail?

How do I change my domain name server (DNS)?

What is a NIC handle?

How do I edit billing information?

What are the roles of the different Account Contacts?

What is Auto Renew?

What is Domain Protect?

See What Our Customers

# ACCOUNT MANAGER HOME

Lillian Santiago
4 Open Square Way
Studio 120
Holyoke, MA  01040
US
413-536-5560
lsantiago@eldialogo.com
NIC Handle: 37998989P
Edit user information

> Now Available! **Country-Specific Domains:**
> **.uk .de .be .at .mx .nz**    From $6.99 per year!

## ACCOUNT DETAILS

### ACCOUNT INFORMATION

| | |
|---|---|
| **Account:** | 28939808 |
| **Account Holder:** | ⊞ El Dialogo LLC |
| **Primary Contact:** | ⊞ Lillian Santiago (you) |
| **Billing Information:** | ⊞ Lillian Santiago |
| **Credit Card:** | ⊞ MASTERCARD xxxxxxxxxxxx0912 |

Edit Account/Billing Information

### SERVICES ASSIGNED TO THIS ACCOUNT

Select view: [ Services ▼ ]    **RENEW**    **EDIT DN**

| Services ▼ 1 - 4 of 4 | Type | E-mail | Web site | Expiratic |
|---|---|---|---|---|
| ☐ ☐ eldialogi.com | Domain | Add | | June 10, 2C |
| ☐ Private Registration | Private Registration | | | June 10, 2C |
| ☐ ☐ eldialogo.com | Domain | Add | | June 10, 2C |
| ☐ Private Registration | Private Registration | | | June 10, 2C |

☐ Select all on this page    Showing 1 - 4 of 4

**RENEW**    **EDIT DN**

### PEOPLE WHO CAN ACCESS THIS ACCOUNT

**Lillian Santiago's access:**    Primary Contact
**Account Administrative Contact:**    None
**Account Technical Contact:**    ana morales anaivette_morales@yahoo.com

Edit Account Contacts

EXHIBIT B

DIRECT MERCHANTS S.A., INC.

1/27/2005

Register: Loan & Exchange:Dialogo Bilingue
From 01/01/2004 through 01/27/2005
Sorted by: Date, Type, Number/Ref

| Date | Ref | Payee | Account | Memo | Decrease | C | Increase | Balance |
|---|---|---|---|---|---|---|---|---|
| 05/27/2004 | | Quark Distribution Inc. | Credit Cards:Citibank | | | Software contract | 953.95 | 953.95 |
| 06/24/2004 | 3896 | Open Square | Accounts Payable [split] | | | rent | 500.00 | 1,453.95 |
| 06/25/2004 | 3193 | Aura G. Romero | Wayne Check-Bee-59-2 | | | | 1,000.00 | 2,453.95 |
| 07/20/2004 | | Ana Morales | Accounts Payable | | | | 308.00 | 2,761.95 |
| 07/30/2004 | 3938 | Open Square | Accounts Payable [split] | | | Rent | 500.00 | 3,261.95 |
| 07/31/2004 | 1 | Lilian Santiago-Bauza | Accounts Payable | | | | 2,000.00 | 5,261.95 |
| 07/31/2004 | ED-39 | Aura G. Romero | Accounts Payable | | | | 1,000.00 | 6,261.95 |
| 08/05/2004 | ED-40 | Tracy Learned | Accounts Payable | | | | 507.20 | 6,769.15 |
| 08/30/2004 | 3984 | Open Square | Accounts Payable [split] | | | Rent | 615.00 | 7,384.15 |
| 08/30/2004 | | Aura G. Romero | Accounts Payable | | | | 1,000.00 | 8,384.15 |
| 08/30/2004 | | Lilian Santiago-Bauza | Accounts Payable | | | | 2,000.00 | 10,384.15 |
| 09/26/2004 | 4029 | Open Square | Accounts Payable [split] | | | Rent | 615.00 | 10,999.15 |
| 09/30/2004 | 3189 | Lilian Santiago-Bauza | PNC Bank:Checking | | | | 2,000.00 | 12,999.15 |
| 09/30/2004 | 3190 | Aura G. Romero | PNC Bank:Checking | | | | 1,000.00 | 13,999.15 |
| 10/01/2004 | | J & J Accounting | Accounts Payable [split] | | | | 4.22 | 14,003.37 |
| 10/03/2004 | | Ana Morales | Accounts Payable | | | | 272.10 | 14,275.47 |
| 10/05/2004 | 3199 | Secretary of State o... | PNC Bank:Checking | | | | 175.00 | 14,450.47 |
| 10/05/2004 | EDS-14 | Tracy Learned | Accounts Payable | | | | 244.00 | 14,694.47 |
| 10/19/2004 | 340099 | Verrill & Dana LLP | Accounts Payable [split] | | | | 198.92 | 14,893.39 |
| 10/21/2004 | EDS-16 | Lilian Santiago-Bauza | Accounts Payable | | | | 975.00 | 15,868.39 |
| 11/01/2004 | 4076 | Open Square | Accounts Payable [split] | | | Rent | 615.00 | 16,483.39 |
| 11/08/2004 | 1 | Ana Morales | Accounts Payable | | | | 800.00 | 17,283.39 |
| 12/21/2004 | 3287 | Lilian Santiago-Bauza | PNC Bank:Checking | | | | 1,000.00 | 18,283.39 |
| 12/21/2004 | 3294 | Aura G. Romero | PNC Bank:Checking | | | | 250.00 | 18,533.39 |
| 12/21/2004 | | Verrill & Dana LLP | Accounts Payable [split] | Research | | | 85.34 | 18,618.73 |

Page 2

J&J ACCOUNTING INC.    201-947-2944    01/27/2005 12:53

**EXHIBIT C**

## Lillian Santiago-Bauza

**From:**      "Lillian Santiago-Bauza" <lsantiago@eldialogo.com>
**To:**        <GPike@DMSAinc.com>
**Sent:**      Miércoles, 15 de Diciembre de 2004 09:13 a.m.
**Attach:**    Sales Manager Contract.doc
**Subject:**   Francisco Contract

Gerry:

Attached please find a Draft of the manager's contract for Francisco.  I would appreciate if you review it and feedback at your earliest.  Also, if you can let me know how you plan to contribute to this, knowing that I do not have the money to cover all payables.  Payables are approximately $10,000 including this arrangement, and we have sales of $7,000 for the next two months.

I would like you to contribute at least $3,000 per month for next three months and then reevaluate.

Thank you

Lillian Santiago

15/12/2004

**EXHIBIT D**

February 28, 2005


Ms. Lillian Santiago – Bauza
El Dialogo Newspaper
2 Open Square Way, Studio 405
Holyoke, MA 01040


Dear Lillian,

It is with great regret that I must inform you that I will no longer be able to continue working as an independent contractor for el Dialogo.

As you are aware I have been working for el Dialogo since January 17, 2005 and to date I have not been paid for my services. The company owes me $ 3000.00 and after repeated attempts to collect my fees from Mr. Gerry Pike, he seems unwilling to pay me.

I wish you the best and I hope el Dialogo will continue to grow.

Sincerely,

Francisco J Sole

February 17, 2005


Gerry Pike
DMSA, Inc.
P.O. Box H
New Foundland, PA 18445

Dear Gerry:

Since our last meeting and telephone conversation I have reconsidered my position in
Diálogo LLC. Since the beginning I have had to endure your lack of commitment to this
organization and your promised financial contributions to the business. Your inconsistent
communication on the decision making process and lack of financial support to the
venture has caused a material deteriorations, to the point where we do not have staff
support, nor are we able to continue without the business going into debt. Therefore, as
operating manager, I have no other alternative but to close the business effective
immediately.

The landlord has been made aware of the situation; he is allowing you to leave the
computer, software and other office furniture at that space until the end of the month.
You should take whatever steps are necessary to remove those items at your earliest. All
business paperwork, e.g. bank statements, check book and list of account payables will be
sent to you shortly.

If you have questions and or concerns you can address those to my attorney, Arnold
Greenhut at 413-785-1504.


Cordially,


Lillian Santiago

EXHIBIT F

| Service Type | Account Number | | Amount Owed |
|---|---|---|---|
| Poland Spring Water | 430047951 | $ | 186.32 |
| Valley Advocate (Distribution) | 4026472 | $ | 2,943.00 |
| Beaulieu&Sons Elec. Contractors | 1733 | $ | 149.18 |
| AP News Finder Services | FG02689 | $ | 642.00 |
| Open Square Properties, LLC | 367 | $ | 1,230.00 |
| Verizon Telephone | 413-536-5560-800-009-3 | $ | 520.64 |
| Holyoke Gas & Electric | 67412 | $ | 435.55 |
| Pitney Bowes | 19675038863 | $ | 112.38 |
| February Pay Roll (Gabriela) | | $ | 1,000.00 |
| | **TOTAL:** | $ | **7,219.07** |

+ 5,000  *removal loan*

EXHIBIT G



# The Commonwealth of Massachusetts
William Francis Galvin, Secretary of the Commonwealth
Corporations Division

\#: _____ 65509_____

Mark: _____ EL DIALOGO_____

Dear Registrant:                                                                    TM

Enclosed please find an approved copy of your Trademark or Servicemark application. This certificate of registration will be effective for a period of ten (10) years from the date stamped on the back. The registration number, which appears in the top right corner of the front of the form, should be used when requesting information, copies, or notifying this office of an address change.

Within six (6) months of the expiration of your term of registration a notification will be sent to the last address of record. Notices will not be sent to the law firm which may have filed the original application.

The appropriate symbol to indicate state registration is "TM" or "SM". The symbol used for a federal registration is an "R" within a circle. This symbol **may not be used** unless you mark is registered with the Patent and Trademark Office in Washington, DC. For federal information and forms, call (703) 308-4357.

This office is not permitted to give legal advice regarding infringement of your Trademark or Servicemark. If you need information on name disputes or Trademark or Servicemark infringement, please consult an attorney.

Office of the Secretary of the Commonwealth
One Ashburton Place
Trademark Division
Boston, MA  02108

One Ashburton Place, 17th Floor, Boston, Massachusetts 02108 · (617) 727-9640

## 65509

Fee: $50.00

# The Commonwealth of Massachusetts
**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

## APPLICATION FOR REGISTRATION OF A TRADEMARK
### (General Laws, Chapter 110B, Section 2)

1. Name of applicant: *El Diálogo*

2. (a) Principal business address: *4 Open Square Way Studio 120, Holyoke, MA 01040*

   (b) *Business address in Massachusetts, if any: *Same*

3. State whether applicant is an individual, partnership, corporation, union or association: ~~Corporation~~ *LLC*

4. If a corporation, the state of incorporation is: *MASSACHUSETTS*

5. Describe mark:

   *Bold Lettering   El Diálogo*

6. Describe the specific goods in connection with which the mark is used:

   *Newspaper*

7. Class No.: *16*

8. The mark is used by displaying it:

   ☐ directly to the goods
   ☐ directly to the containers for the goods
   ☒ by displaying it in physical association with the goods in the sale or distribution thereof
   ☐ in other fashions (explain):
   ☐ to tags or labels affixed to the containers for the goods
   ☐ to tags or labels affixed directly to the goods

9. Date of first use of mark by applicant or predecessor. If first use of mark was in Massachusetts, use the same date in both (a) and (b).

   (a) Anywhere:

   (b) In Massachusetts: *7-1-04*

10. If either of the above first uses was by a predecessor of the applicant, state which use or uses were by a predecessor and identify that predecessor:

State of: *Massachusetts*

County of: *Hampden*

Name of applicant: *Lillian Santiago*

Signature of applicant:

Title: *President*

**Note: This document must be notarized -- see reverse side.**
*Fill in only if principal business address is not in Massachusetts

110bcrtm 12/10/03

*Lillian Santiago* _____ , being duly sworn, deposes and says that ~~he~~ she is the *President* _____
of the above named applicant, that the statements contained in the foregoing statement are true and that he verily believes
that said applicant is the owner of the mark sought to be registered and that no other person has the right in the Common-
wealth of Massachusetts to use such mark either in the identical form thereof, or in such near resemblance thereto, as to be
likely, when applied to the goods or services of such person, to cause confusion or to cause mistake or to deceive.

SUBSCRIBED and sworn to before me this *11* day of *March* _____ , 20 *05* .

Notary Public: *Anthony Soto* _____ My commission expires: *2-10-11* _____

*Please print the name and address in the space provided below of the person to whom you wish this application to be sent.*

CERTIFICATE OF REGISTRATION
OF A TRADEMARK

General Laws, Chapter 110B, Section 4

Filed with
William Francis Galvin,
Secretary of the Commonwealth
and Secretary's Certificate of Record issued on:

MAR 21 2005
_____ , 20 _____



William Francis Galvin
Secretary of the Commonwealth
Trademark Section
One Ashburton Place, Rm. 1717
Boston, MA 02108

# El Diálogo

**Lillian Santiago- Bauzá**
*Publisher*

*250 Open Square*
*Studio 405*
*Holyoke, MA 01040*

Ph: 413•536•5560
Fax: 413•533•9467
lsantiago@eldialogo.com