# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                              )
DIALOGO, LLC and                                )
DIRECT MERCHANTS S.A., INC.,        )          CIVIL ACTION NO. 05-CV-30076-MAP
                                                              )
                    Plaintiffs,                        )
                                                              )
v.                                                          )
                                                              )
LILLIAN SANTIAGO BAUZÁ,              )
EL DIALOGO, LLC, and                        )
FRANCISCO JAVIER SOLÉ,                 )
                                                              )
                    Defendants.                       )
_____)
                                                              )
LILLIAN SANTIAGO BAUZÁ,              )
EL DIALOGO, LLC, and                        )
FRANCISCO JAVIER SOLÉ,                 )
                                                              )
                    Counterclaim-Plaintiffs,    )
                                                              )
v.                                                          )
                                                              )
DIALOGO, LLC  and                             )
DIRECT MERCHANTS S.A., INC.,        )
                                                              )
                    Counterclaim-Defendants.  )
_____)

## PLAINTIFFS' PRETRIAL MEMORANDUM

Pursuant to the Court's Procedural Order re: Final Pretrial Conference/Trial dated May

24, 2005 (Dkt. No. 32), Plaintiffs and Counterclaim-Defendants Dialogo, LLC and Direct

Merchants S.A., Inc. (collectively, Plaintiffs"), by and through their attorneys, hereby submit

their pretrial memorandum.

### 1.     STATEMENT OF THE EVIDENCE

In 2003, Santiago Bauzá, her husband Hector Bauzá, and two other partners, Manuel

Frau-Ramos and Ingrid Estrany-Frau, started a Massachusetts corporation called Diálogo Bilingue, Inc. Santiago Dep., Ex. 1. The four directors of Dialogo Bilingue, Inc. were Hector Bauzá, Lillian Santiago Bauzá, Dr. Manuel J. Frau and Ingrid Estrany-Frau. Santiago Dep. 18 and Ex. 2. Each of these directors were 25 percent owners of Diálogo Bilingue, Inc. Id.

The corporation Diálogo Bilingue published a newspaper known as "Diálogo Bilingue." Santiago Dep. 46-47 and Ex. 12. The first edition of "Diálogo Bilingue" was on June 1, 2003 and the last edition of "Diálogo Bilingue" was on June 1, 2004. Santiago Dep. 47-48. In the community, the corporation of Diálogo Bilingue, Inc. was known as "Diálogo Bilingue." Santiago Dep. 32.

In May 2004, Lillian Santiago Bauzá discussed with Gerry Pike, Managing Director of DMSA, the business of Diálogo Bilingue, Inc. She told him that she was breaking her involvement with her other partners and she was deciding whether to continue the newspaper herself or whether to close it down. Santiago Dep. 54. Diálogo Bilingue partnership was breaking down because it allegedly was not making any money and that Ms. Santiago Bauzá wanted to have a graphic design person to bring the newspaper to the "next level." Santiago Dep. 55-56.

In discussions about DMSA's investment, Santiago Bauzá and Gerry Pike "vaguely discussed" money, and he would start by investing in "software which is $1,000. He said that he will pay me [Santiago Bauzá] $2,000 salary and he would pay Gabriela's salary. So that was the extent at that moment." Santiago Dep. 58.

Santiago Bauzá offered her partners $3,000 for their Diálogo Bilingue stock, but they rejected her offer. Santiago Dep. 65. Accordingly, in June 2004, she "started something new," Id., and the corporation of Diálogo Bilingue, Inc. and the publication "Diálogo Bilingue" were

being discontinued.  Id. at 82-83.

Through a new corporation (Diálogo, LLC), Santiago Bauzá launched a new newspaper, with a "new look, new way of doing that newspaper."  Santiago Dep. 60, 64.  In June 2004, Santiago Bauzá "was in the process of changing . . . of getting into another venture [Diálogo, LLC]."  Id. at 81.

On June 8, 2004, Santiago Bauzá wanted a contract to set forth the obligations of the parties.  Santiago Dep. 86 and Ex. 17.  She explained that she needed the Venture Agreement and the Operating Agreement.  Id. at 86.  Santiago Bauzá wanted to launch "El Diálogo."  Id. at 87.  And she wanted "the legal documents upon which the new venture could be built."  Id.

On June 9, 2004, Gerry Pike of DMSA sent to Santiago Bauzá a joint venture agreement and the organizational documents for the formation of the new company, Diálogo, LLC, and these documents included a Venture Agreement and an Operating Agreement (Diálogo, LLC) for the new company.  Am. Compl. II ¶ 13; Answer ¶ 13. Santiago Bauzá executed these documents and returned them to DMSA by facsimile.  Am. Compl. II ¶ 14; Answer ¶ 14, Santiago Dep. 96, 105.

Under the Venture Agreement, Santiago Bauzá and DMSA formed a joint venture and agreed that, among other things:

- They would create a limited liability company called Diálogo LLC for the joint venture and that Santiago Bauzá had a 49% membership interest and DMSA had a 51% membership interest;

- The Company will be managed by a board of directors, consisting of two representatives from DMSA and one designated by Santiago Bauzá;

- DMSA and LSB [Lillian Santiago Bauzá] shall through the Company jointly pursue the Spanish language and bilingual print and media business;

- Santiago Bauzá shall devote her efforts exclusively to the Company, and she shall not provide "such services, directly or indirectly for itself [sic] or any other entity or person to the extent it relates to the Business;"

- They will keep confidential the proprietary information of the Company.

Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16. The Venture Agreement provided that "DMSA shall contribute the initial capital to launch the LLC <u>in an amount that DMSA deems appropriate</u> (including through travel, promotional costs, legal fees, accounting fees, billing fees and the labor of management and staff of DMSA)." Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 98. The Venture Agreement "accurately reflect[ed] [Santiago Bauzá's] understanding and discussions with Mr. Pike about what this venture was all about," Santiago Dep. 96-97, and "accurately reflected what [her] obligations were and what DMSA obligations [were]." <u>Id.</u> at 97.

Under the Operating Agreement, Santiago Bauzá agreed to act exclusively on behalf of the Company. Am. Compl. II ¶ 18 and Ex. 1; Answer ¶ 18. She agreed that "[her] conduct would be dedicated exclusively to the venture," Santiago Dep. 100, and she would not work on any other venture, including Diálogo Bilingue, Inc. <u>Id.</u> All her efforts were "to be dedicated to Dialogo, LLC, the Maine corporation." <u>Id.</u> at 101. Santiago Bauzá also agreed that she "may not resign from the Company prior to the dissolution and winding up of the Company." Am. Compl. II ¶ 18 and Ex. 1; Answer ¶ 18.

Santiago Bauzá also agreed that the proprietary information, including advertising and marketing information, subscription lists and supplier lists, of the Company was to be kept confidential. Am. Compl. II ¶ 19 and Ex. 1, at 22; Answer ¶ 19.

Section 4.1 of the Operating Agreement explains the members' initial capital contributions to the Company. Section 4.1(a) provides:

> Each Member <u>has contributed</u> or <u>is deemed to have contributed</u> to the capital of the Company the amount set forth opposite the Member's name on Schedule A attached hereto. The <u>agreed value</u> of the Capital Contributions <u>made or deemed to have been made</u> by each Member shall be set forth on Schedule A.

Am Compl. II ¶ 15 and Ex. 1 (emphasis added); Answer ¶ 15. Schedule A provides that the agreed value of DMSA's capital contribution was $50,000. <u>Id</u>. Santiago Bauzá understood that as of June 9, 2004, the capital contributions of DMSA were already made or were deemed to have been made. Santiago Dep. 109.

Santiago Bauzá "brought a business to the venture." Santiago Dep. 103. Since she had to dedicate her work life to Diálogo, LLC, Santiago Dep. 104, her contribution to the Company was "all of the contacts, advertising list[s], customer list[s] that she had with respect to Diálogo Bilingue was part of [her] contribution." <u>Id</u>.

As of June 15, 2004, Santiago Bauzá announced: "I have decided to close Diálogo Bilingue corporation." Santiago Dep. 113. This corporation was not going to conduct business any longer. <u>Id.</u> at 113-114.

Shortly after Santiago Bauzá agreed to the terms of the Operating Agreement and the Venture Agreement, she announced that "[a]ll new business are [sic] under Diálogo LLC contract". Am. Compl. II ¶ 21; Answer ¶ 21. On June 10, 2004, Santiago Bauzá secured the domain name registration "eldialogo.com". Santiago Dep. 114-115. At the time, she was operating exclusively on behalf of Diálogo, LLC. <u>Id.</u> at 115. The Massachusetts company El Diálogo, LLC "wasn't even in [her] consciousness at that time." Santiago Dep. 116.

On or about July 1, 2004, the Company published and distributed the first issue of its bilingual newspaper, "El Diálogo." Am. Compl. II ¶ 24; Answer ¶ 24. It published numerous issues after that, on a bi-weekly basis, from July, 2004 until February, 2005. Id. Before July 1, 2004, neither Santiago Bauzá nor Diálogo Bilingue, Inc. had published a newspaper entitled "El Diálogo." Id. at ¶ 25.

In December 2004, Santiago Bauzá presented DMSA with financial statements reflecting the financial performance of the Company from July 1, 2004 to December 13, 2004. Pike Aff. II ¶ 30 and Ex. 7; Santiago Dep. 164-165. These documents demonstrated that, during this period, the Company had a total net income of over $21,000 and that the Company had a profit for every complete month in this period. Id. Santiago Bauzá had exclusive control over the finances of the Company and the financial reporting of the business. Santiago Dep. 169.

On or about January 6, 2005, because of the Company's initial success, it hired Francisco Javier Solé as the Director of Advertising Sales for the Company pursuant to an employment agreement. Pike Aff. ¶ 22. Under that agreement, Mr. Solé agreed, among other things, that he would not directly or indirectly compete with the business of the Company and would keep confidential the Company's proprietary information. Id.

In early February, Santiago Bauzá noted the continuing positive momentum of the business and stated:

> Gerry, the newspaper is on an incredible moment to grow, since Francisco arrived we had implemented many systems that are going to help us get the accounts we need . . . .

Pike Aff. II ¶ 32 and Ex. 8. From June 2004 through February 2005, Santiago Bauzá never informed DMSA that she thought DMSA was failing to abide by any of its obligations under the Venture Agreement or Operating Agreement, including an alleged failure to invest $50,000 in the

Company.  Pike Aff. II ¶ 33.  Through March, 2005, however, DMSA had made over $40,000 in such out-of-pocket payments and also contributed over $5,000 in management services.  Pike Aff. II ¶ 29.

In mid-February, the Managing Director of DMSA (Gerry Pike) was nearly completely incapacitated and could not monitor the developments at the Company.  Pike Aff. II ¶ 34. Without authority, Santiago Bauzá drafted a letter dated February 17, 2004 to inform Mr. Pike that she was unilaterally closing down the business of the Company. Am. Compl. II ¶ 34 and Ex. 4; Answer ¶ 34; Pike Aff. II ¶ 36 and Ex. 10.  This letter, however, was not mailed until February 25, 2005, Pike Aff. II ¶ 37, and Mr. Pike did not receive the letter until March 5.  Id. at ¶ 38.

In February 2005, without the knowledge and consent of DMSA, Santiago Bauzá physically moved the business, assets, and equipment of the Company out of its location at Suite 405, 250 Open Square Way in Holyoke to a new location.  Pike Aff. II ¶ 41.  The Company's assets at that time included the proprietary information which Santiago Bauzá had agreed to maintain confidential, under the Operating Agreement.  Id.  Mr. Solé discontinued to work for the Company and went to work at Ms. Santiago Bauzá's new business.

On March 15, 2005, Santiago Bauzá established a new Massachusetts limited liability company called El Diálogo, LLC (hereinafter "Newco" for clarity).  Pike Aff. II ¶ 42; Santiago Dep. 269-272.  On each of March 1, 2005 and March 15, 2005, April 1, 2005, and April 15, 2005, Santiago Bauzá published an edition of "El Diálogo," apparently with the assets of the Company.  Pike Aff. II ¶ 43.  The newspaper is virtually unchanged from the previous editions of El Diálogo.  Am. Compl. II ¶ 41; Answer ¶ 41.

On or about March 21, 2005, Newco, through Ms. Santiago Bauzá as president, applied to register the trademark "El Diálogo" in Massachusetts.  Am. Compl. II ¶ 43; Answer ¶ 43.  In

the application, Santiago Bauzá stated that the date of first use of mark was July 1, 2004. <u>Id.</u> She failed to state that the July 1, 2004 use of the mark "El Diálogo" was by Diálogo, LLC. Santiago Dep. 282-283.

On April 21, 2005, the Commonwealth of Massachusetts approved Dialogo, LLC's application for registration of the trademark ("El Diálogo") and issued a certification of registration to Plaintiff Diálogo, LLC for that trademark.  Pike Aff. II ¶ 44 and Ex. 12.

## 2.    STATEMENT OF FACTS ESTABLISHED BY THE PLEADINGS AND ADMISSIONS

<u>Parties</u>

1.    Plaintiff Diálogo, LLC ("Diálogo, LLC or "the Company") is a Maine limited liability company with its principal place of business in Holyoke, Massachusetts.  Second Amended Complaint ("Am. Compl. II") (Dkt. No. 15) ¶ 2; Answer of Defendants, Lillian Santiago Bauzá and El Diálogo, LLC to Second Amended Complaint ("Answer") (Dkt. No. 16) ¶ 2.

2.    Plaintiff Direct Merchants S.A., Inc. ("DMSA") is a New Jersey corporation with its principal place of business in Newfoundland, Pennsylvania.  Second Affidavit of Gerry Pike ("Pike Aff. II") ¶ 1.

3.    Defendant Lillian Santiago Bauzá ("Santiago Bauzá") is a person residing in Holyoke, Massachusetts. Am. Compl. II ¶ 4; Answer ¶ 4.

4.    Defendant El Diálogo, LLC ("Newco") is a Massachusetts limited liability company with its principal place of business in Holyoke, Massachusetts.  Am. Compl. II ¶ 5; Answer ¶ 5.

8

5.      Defendant Francisco Javier Solé ("Solé") is a person residing in Southwick, Massachusetts.  Am. Compl. II ¶ 6; Answer ¶6.

Facts

6.      Defendant Santiago Bauzá has a bachelors degree in psychology and public administration from Inter-American University of Puerto Rico and a master degree in education and counseling from Cambridge College in Boston, Massachusetts.  Deposition of Lillian Santiago Bauzá dated May 9, 2005 ("Santiago Dep.") 10.  In her professional experience, she has managed four nonprofit corporations, id. at 14, and presently is a City Councilor for the City of Holyoke.  Id. at 14-15.

7.      In 2003, Santiago Bauzá, her husband Hector Bauzá, and two other partners, Manuel Frau-Ramos and Ingrid Estrany-Frau, started a Massachusetts corporation called Dialogo Bilingue, Inc.  Santiago Dep., Ex. 1.  Under its articles of organization, the company was a "bilingual/multicultural newspaper with a mission to inform the Latino/a on diverse topic to encourage community involvement."  Id.

8.      The four directors of Dialogo Bilingue, Inc. were Hector Bauzá, Lillian Santiago Bauzá, Dr. Manuel J. Frau and Ingrid Estrany-Frau.  Santiago Dep. 18 and Ex. 2.  Each of these directors were and are 25 percent owners of Dialogo Bilingue, Inc.  Id. at 18-19.  Ms. Santiago Bauzá served as clerk of the corporation and as clerk, her duties included filing the tax returns of the corporation, submitting the annual report of the corporation to Commonwealth of Massachusetts, and filing the articles of organization with the Commonwealth of Massachusetts.  Id. at 19-20 and Ex. 2.

9.      Attorney Arnold Greenhut was both the attorney of Dialogo Bilingue, Inc. and Ms. Santiago Bauzá's own attorney.  Santiago Dep. 17.

10.      The Dialogo Bilingue articles of organization were filed with the Massachusetts Secretary of State on September 17, 2004.  Santiago Dep., Ex. 1.

11.      In April 2003, on behalf of Dialogo Bilingue, Manuel Frau-Ramos secured the web domain name of "dialogobilingue.com."  Santiago Dep. 23-24 and Ex. 5.  Ms. Santiago Bauzá was clear that this was action on behalf of the entire partnership.  Id. at 24-25.  Dialogo Bilingue, Inc. did not secure the name "El Dialogo."  Id. at 24.

12.      In the community, the corporation of Dialogo Bilingue, Inc. was known as "Dialogo Bilingue."  Santiago Dep. 37.

13.      From the Dialogo Bilingue's financial statements, the company had a positive net income.  For example, its balance sheet as of May 31, 2004 reflected total net income as $14,142.72, Santiago Dep., Ex. 10, and the monthly May 2004 net income of $3,935.  Id. at 40.

14.      The corporation Dialogo Bilingue published a newspaper known as "Dialogo Bilingue."  Santiago Dep. 46-47 and Ex. 12.  The first edition of "Dialogo Bilingue" was on June 1, 2003 and the last edition of "Dialogo Bilingue" was on June 1, 2004.  Santiago Dep. 47-48.

15.      In May 2004, Lillian Santiago Bauzá discussed with Gerry Pike, Managing Director of DMSA, the business of Dialogo Bilingue, Inc.  She told him that she was breaking her involvement with her other partners and she was deciding whether to continue the newspaper herself or whether to close it down.  Santiago Dep. 54.

16.      At her deposition, Ms. Santiago Bauzá testified that Dialogo Bilingue partnership was breaking down because it allegedly was not making any money and that Ms. Santiago Bauzá wanted to have a graphic design person to bring the newspaper to the "next level."  Santiago Dep. 55-56.

17.    In discussions about DMSA's investment, Ms. Santiago Bauzá testified that Gerry Pike and she "vaguely discussed" money, and he would start by investing in "software which is $1,000.  He said that he will pay me a $2,000 salary and he would pay Gabriela the salary.  So that was the extent at that moment."  Santiago Dep. 58.

18.    The purpose of the new venture was to develop a Spanish language and bilingual print and media business.  Pike Aff. II ¶ 4.

19.    Santiago Bauzá offered her partners $3,000 for their Dialogo Bilingue stock, but they rejected her offer.  Santiago Dep. 65.  Accordingly, she "started something new."  Id.

20.    Through a new corporation (Dialogo, LLC), Ms. Santiago Bauzá launched a new newspaper, with a "new look, new way of doing that newspaper."  Santiago Dep. 60, 64.

21.    As Ms. Santiago Bauzá testified, in June 2004, she "was in the process of changing . . . of getting into another venture [Dialogo, LLC]."  Santiago Dep. 81.  In June 2004, the corporation of Dialogo Bilingue, Inc. and the publication "Dialogo Bilingue" were being discontinued.  Id. at 82-83.

22.    On June 8, 2004, Ms. Santiago Bauzá wanted a contract to set forth the obligations of the parties.  In an e-mail sent in early June, Ms. Santiago Bauzá stated:

> I need to come to some understanding with you before we enter
> this new adventure in both our professional and business lives.  I
> really need a tangible contract that we can start building from.

Santiago Dep. 86 and Ex. 17.  As she explained in her deposition, she needed the Venture Agreement and the Operating Agreement.  Id. at 86.  Ms. Santiago Bauzá continued, "I am moving on with the plan I presented to you.  I am working very hard to have a new Diálogo by July 1st."  Id. at 87 and Ex. 17.  She explained that she wanted to launch "El Dialogo."  Id.  And she wanted "the legal documents upon which the new venture could be built."  Id.

23.    In response to Ms. Santiago Bauzá's e-mail, on June 9, 2004, Gerry Pike, on

behalf of DMSA, sent her a reply, stating:

> It has been but 7 business days since our 05/27/04 CT
> meeting and your e-mail of 06/08.  Let's review where we
> are re: DMSA's commitment and what we have done to
> date:
>
> *    We have committed to partner with you without
>      reservation.
>
> *    We outlined to you an exit strategy for your situation
>      with Manuel [her former business partner].

Pike Aff. II ¶ 8 and Ex. 2; Santiago Dep. 88-89.  In that June 9 e-mail, Mr. Pike also stated:

> However, per our 06/02 conversation, you need to resolve
> the partnership situation with Manuel in order for us to
> execute it.

Id.

24.    Furthermore, before the execution of the Operating and Venture Agreements, Ms.

Santiago Bauzá understood that Carmen (representing DMSA) was "going to play a central role

in the expenditures of Dialogo, LLC."  Santiago Dep. 94.

25.    Later on June 9, 2004, Gerry Pike of DMSA sent to Ms. Santiago Bauzá, in

response to her request, a joint venture agreement and the organizational documents for the

formation of the new company, Diálogo, LLC, to document the joint venture between Ms.

Santiago Bauzá and DMSA.  These documents were executed by DMSA and included a Venture

Agreement and an Operating and Members Agreement (Diálogo, LLC) for the new company.

Am. Compl. II ¶ 13; Answer ¶ 13.

26.    On June 9, Ms. Santiago Bauzá executed these documents on her own behalf and

returned them to DMSA by facsimile.  Am. Compl. II ¶ 14; Answer ¶ 14, Santiago Dep. 96, 105.

27.    At the time of execution of the Venture and Operating Agreements, Ms. Santiago Bauzá was represented by Attorney Arnold Greenhut, Santiago Dep. 107, 125, but she testified that "unfortunately" she did not have Attorney Greenhut review either of these agreements. Id. at 108.

28.    At the time, Gabriela Romero, who worked in the office of Dialogo Bilingue, Inc., advised Ms. Santiago Bauzá to consult with her attorney about these agreements. Santiago Dep. 258.

29.    As contemplated in the Venture Agreement, and as set forth in the Operating and Members Agreement (Diálogo, LLC) ("the Operating Agreement"), DMSA and Ms. Santiago Bauzá entered into the Operating Agreement to form a limited liability company called Diálogo, LLC. Am. Comp. II ¶ 15 and Ex. 1; Answer ¶ 15. Under the Operating Agreement, DMSA and Ms. Santiago Bauzá agreed that the value of DMSA's initial capital contribution was (or was deemed to be) $50,000 and the value of Ms. Santiago Bauzá's initial capital contribution was (or was deemed to be) $1.00. Id., Ex. 1, at 8, 30. As set forth in the Operating Agreement, the membership interests of the Company are as follows: DMSA - 51%, Ms. Santiago Bauzá - 49%. Id., Ex. 1, at 30.

30.    Under the Venture Agreement, Ms. Santiago Bauzá and DMSA formed a joint venture and agreed that, among other things:

- They would create a limited liability company called Diálogo LLC for the joint venture and that Ms. Santiago Bauzá had a 49% membership interest and DMSA had a 51% membership interest;

- The Company will be managed by a board of directors, consisting of two representatives from DMSA and one designated by Ms. Santiago Bauzá;

- DMSA and LSB [Lillian Santiago Bauzá] shall through the Company jointly pursue the Spanish language and bilingual print and media

business;

- Ms. Santiago Bauzá shall devote her efforts exclusively to the Company, and she shall not provide "such services, directly or indirectly for itself [sic] or any other entity or person to the extent it relates to the Business;"

- They will keep confidential the proprietary information of the Company.

Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 96 and Ex. 17.

31.     With respect to initial capital contributions, the Venture Agreement provided that "DMSA shall contribute the initial capital to launch the LLC in an amount that DMSA deems appropriate (including through travel, promotional costs, legal fees, accounting fees, billing fees and the labor of management and staff of DMSA)." Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 98. There is no term in the Venture Agreement providing that DMSA shall provide initial capital in the amount of $50,000 cash to launch the LLC. See id.

32.     The Venture Agreement also provided that "LSB [Lillian Santiago Bauzá] acknowledges all expenditures must be done with the concurrence of DMSA." Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 97-98.

33.     As Ms. Santiago Bauzá testified at her deposition, the Venture Agreement "accurately reflect[ed] [her] understanding and discussions with Mr. Pike about what this venture was all about," Santiago Dep. 96-97, and "accurately reflected what [her] obligations were and what DMSA obligations [were]." Id. at 97.

34.     Under the Operating Agreement, the Company was "formed for the object and purpose of developing Spanish language newspaper(s) and media." Am. Compl. II ¶ 17 and Ex. 1; Answer ¶ 17.

35.    Under Section 12.7 of the Operating Agreement, Ms. Santiago Bauzá agreed to

act exclusively on behalf of the Company.  She agreed that:

> LSB shall employ its [sic] diligent efforts for the Company
> and LSB shall not provide such services, directly or
> indirectly for itself [sic] or any other entity or person to
> extent that it relates to the business.

Am. Compl. II ¶ 18 and Ex. 1, at 22; Answer ¶ 18.  Ms. Santiago Bauzá also agreed that she

"may not resign from the Company prior to the dissolution and winding up of the Company."

Am. Compl. II ¶ 18 and Ex. 1, at 10; Answer ¶ 18.

36.    Also in Section 12.7 of the Operating Agreement, the parties agreed that:

> DMSA or an Affiliate thereof may engage in or possess an interest in
> other business ventures of any nature of description, independently or
> with others, similar or dissimilar to the business of the Company . . .

Am. Compl. II ¶ 19 and Ex. 1, at 22; Answer ¶ 19.  Under this section of the Operating

Agreement, DMSA was not obligated to act exclusively for the Company.

37.    Ms. Santiago Bauzá also agreed that the proprietary information of the Company

was to be kept confidential.  Section 12.8 of the Operating Agreement provides, in relevant part:

> DMSA and LSB acknowledge and agree that all efforts and
> actions undertaken by them for the Company in connection
> with the business of the Company are to be kept
> confidential.  Neither DMSA nor LSB will disclose to any
> person or entity, directly or indirectly, any Proprietary
> Information (as hereinafter defined) relating to the
> Company's business without the prior written consent of the
> LLC.  For the purposes of this Agreement, "Proprietary
> Information" means all advertiser and subscription lists,
> advertiser and subscription prospects, marketing information
> and data, product information, strategic or technical
> information, financial information, supplier information,
> billing rates and advertiser provided information, documents
> and data.

Am. Compl. II ¶ 19 and Ex. 1, at 22; Answer ¶ 19.

38.     Under the Operating Agreement, the dissolution and winding up of the Company's affairs requires "the written consent of all Members."  Am. Compl. II ¶ 20 and Ex. 1, at 24; Answer ¶ 20.

39.     Section 4.1 of the Operating Agreement explains the members' initial capital contributions to the Company.  Section 4.1(a) provides:

> Each Member has contributed or is deemed to have contributed to the capital of the Company the amount set forth opposite the Member's name on Schedule A attached hereto.  The agreed value of the Capital Contributions made or deemed to have been made by each Member shall be set forth on Schedule A.

Pike Aff. II ¶ 22 and Ex. 4, at 8 (emphasis added).  Schedule A provides that the agreed value of DMSA's capital contribution was $50,000 and of Ms. Santiago Bauzá's capital contribution was $1.00.  Id. at ¶ 22 and Ex. 4, at 30.

40.     DMSA's initial capital contribution, which the parties agreed had a value of $50,000, was comprised of its marketing and strategy studies.  Pike Aff. II ¶ 23.

41.     Ms. Santiago Bauzá understood that as of June 9, 2004, the capital contributions of DMSA were already made or were deemed to have been made.  Santiago Dep. 109.

42.     Ms. Santiago Bauzá understood that under the Venture Agreement and Operating Agreement, she agreed that "[her] conduct would be dedicated exclusively to the venture," Santiago Dep. 100, and she would not work on any other venture, including Dialogo Bilingue, Inc.  Id. at 100.

43.     All her efforts were "to be dedicated to Dialogo, LLC, the Maine corporation." Santiago Dep. 101.

44.     As Ms. Santiago Bauzá testified at her deposition, she "brought a business to the venture."  Santiago Dep. 103.  Since she had to dedicate her work life to Dialogo, LLC, Santiago

Dep. 104, her contribution to the Company was "all of the contacts, advertising list[s], customer list[s] that she had with respect to Dialogo Bilingue was part of [her] contribution." Santiago Dep. 104.

45.     Furthermore, Ms. Santiago Bauzá also understood that anything that Mr. Pike had said to her previously was superceded by the terms of the Operating Agreement dated June 9, 2004. Santiago Dep. 106; Am. Compl. II ¶ 15 and Ex. 1, at 28; Answer ¶ 15.

46.     Ms. Santiago Bauzá never consulted her attorney Arnold Greenhut about the Venture Agreement and Operating Agreement, and she never talked to any lawyer representing Mr. Pike, including Mark Googins or Verrill Dana, LLP. Santiago Dep. 107-108.

47.     Ms. Santiago Bauzá understood that her legal obligations are governed by the Operating Agreement. Santiago Dep. 112.

48.     In an e-mail dated June 15, 2004 to one of her partners in Dialogo Bilingue, Inc., Ms. Santiago Bauzá stated: "I have decided to close Dialogo Bilingue corporation." Santiago Dep. 113. According to Ms. Santiago Bauzá, this corporation was not going to conduct business any longer. Id. at 113-114.

49.     On June 10, 2004, the day after she executed the Venture Agreement and Operating Agreement, Ms. Santiago Bauzá secured the domain name registration "eldialogo.com". Santiago Dep. 114-115. At the time, she was operating exclusively on behalf of Dialogo, LLC. Id. at 115. On the registration form, it provided that the account holder was "El Dialogo, LLC," but as Ms. Santiago Bauzá admitted, the Massachusetts company El Dialogo, LLC was not even in her consciousness at that time." Santiago Dep. 116.

50.     Shortly after Ms. Santiago Bauzá agreed to the terms of the Operating Agreement and the Venture Agreement, she wrote an e-mail to Gerry Pike of DMSA to provide an update of

the Company.  Am. Compl. II ¶ 21; Answer ¶ 21.  She stated:

> Just an update of what I've been doing in the last two weeks.
> I informed Manuel that I was going to close the Diálogo
> [B]ilingual Corporation.  Open a bank account under
> Diálogo LLC, I need the ID # of the venture for the bank and
> clients.  Attached please find copy of the new media kit, new
> name logo and other form just for your information and
> [advice] if you wish.
>
> <u>All new business are [sic] under Diálogo LLC contract</u>.

<u>Id.</u> (emphasis supplied).

51.     In June, 2004, the Company established an office at Suite 405, 250 Open Square

in Holyoke, where another DMSA joint venture was located.  Pike Aff. II ¶ 26.

52.     On or about July 1, 2004, the Company published and distributed the first issue of

its bilingual newspaper, **El Diálogo**.  It published numerous issues after that, on a bi-weekly

basis, from July, 2004 until February, 2005.  Pike Aff. II ¶ 27; Santiago Dep. 118, 131.

53.     Before July 1, 2004, neither Ms. Santiago Bauzá nor Diálogo Bilingue, Inc. had

published a newspaper entitled **El Diálogo**.  <u>See</u> Santiago Dep. 131; Pike Aff. II ¶ 27.

54.     In August, 2004, the Company engaged the services of Ana Morales, a free

lancer, for, among other things, the creation of a website for the newspaper, **El Diálogo**.  Pike

Aff. II ¶ 28.  The website, <u>www.eldialogo.com</u>, became operational on or about October 15,

2004.  <u>Id.</u>

55.     During this period, the Company operated as set forth in the Venture Agreement

and Operating Agreement.  Pike Aff. II ¶ 29.  For example, DMSA provided capital for the

Company in an amount that DMSA deems appropriate, Pike Aff. II, Ex. 5, and Ms. Santiago

Bauzá, as the venture partner in charge of operations, handled the day-to-day matters (but was

required to get DMSA's approval for expenditures).  <u>Id.</u>  During this period, Gerry Pike had a

number of conversations and e-mails with Ms. Santiago Bauzá as one would expect from owners of a business.  Id.

56.    In December 2004, Ms. Santiago Bauzá presented Mr. Pike with financial statements (prepared by the accountant Tracy Learned) reflecting the financial performance of the Company from July 1, 2004 to December 13, 2004.  Pike Aff. II ¶ 30 and Ex. 7; Santiago Dep. 164-165.  These documents demonstrated that, during this period, the Company had a total net income of over $21,000 and that the Company had a profit for every complete month in this period.  Id.

57.    Ms. Santiago Bauzá initially testified that she reviewed these financial statements before she gave them to Mr. Pike and she understood that the statements were accurate.  Santiago Dep. 165.

58.    Ms. Santiago Bauzá had exclusive control over the finances of the Company and the financial reporting of the business.  Santiago Dep. 169.

59.    As Ms. Santiago Bauzá admitted, the only written documentation of DMSA's alleged obligation to invest $50,000 cash into the Company was the Operating Agreement. Santiago Dep. 143-144, 146.

60.    Specifically, these financial statements showed the monthly net income as follows:

|  | Net Income |
|---|---|
| July 2004 | $    777.38 |
| August 2004 | 9,147.92 |
| September 2004 | 2,748.71 |
| October 2004 | 5,542.98 |
| November 2004 | 4,924.34 |

Pike Aff. II ¶ 31 and Ex. 7.

61.    On the Company's financial statement for the period July 1, 2004 through December 31, 2004, Dialogo, LLC had a net income of $36,000.  Santiago Dep. 173-174 and Ex. 37.

62.    In early February, Ms. Santiago Bauzá sent Gerry Pike of DMSA an e-mail indicating the continuing positive momentum of the business and stated:

> Gerry, the newspaper is on an incredible moment to grow,
> since Francisco arrived we had implemented many systems
> that are going to help us get the accounts we need . . . .

Pike Aff. II ¶ 32 and Ex. 8.  Ms. Santiago Bauzá noted the positive trend in the business. Santiago Dep. 215.

63.    At some point, Ms. Santiago Bauzá drafted a letter dated February 17, 2004 (that she did not mail until more than a week later) to inform Mr. Pike that she was unilaterally closing down the business of the Company (which she had no authority to do).  The entire text of this letter is reproduced below:

> Since our last meeting and telephone conversation I have
> reconsidered my position in Diálogo LLC.  Since the beginning I
> have had to endure your lack of commitment to this organization
> and your promised financial contributions to the business.  Your
> inconsistent communication on the decision making process and
> lack of financial support to the venture has caused a material
> deteriorations [sic], to the point where we do not have staff support,
> nor are we able to continue without the business going into debt.
> Therefore, as operating manager, I have no other alternative but to
> close the business effective immediately.
>
> The landlord has been made aware of the situation; he is
> allowing you to leave the computer, software and other
> office furniture at that space until the end of the month.  You
> should take whatever steps are necessary to remove those
> items at your earliest.  All business paperwork, e.g. bank
> statements, check book and list of account payables will be
> sent to you shortly.
>
> If you have questions and or concerns you can address those

to my attorney, Arnold Greenhut at 413-785-1504.

Am. Compl. II ¶ 34 and Ex. 4; Answer ¶ 34; Pike Aff. II ¶ 36 and Ex. 10.

64.    This letter, however, was not mailed until February 25, 2005.  Pike Aff. II ¶ 37.
Mr. Pike did not receive the letter, which was sent by certified mail, until March 5.  Id. at ¶ 38.

65.    Until receipt of this letter on March 5, Ms. Santiago Bauzá never notified Mr.
Pike of her decision to unilaterally close the business of the Company by telephone, e-mail, fax,
or regular U.S. mail.  Pike Aff. II ¶ 39.

66.    As of May 13, 2005, almost three months after the letter dated February 17, Ms.
Santiago Bauzá still has not sent the business paperwork of the Company to DMSA as she
promised to do "shortly" in her letter dated February 17, 2005.  Pike Aff. II ¶ 40.  Upon
information and belief, Ms. Santiago Bauzá continues to use the Company's bank accounts.  Id.;
Santiago Dep. 295-296.

67.    In February 2005, without the knowledge and consent of DMSA, Ms. Santiago
Bauzá physically moved the business, assets, and equipment of the Company out of its location
at  Suite 405, 250 Open Square Way in Holyoke to a new location in the same building at Suite
120, 4 Open Square in Holyoke.  Pike Aff. II ¶ 41.

68.    On March 15, 2005, Ms. Santiago Bauzá established a new Massachusetts limited
liability company called El Dialogo, LLC (hereinafter "Newco" for clarity).  Pike Aff. II ¶ 42;
Santiago Dep. 269-272.  The principal office of this new company is listed as  Suite 120, 4 Open
Square in Holyoke.  Id.

69.    On or about April 21, 2005, the Commonwealth of Massachusetts approved
Dialogo, LLC's application for registration of the trademark ("El Diálogo") and issued a
certification of registration to Plaintiff Dialogo, LLC for that trademark.  Pike Aff. II ¶ 44 and

Ex. 12.

70.    Plaintiff Dialogo, LLC is registered as a foreign limited liability company doing business in the Commonwealth of Massachusetts.  Pike Aff. II ¶ 45 and Ex. 13.

71.    As reflected in the March 15, 2005 edition of **El Diálogo**, the newspaper is virtually unchanged from the previous editions of **El Diálogo**.  Am. Compl. II ¶ 41; Answer ¶ 41; Pike Aff. II ¶ 46.

72.    On or about March 21, 2005, Newco, through Ms. Santiago Bauzá as president, applied to register the trademark "**El Diálogo**" in Massachusetts.  Am. Compl. II ¶ 43; Answer ¶ 43.  In the application, Santiago Bauzá stated that the date of first use of mark was July 1, 2004. Id.

73.    In the application, Ms. Santiago Bauzá failed to state that the July 1, 2004 use of the mark "**El Diálogo**" was by Diálogo, LLC or that on July 1, 2004, the applicant Newco did not exist.  Santiago Dep. 282-283.  Ms. Santiago Bauzá failed to identify any other predecessor entity even though the Massachusetts registration form expressly required such information.  Id.

**3.    CONTESTED ISSUES OF FACT**

Discovery will close on October 31, 2005.  Plaintiff anticipates that it will move for summary judgment on all claims in this complaint against Defendants Lillian Santiago Bauzá and El Dialogo, LLC and on the claims set forth in the Counterclaim of Defendants Lillian Santiago Bauzá and El Dialogo, LLC.  Accordingly, Plaintiffs are of the view that there are no genuine issues of material fact and that Plaintiffs are entitled to judgment as a matter of law.

With respect to Defendant Solé, the contested issue of fact is the length of time that he was employed by Dialogo, LLC and El Dialogo, LLC.

4.    **JURISDICTIONAL QUESTIONS**

There are no issues of subject matter or personal jurisdiction.

5.    **QUESTIONS RAISED BY PENDING MOTIONS**

As set forth above, Plaintiffs will file a motion for summary judgment.

6.    **ISSUES OF LAW INCLUDING EVIDENTIARY QUESTIONS**

In this action, there are the following claims:

Complaint

    1)     violation of Lanham Act, 15 U.S.C. § 1125(a)
    2)     violation of M.G.L. c. 93A, § 11
    3)     common law trademark infringement and unfair competition
    4)     breach of contract - Santiago Bauzá
    5)     misappropriation of trade secrets
    6)     conversion
    7)     breach of fiduciary duty
    8)     tortuous interference with contractual relations
    9)     unjust enrichment
    10)    constructive trust
    11)    declaratory judgment
    12)    violation of M.G.L. c. 110B, §§ 10 and 11.

Counterclaim

    1)     breach of contract
    2)     misrepresentation
    3)     violation of M.G.L. c. 93A
    4)     declaratory judgment

The issues of law in this case have been set forth in the Plaintiffs' Motion for a

Preliminary Injunction and their appeal to the First Circuit Court of Appeals.  These issues

include, but are not limited to, the following:

1.    The legal interpretation of the Venture Agreement and the Operating Agreement.

2.    Whether Lillian Santiago Bauzá breached her duties under these agreements.

3.    Whether DMSA breached its obligations under the agreements.

4.    Under the agreements and the law, whether Defendant Santiago Bauzá allowed to take the newspaper "El Dialogo" and transfer it to another corporation?

5.    Whether Dialogo Bilingue, Inc. abandoned any rights to the mark "Dialogo Bilingue."

6.    Whether Defendant Santiago Bauzá has any ownership of the mark "El Dialogo."

7.    Whether Dialogo Bilingue, Inc. has any ownership of the mark "El Dialogo."

8.    Whether Lillian Santiago Bauzá can assert any rights to either the mark "Dialogo Bilingue" or "El Dialogo."

9.    Whether Lillian Santiago Bauzá and/or Dialogo Bilingue is estopped from claiming any ownership in the marks "Dialogo Bilingue" and/or "El Dialogo."

10.    Whether Lillian Santiago Bauzá and/or El Dialogo, LLC converted the property and assets of Dialogo, LLC.

11.    Whether Defendants violated M.G.L. c. 93A.

12.    Whether Solé is in breach of his employment agreement.

**7.    REQUESTED AMENDMENTS TO THE PLEADINGS**

The parties have not requested any amendment to the pleadings.

**8.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE CASE**

No.

**9.    PROBABLE LENGTH OF TRIAL**

Defendants have demanded a trial by jury.  Defendants have stated it will take three (3) to five (5) trial days.  Plaintiffs anticipate that it will be five (5) to seven (7) trial days.

**10.    WITNESSES EXPECTED TO TESTIFY AT TRIAL**

Plaintiffs may call any of the following witnesses, which also appear on Defendants' witness list:

a.    Lillian Santiago Bauzá, 123 St. Kolbe Drive, Holyoke, MA - Will testify as to all issues.

b.    Hector Bauzá, 123 St. Kolbe Drive, Holyoke, MA - Will testify to activities of "Dialogo Bilingue" and its prior use of the "El Dialogo" mark; meetings and conversations with Gerry Pike and Lillian Santiago Bauzá; operations and activities of Dialogo Bilingue, Inc. and Dialogo, LLC.

c.    Manuel Frau and Ingram Estrnay-Frau, 221 Pondview Drive, Amherst, MA- Will testify to activities of "Dialogo Bilingue" from its inception until present date.

d.    Gerry Pike, New Foundland, PA - Will testify as to all issues.

e.    Aura Gabriella Romero, 136 St. Kolbe Drive, Holyoke, MA - Will testify concerning her employment with Dialogo Bilingue, Inc. and Dialogo, LLC; meetings with Gerry Pike and Lillian Santiago Bauzá; the operations and activities of Dialogo Bilingue, Inc., Dialogo, LLC, El Dialogo, LLC and Lillian Santiago Bauzá.

f.    Anna Morales - Will testify concerning her employment with Dialogo, LLC and its operations; meetings and conversations with Gerry Pike; meetings and conversations with Lillian Santiago Bauzá; operations and activities of Dialogo, LLC and El Dialogo, LLC.

g.    Francisco J. Solé, 28 Woodside Circle, Southwick, MA - Will testify concerning his employment with Dialogo, LLC and its operations; meetings and conversations with Gerry Pike; meetings and conversations with Lillian Santiago Bauzá; the operations of Dialogo, LLC and El Dialogo, LLC.

h.    John Aubin, Managing Member, Open Square LLC, 10 Open Square Way, Holyoke, MA - Operations and dealings with Lillian Santiago Bauzá, Dialogo, LLC, and El Dialogo, LLC; all activities relating to Dialogo, LLC and El Dialogo, LLC.

**11.    <u>EXHIBITS FOR TRIAL</u>**

See Exhibit A.

DIÁLOGO, LLC and
DIRECT MERCHANTS S.A., INC.

By their attorneys,

Dated: October 28, 2005          /s/ Seth W. Brewster
                                 George Field (BBO No. 164520)
                                 Seth W. Brewster (BBO No. 551248)
                                 Attorneys for Plaintiffs
                                 Verrill Dana, LLP
                                 One Portland Square
                                 Portland, ME  04112-0586
                                 (207) 774-4000
                                 gfield@verrilldana.com
                                 sbrewster@verrilldana.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2005, I electronically filed Plaintiffs' Pretrial Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:  Keith A. Minoff, Esq. and Arnold Greenhut, Esq., and I hereby certify that there are no non-registered participants.

/s/ Seth W. Brewster
Seth W. Brewster

P:\sbrewster\Dialogo\Pretrial Memorandum 102805.doc

**EXHIBIT A**

**DIALOGO, LLC, et al. v. LILLIAN SANTIAGO BAUZA, et al.**
**UNITED STATES DISTRICT COURT OF MASSACHUSETTS**
**DOCKET NO. 05-30076-MAP**

**PLAINTIFF'S EXHIBIT LIST**

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 1. | Dialogo Bilingue - Article of Incorporation | 9/17/03 | | | | | | |
| 2. | Dialogo Bilingue - Minutes of Organization Meeting | 9/3/03 | | | | | | |
| 3. | Dialogo Bilingue By-Laws | No Date | | | | | | |
| 4. | Dialogo Bilingue - Application for EID | 9/3/03 | | | | | | |
| 5. | Dialogo.com Registration | 4/17/03 | | | | | | |
| 6. | Dialogo Bilingue - Annual Corporation Report | 3/15/04 | | | | | | |
| 7. | Dialogo Bilingue - 2003 Tax Return | 6/7/04 | | | | | | |
| 8. | Dialogo Bilingue Rental Agreement | 12/1/03 | | | | | | |
| 9. | Dialogo Bilingue - Avon Invoice | 8/3/03 | | | | | | |
| 10. | Dialogo Bilingue Financial Statements | 5/31/04 | | | | | | |
| 11. | Dialogo Bilingue - Financial Statements | 5/27/04 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 12. | Letter from Lillian Santiago-Bauza to Gerry Pike regarding Dialogo Business Plan | 6/04 | | | | | | |
| 13. | Dialogo Bilingue Business Plan | 5/04 | | | | | | |
| 14. | E-mail from Manuel to Lillian Santiago and Hector Bauza re retirement | 5/31/04 | | | | | | |
| 15. | Maria Acuna Real Estate Invoice | 6/10/04 | | | | | | |
| 16. | E-mail from Gerry Pike to Lillian re Response to "assertive" e-mail | 6/9/04 | | | | | | |
| 17. | E-mail from Gerry Pike to Lillian re LLC Agreement Documents | 6/9/04 | | | | | | |
| 18. | Venture Agreement | 6/9/04 | | | | | | |
| 19. | Operating Agreement | 6/9/04 | | | | | | |
| 20. | E-mail from Lillian to Frau re Closing the Corporation | 6/15/04 | | | | | | |
| 21. | Eldialogo.com Registration | 6/10/04 | | | | | | |
| 22. | E-mail from Gerry Pike to Lillian re "new business under Dialogo | 6/17/04 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 23. | Letter to Lillian from Sean Cleary re Frau's Interests | 6/17/04 | | | | | | |
| 24. | E-mail from Gerry Pike to Lillian re El Dialogo Follow-up | 7/26/04 | | | | | | |
| 25. | E-mail from Lillian to Gerry Pike re El Dialogo Financial State and Future | 8/2/04 | | | | | | |
| 26. | E-mail from Gerry Pike to Lillian re El Dialogo Update | 8/11/04 | | | | | | |
| 27. | E-mail from Gerry Pike to Lillian re El Dialogo Update | 8/13/04 | | | | | | |
| 28. | E-mail from Gerry Pike to Lillian re El Dialogo ID # | 8/17/04 | | | | | | |
| 29. | E-mail from Lillian to Gerry Pike re El Dialogo update | 10/14/04 | | | | | | |
| 30. | E-mail from Gerry Pike to Lillian re El Diagolo Event | 10/26/04 | | | | | | |
| 31. | E-mail from Gerry Pike to Lillian re El Dialogo | 11/2/04 | | | | | | |
| 32. | El Dialogo Financial Statements | 12/13/04 | | | | | | |
| 33. | Dialogo Profit and | 1/24/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 34. | Loss Statement | | | | | | | |
| 35. | Dialogo Profit & Loss Detail Statement | 1/24/05 | | | | | | |
| 36. | El Dialogo Advertising Order | Undated | | | | | | |
| 37. | E-mail from Gerry Pike to Lillian re "Venture needs to come to close" | 1/5/05 | | | | | | |
| 38. | Dialogo - Ad Order From Pioneer Valley Oil | 9/20/04 | | | | | | |
| 39. | E-mail from Gerry Pike to Lillian re Sole Employment | 12/15/04 | | | | | | |
| 40. | E-mail from Lillian to Gerry Pike re Francisco Contract | 12/15/04 | | | | | | |
| 41. | E-mail from Gerry Pike to Lillian re Sole Contract and CA | 12/23/04 | | | | | | |
| 42. | Sole employment contract and cover letter | 1/11/05 | | | | | | |
| 43. | E-mail from Gerry Pike to Sole re Accepting Dialogo offer letter and CA Non-Compete Agreement | 1/14/05 | | | | | | |
| | Sole Employment Contract | 1/6/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 44. | Dialogo - Ad order to Palace Realty | 1/17/05 | | | | | | |
| 45. | E-mail from Gerry Pike to Sole re Employment | 2/2/05 | | | | | | |
| 46. | E-mail from Gerry Pike to Lillian re Javier's Status | 2/3/05 | | | | | | |
| 47. | E-mail from Lillian to Gerry Pike re Sole Employment | 2/3/05 | | | | | | |
| 48. | E-mail from Gerry Pike to Sole re Status | 2/8/05 | | | | | | |
| 49. | Dialogo Check to Sole | 2/14/05 | | | | | | |
| 50. | E-mail from Gerry Pike to Sole re Compromise | 2/11/05 | | | | | | |
| 51. | El Dialogo Bank Record | 4/5/05 | | | | | | |
| 52. | Verizon Wireless Invoice | 3/16/05 | | | | | | |
| 53. | Dialogo Bilingue Financial Statements | 7/04 | | | | | | |
| 54. | Dialogo Bilingue 2003 Massachusetts Excise Tax | 6/7/04 | | | | | | |
| 55. | Lillian Resignation Envelope | 2/25/05 | | | | | | |
| 56. | Affidavit of Lillian | 4/6/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 57. | Direct Merchants S.A., Inc. Ledger | 1/27/05 | | | | | | |
| 58. | DMSA Expenditures | 4/6/05 | | | | | | |
| 59. | Letter from Lillian to Gerry Pike re Termination of Business | 2/17/05 | | | | | | |
| 60. | El Dialogo Lease with Open Square | 2/18/05 | | | | | | |
| 61. | E-mail from Gerry Pike to Sole re Sickness | 2/20/05 | | | | | | |
| 62. | E-mail from Gabriela Romero to Lillian re Administrative Reorganization | 2/25/05 | | | | | | |
| 63. | E-mail from Gabriela Romero to Lillian re Invoices | 2/28/05 | | | | | | |
| 64. | Gabriela Account Statement to Dialogo | 2/28/05 | | | | | | |
| 65. | Sole Resignation Letter | 2/28/05 | | | | | | |
| 66. | El Dialogo - Certificate of Organization | 3/3/05 | | | | | | |
| 67. | El Dialogo - Operating Agreement | 3/3/05 | | | | | | |
| 68. | El Dialogo Checkbook Register | 3/10/05 | | | | | | |
| 69. | El Dialogo - $5,000 Bank Check re Denise | 3/11/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 70. | Sole Invoice to El Dialogo re Marketing Services | 3/11/05 | | | | | | |
| 71. | El Dialogo Trademark Registration | 3/21/05 | | | | | | |
| 72. | Dialogo Bilingue - Verizon Bill | 3/16/05 | | | | | | |
| 73. | Dialogo - General Ledger | 4/13/05 | | | | | | |
| 74. | El Dialogo - Ad Revenues | 4/15/05 | | | | | | |
| 75. | Dialogo Bilingue Bank Statements | 6/03 - 12/03 | | | | | | |
| 76. | Dialogo Bilingue Bank Statements | 12/31/04 | | | | | | |
| 77. | Dialogo, LLC Bank Statements | 6/30/04 | | | | | | |
| 78. | Dialogo Bank Statements | 1/4/05 - 4/21/05 | | | | | | |
| 79. | El Dialogo Bank Account History | 5/1/05 | | | | | | |
| 80. | River Valley Letter re Lillian's Employment | 4/26/05 | | | | | | |
| 81. | Lillian's 2004 W-2 for River Valley Consulting | 12/31/04 | | | | | | |
| 82. | El Dialogo Distribution List | Undated | | | | | | |
| 83. | El Dialogo Editions | Undated | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 84. | Lillian Financial Statement | Undated | | | | | | |
| 85. | E-mail from website support to Frau-Ramos re Dialogo | 4/17/03 | | | | | | |
| 86. | Gabriela Romero Resume | 6/2/04 | | | | | | |
| 87. | Letter from Gabriela Romero to Lillian re Cover Letter | 6/2/04 | | | | | | |
| 88. | E-mail from Lillian to Gerry Pike re sorry for 2004 | Early June 2004 | | | | | | |
| 89. | E-mail from Gerry Pike to Lillian re New Business under Dialogo | 6/17/04 | | | | | | |
| 90. | E-mail from Lillian to Gerry Pike re Eagle Printing | 8/10/04 | | | | | | |
| 91. | E-mail from Lillian to Gerry Pike re Printing Company | 8/11/04 | | | | | | |
| 92. | E-mail from Lillian to Gerry Pike re Dialogo Update and Printing Issues | 8/11/04 | | | | | | |
| 93. | E-mail from Lillian to Gerry Pike re Dialogo LLC ID # | 8/13/04 | | | | | | |
| 94. | E-mail from Lillian to Gerry Pike re Fed ID # | 8/27/04 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 95. | E-mail from Lillian to Gerry Pike re Update, Valley Advocate and New Printer | 9/14/04 | | | | | | |
| 96. | E-mail from Lillian to Gerry Pike re Web Page | 10/4/04 | | | | | | |
| 97. | E-mail from Lillian to Gerry Pike re Update and Increasing Sales | 10/14/04 | | | | | | |
| 98. | E-mail from Lillian to Gerry Pike re No Long Paying Salaries | 11/1/04 | | | | | | |
| 99. | E-mail from Gerry Pike to Lillian re Payment of Salaries | 11/1/04 | | | | | | |
| 100. | E-mail from Gerry Pike to Lillian re November Tantrum | 11/2/04 | | | | | | |
| 101. | Peoples Bank Statement | 12/13/04 | | | | | | |
| 102. | E-mail from Gerry Pike to Lillian re Sole Employment and Contract Language | 12/17/04 | | | | | | |
| 103. | E-mail from Lillian to Gerry Pike re Acknowledge Pike's Investment | 1/5/05 | | | | | | |
| 104. | E-mail from Sole to Gerry Pike re HispanAmerica stats | 1/25/05 | | | | | | |
| 105. | E-mail from Sole to | 2/2/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 106. | Gerry Pike re Employment | | | | | | | |
| 107. | E-mail from Lillian to Gerry Pike re Positive Moment to Grow | 2/3/05 | | | | | | |
| 108. | E-mail from Gerry Pike to Sole re Compensation Compromise | 2/11/05 | | | | | | |
| 109. | E-mail from Lillian to Gabriela Romero re Invoices and Payment Compromise | 2/28/05 | | | | | | |
| 110. | DMSA's Expenditures | 2/29/05 | | | | | | |
| 111. | El Dialogo, LLC Incorporation Materials | 3/14/05 | | | | | | |
| 112. | El Dialogo Newspaper Article | 3/15/05 | | | | | | |
| 113. | El Dialogo Edition | 3/15/05 | | | | | | |
| 114. | El Dialogo.com Contact Page | 3/23/05 | | | | | | |
| 115. | El Dialogo Edition | 4/1/05 | | | | | | |
| 116. | El Dialogo Cover | 4/15/05 | | | | | | |
| 117. | E-mail from Gerry Pike to Lillian re El Dialogo Follow-up July 2004 | 7/22/04 | | | | | | |
| | Dialogo 2004 Payments to Employees | Undated | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 118. | Dialogo Bilingue - Compensation to Shareholders | Undated | | | | | | |
| 119. | Dialogo Bilingue Customer Record | Undated | | | | | | |
| 120. | Dialogo Bilingue - Cash Flow Projection | 8/31/03 | | | | | | |
| 121. | Dialogo Bilingue - Auto Expenses Invoice | 6/16/03 | | | | | | |
| 122. | Dialogo Bilingue - Blitz Media Order | 6/17/03 | | | | | | |
| 123. | Dialogo Bilingue - July/August/Sept. Expenses | 9/03 | | | | | | |
| 124. | Dialogo Bilingue - Open Square Invoice | 8/3/03 | | | | | | |
| 125. | Dialogo Bilingue - Suzuki Invoice | 8/15/03 | | | | | | |
| 126. | Dialogo Bilingue - Concast Information Form | 9/9/03 | | | | | | |
| 127. | Dialogo Bilingue re Invoice | 12/1/03 | | | | | | |
| 128. | Dialogo Bilingue - Auto Express Invoice | 12/1/03 | | | | | | |
| 129. | Dialogo Bilingue Invoice with new address | 1/1/04 | | | | | | |
| 130. | Dialogo Bilingue - Balance Sheet | 12/31/03 | | | | | | |

-11-

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 131. | Dialogo Bilingue - Balise Invoice | 1/1/04 | | | | | | |
| 132. | Dialogo Bilingue - Auto Express Check | 1/13/04 | | | | | | |
| 133. | Dialogo Bilingue - Furniture Invoice re To Carmen | 2/24/04 | | | | | | |
| 134. | Dialogo Bilingue - 2003 Financial Statements | 4/8/04 | | | | | | |
| 135. | Dialogo Bilingue - Blitz Media Order | 4/16/04 | | | | | | |
| 136. | Dialogo Bilingue - Six Flags Trade Agreement | 4/24/04 | | | | | | |
| 137. | Dialogo Bilingue - 2003 General Ledger | 4/29/04 | | | | | | |
| 138. | Dialogo Bilingue - Invoice to Blitz Media | 5/4/04 | | | | | | |
| 139. | Dialogo Bilingue - 2003 Federal Tax Return | 6/1/04 | | | | | | |
| 140. | Dialogo Bilingue - Financial Statements | 6/1/03 - 6/1/04 | | | | | | |
| 141. | Dialogo Bilingue - Invoice to Comcast | 6/10/04 | | | | | | |
| 142. | Dialogo Bilingue - Blitz Media Notice of Discovery | 6/10/04 | | | | | | |
| 143. | Dialogo Bilingue Invoice to Blitz Media | 6/10/04 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 144. | Dialogo Sales | | | | | | | |
| 145. | Dialogo, LLC Sales (by Customer) | 7/1/04 - 12/31/04 | | | | | | |
| 146. | Dialogo Sales (By Customer) | 7/1/04 | | | | | | |
| 147. | El Dialogo Contract with Auto Express | 7/1/04 - 2/15/05 | | | | | | |
| 148. | E-mail from Lillian to Gerry Pike re El Dialogo Follow Up | 7/1/04 | | | | | | |
| 149. | E-mail from Acuna to El Dialogo re New Layout | 7/26/04 | | | | | | |
| 150. | Dialogo - Vidal Invoice | 8/18/04 | | | | | | |
| 151. | Dialogo Learned Invoices | 9/30/04 | | | | | | |
| 152. | Dialogo - Anna Morales Invoice | 10/2/04 - 12/18/04 | | | | | | |
| 153. | Dialogo - AM Invoice | 10/3/04 | | | | | | |
| 154. | E-mail from Lillian to Carmen re Payment of Invoices | 11/29/04 | | | | | | |
| 155. | El Dialogo Contract with Balise Auto | 11/29/04 | | | | | | |
| 156. | Dialogo Payments to Lillian | 12/9/04 | | | | | | |
| 157. | Dialogo - Sole Resume | 12/20/04 | | | | | | |
| | | 12/20/04 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 158. | Dialogo - AM Invoice | 12/27/04 | | | | | | |
| 159. | Dialogo - Income Statement | 12/31/04 | | | | | | |
| 160. | Dialogo Eagle Printing Invoice | 1/4/05 | | | | | | |
| 161. | Dialogo Bilingue - Electrical Invoice | 1/19/05 | | | | | | |
| 162. | Letter from Lillian to Gabriela Romero re Payment for Ads | 1/26/05 | | | | | | |
| 163. | DMSA Expenditures on Dialogo | 1/27/05 | | | | | | |
| 164. | E-mail from Romero to Lillian re March Rent | 1/31/05 | | | | | | |
| 165. | Dialogo Check to Gabriela Romero | 2/1/05 | | | | | | |
| 166. | Dialogo - 2004 1099 for Gabriela Romero | 2/1/05 | | | | | | |
| 167. | Dialogo Media Kit Invoice | 2/15/05 | | | | | | |
| 168. | Dialogo Bilingue - Verizon Invoice | 2/16/05 | | | | | | |
| 169. | E-mail from Gabriela Romero to Lillian re Work Plan | 2/23/05 | | | | | | |
| 170. | E-mail from Gabriela Romero to Lillian re Work Plan | 2/25/05 | | | | | | |
| 171. | E-mail from Gabriela Romero to Lillian (in Spanish) | 2/26/05 - 2/28/05 | | | | | | |

| Exhibit # | Name of Exhibit | Date | Marked | Offered | Admitted | Referred | Objected To | Comments |
|---|---|---|---|---|---|---|---|---|
| 172. | E-mail from Gabriela Romero to Lillian re "Dear Ms. Santiago" | 2/28/05 | | | | | | |
| 173. | Dialogo Bilingue Tax Return | 2/28/05 | | | | | | |
| 174. | Dialogo Bilingue - HG & E Invoice | 3/21/05 | | | | | | |
| 175. | Dialogo - Open Square Balance Statements | 4/1/05 | | | | | | |
| 176. | Letter from Lillian to Sole re Offer of Employment | 1/6/05 | | | | | | |
| 177. | El Dialogo Magazine | 10/15/05 | | | | | | |
| 178. | El Dialogo Magazine | 4/1/05 | | | | | | |
| 179. | Dialogo Bilingue Magazine | 6/1-15/04 | | | | | | |
| 180. | Application for Registration of a Foreign Limited Liability Company | 5/9/05 | | | | | | |

P:\brewster\dialogo\exhibit list.doc

-15-