# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

———————————————————— )
DIÁLOGO, LLC and )
DIRECT MERCHANTS S.A., INC., )        CIVIL ACTION NO. 05-30076-MAP
)
       Plaintiffs, )
)
v. )
)
LILLIAN SANTIAGO BAUZÁ, )
EL DIÁLOGO, LLC, and )
FRANCISCO JAVIER SOLÉ, )
)
       Defendants. )
———————————————————— )
)
LILLIAN SANTIAGO BAUZÁ, )
EL DIÁLOGO, LLC, and )
FRANCISCO JAVIER SOLÉ, )
)
       Counterclaim-Plaintiffs, )
)
v. )
)
DIÁLOGO, LLC  and )
DIRECT MERCHANTS S.A., INC., )
)
       Counterclaim-Defendants. )
———————————————————— )

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1,

Plaintiffs Diálogo, LLC and Direct Merchants S.A., Inc. (collectively, "Plaintiffs"), by and

through their attorneys, submit Plaintiffs' Statement of Material Facts in connection with

Plaintiffs' Motion for Summary Judgment.

## PARTIES

1.     Plaintiff Diálogo, LLC ("Diálogo, LLC" or "the Company") is a Maine limited liability company with its principal place of business in Holyoke, Massachusetts.  Second Amended Complaint ("Am. Compl. II") (Dkt. No. 15) ¶ 2; Answer of Defendants, Lillian Santiago Bauzá and El Diálogo, LLC to Second Amended Complaint ("Answer") (Dkt. No. 16) ¶ 2; Defendants/Plaintiffs-in-Counterclaim Pre-Trial Memorandum ("Def. Pre-Trial Memo") (Dkt. No. 45), at 5.

2.     Plaintiff Direct Merchants S.A., Inc. ("DMSA") is a New Jersey corporation with its principal place of business in Newfoundland, Pennsylvania.  Second Affidavit of Gerry Pike ("Pike Aff. II") ¶ 1; Def. Pre-Trial Memo at 5.

3.     Defendant Lillian Santiago Bauzá ("Santiago Bauzá") is a person residing in Holyoke, Massachusetts.  Am. Compl. II ¶ 4; Answer ¶ 4; Def. Pre-Trial Memo at 5.

4.     Defendant El Diálogo, LLC ("Newco") is a Massachusetts limited liability company with its principal place of business in Holyoke, Massachusetts.  Am. Compl. II ¶ 5; Answer ¶ 5; Def. Pre-Trial Memo at 5.

5.     Defendant Francisco Javier Solé ("Solé") is a person residing in Southwick, Massachusetts.  Am. Compl. II ¶ 6; Answer ¶ 6; Def. Pre-Trial Memo at 5.

## FACTS

6.     Defendant Santiago Bauzá has a Bachelors degree in psychology and public administration from Inter-American University of Puerto Rico and a Master's degree in education and counseling from Cambridge College in Boston, Massachusetts.  Deposition of Lillian Santiago Bauzá dated May 9, 2005 ("Santiago Dep.") 11.  In her professional experience, she has managed four nonprofit corporations, id. at 15, and presently is a City Councilor for the

City of  Holyoke.  Id.

7.      In 2003, Santiago Bauzá, her husband Hector Bauzá, and two other partners, Dr.

Manuel J. Frau-Ramos ("Mr. Frau" or "Manuel Frau") and Ingrid Estrany-Frau, started a

Massachusetts corporation called Diálogo Bilingue, Inc.  Santiago Dep. at 17, Ex. 1.  Under

Diálogo Bilingue, Inc.'s articles of organization, the company was a "bilingual/multicultural

newspaper with a mission to inform the Latino/a on diverse topic to encourage community

involvement." [1]  Id.

8.      The four directors of Diálogo Bilingue, Inc. were Hector Bauzá, Lillian Santiago

Bauzá, Dr. Manuel J. Frau-Ramos, and Ingrid Estrany-Frau.  Santiago Dep. 19 and Ex. 2.  Each

of these directors was and is a 25 percent owner of Diálogo Bilingue, Inc.  Id.  Ms. Santiago

Bauzá served as clerk of the corporation, and as clerk, her duties included filing the tax returns of

the corporation, submitting the annual report of the corporation to the Commonwealth of

Massachusetts, and filing the articles of organization with the Commonwealth of Massachusetts.

Id. at 20-21 and Ex. 3.

9.      Attorney Arnold Greenhut was both the attorney of Diálogo Bilingue, Inc. and

Ms. Santiago Bauzá's own attorney.  Santiago Dep. 18.

10.     The Diálogo Bilingue articles of organization were filed with the Massachusetts

Secretary of State on September 18, 2004.  Santiago Dep., Ex. 1.

11.     In April 2003, on behalf of Diálogo Bilingue, Manuel Frau-Ramos secured the

web domain name of "dialogobilingue.com."  Santiago Dep. 24-25 and Ex. 5.  Ms. Santiago

Bauzá was clear that this action was on behalf of the entire partnership.  Id. at 25-26.  Diálogo

---

[1] Throughout this Motion, quotations from affidavits, depositions, etc. are used.  Many of these quotations have internal grammatical errors, such as subject verb disagreement, need for an article, pronoun disagreement, and others.  Due to the number of grammatical errors, the Plaintiffs feel that the use of the notation "[sic]" will further

Bilingue, Inc. did not secure the name "El Diálogo."  Id. at 25.

12.     In the business community and with its customers, the company Diálogo Bilingue, Inc. was known as "Diálogo Bilingue."  Santiago Dep. 33.

13.     According to Diálogo Bilingue's financial statements, the company had a positive net income.  Santiago Dep. 41-47.  For example, its balance sheet as of May 31, 2004 reflected total net income as $14,142.72, Santiago Dep., Ex. 10, and the monthly May 2004 net income of $3,935.  Id.  That financial statement was accurate.  Santiago Dep. 47.

14.     The corporation Diálogo Bilingue published a newspaper known as "Diálogo Bilingue."  Santiago Dep. 48, Ex. 12.  The first edition of "Diálogo Bilingue" was on June 1, 2003, and the last edition of "Diálogo Bilingue" was on June 1, 2004.  Santiago Dep. 48-49.

15.     In May 2004, Ms. Santiago Bauzá discussed the business of Diálogo Bilingue, Inc. with Gerry Pike, Managing Director of DMSA.  Santiago Dep. 53-54.  She told him that she was breaking her involvement with her other partners and she was deciding whether to continue the newspaper herself or whether to close it down.  Id. at 55.

16.     At her deposition, Ms. Santiago Bauzá testified that the Diálogo Bilingue partnership was breaking down because it allegedly was not making any money and that she wanted to have a graphic design person to bring the newspaper to the "next level."  Santiago Dep. 56-57.

17.     In discussions about DMSA's possible investment in the newspaper, Ms. Santiago Bauzá testified at her deposition that Gerry Pike and she "vaguely discussed" money, and that "he [Gerry Pike on behalf of DMSA] would start by investing in software which is $1,000.  He said that he will pay me a $2,000 salary, and he would pay Gabriela the salary.  So that was the extent

---

detract from the Court's reading.  Therefore, Plaintiffs will not point out grammatical errors within subsequent quotations.

at that moment." Santiago Dep. 59. At her deposition, Ms. Santiago Bauzá was clear that this was the entire conversation regarding DMSA's investment. Santiago Dep. 57-59.

18.    The purpose of the new venture between Santiago Bauzá and DMSA was to develop a Spanish language and bilingual print and media business. Pike Aff. II ¶ 4.

19.    In that initial meeting, Ms. Santiago Bauzá explained to Mr. Pike "that [she] was breaking [her] relationship with Manuel [Frau] and [she] would have to decide whether [she] would continue the newspaper [Diálogo Bilingue] by [herself] or would [she] totally close the newspaper." Santiago Dep. 55.

20.    In his June 9, 2004 correspondence, Mr. Pike was clear about DMSA's investment and that Ms. Santiago Bauzá had "to resolve the partnership situation with Manuel [Frau] in order for [DMSA] to execute [the new agreement]." Santiago Dep. Ex. 17.

21.    Previously, Ms. Santiago Bauzá had offered her partners $3,000 for their Diálogo Bilingue stock. Santiago Dep. 65-66.

22.    Manuel Frau rejected the offer of $3,000 for his stock. Santiago Dep. 66.

23.    On May 31, 2004, Mr. Frau sent an e-mail to Ms. Santiago Bauzá which stated: "Ingrid [Mr. Frau's wife] and I . . . got to the conclusion that . . . [our] professional association is not working. Therefore we had decided that it's best that we retire all of the corporation that created Diálogo Bilingue . . . . In order to sell our share to you, we are going to need some more time and determine the accumulated value of our investment and to consider the actual value of the newspaper." Santiago Dep 75 and Ex. 15.

24.    In June 2004, Manual Frau sent a letter to Attorney Arnold Greenhut, who was Ms. Santiago Bauzá's attorney. Santiago Dep. 81. In that letter, Mr. Frau stated that he believed that the value of his investment in Diálogo Bilingue was $10,000 and that he wanted $10,000 for

his investment.  Id. at 81-82.

25.     In response to Mr. Frau's letter, Ms. Santiago Bauzá concluded that Diálogo

Bilingue was not making any money and that she was not going to buy Mr. Frau's stock for

$10,000.  Id.

26.     On June 15, 2004, Ms. Santiago Bauzá sent an e-mail to Mr. Frau in which she

stated:

> Manuel:  [I have decided to close] Diálogo [B]ilingue
> Corporation.  I am paying every bill owe[d] under Diálogo
> [B]ilingue to make sure that no one get[s] stuck with bills.

Santiago Dep. 114 and Ex. 21.

27.     In her deposition, Ms. Santiago Bauzá confirmed that Dialogue Bilingue was

being closed down and was not going to conduct business any more.  Santiago Dep. 114.

28.     On or about June 17, 2004, Attorney Sean Clary, who represented Manuel Frau

Ramos and Ingrid Estrany-Frau, wrote a letter to Ms. Santiago Bauzá.  Santiago Dep. 124-25 and

Ex. 24.  In this letter, Attorney Clary stated, in essence, that his clients were 50 percent

shareholders of Diálogo Bilingue and that Lillian Santiago Bauzá has the responsibility to either

buy them out or proceed by the corporate form.  Santiago Dep. 125.  Specifically, Attorney Clary

wrote:

> As I am sure you are aware the Fraus are 50% owners of the
> corporation.  No decisions can be made without their consent.

Santiago Dep. 125, Ex. 24.  Attorney Clary continued:  "In light of the above my clients believe

that it is in their best interest to separate themselves from the corporation . . . This is their bottom

line:  1.  $10,000 payment to the Fraus representing return of their capital investment, business

goodwill and uncompensated time."  Santiago Dep. 126; Ex. 24.

29.     When Ms. Santiago Bauzá received this letter, she did nothing.  Santiago Dep.

126.  She testified:  "And they were asking for $10,000 that the company didn't have, it just did not have.  They could have easily have bought me out also.  They could have easily continued the newspaper [themselves].  They chose not to."  Id.

30.      To Mr. Pike (of DMSA), Ms. Santiago Bauzá represented that "I informed Manuel that I was going to close Diálogo Bilingue Corporation."  Santiago Dep. 120 and Ex. 23.  She also represented that "[a]ll new business [is] under Diálogo LLC contract."  Santiago Dep. 121 and Ex. 23.

31.      The last edition of the newspaper Diálogo Bilingue was published on June 1, 2004.  Santiago Dep. 49.

32.      Thereafter, Ms. Santiago Bauzá "started something new."  Santiago Dep. 66.  As she testified at her deposition:

> I proceeded to look at my options with what exactly Manuel
> wanted to do.  He definitely didn't want any participation and
> so I started to work on creating, you know, my new
> newspaper.

Santiago Dep. 60.

33.      Through a new corporation (Diálogo, LLC), Santiago Dep. 65, Ms. Santiago Bauzá launched a new newspaper, with a "new look, new way of doing that newspaper."  Id. at 61.

34.      As Ms. Santiago Bauzá testified, in June 2004, she "was in the process of changing . . . of getting into another venture [Diálogo, LLC]," Santiago Dep. 82, because in June 2004, the corporation of Diálogo Bilingue, Inc. and the publication "Diálogo Bilingue" were being discontinued.  Id. at 83-84.

35.      On June 8, 2004, Ms. Santiago Bauzá wanted a contract to set forth the obligations between herself and DMSA.  Santiago Dep. 86-87.  In an e-mail sent in early June,

Ms. Santiago Bauzá stated:

> I need to come to some understanding with you before we enter
> this new adventure in both our professional and business lives.  I
> really need a tangible contract that we can start building from.

Santiago Dep. 87, Ex. 17.  As she explained in her deposition, she needed the Venture

Agreement and the Operating Agreement.  Id. at 87.  Ms. Santiago Bauzá continued, "I am

moving on with the plan I presented to you.  I am working very hard to have a new Diálogo by

July 1st."  Id. at 88 and Ex. 17.  She explained that she wanted to launch "El Diálogo."  Id.  And

she wanted "the legal documents upon which the new venture could be built."  Id.

36.    In response to Ms. Santiago Bauzá's e-mail, on June 9, 2004, Mr. Pike, on behalf

of DMSA, sent her a reply, stating:

> It has been but 7 business days since our 05/27/04 CT
> meeting and your e-mail of 06/08.  Let's review where we
> are re: DMSA's commitment and what we have done to
> date:
>
> *        We have committed to partner with you without
>          reservation.
>
> *        We outlined to you an exit strategy for your situation
>          with Manuel [her former business partner].

Pike Aff. II ¶ 7 and Ex. 2; Santiago Dep. 89-90.  In that same e-mail, Mr. Pike also stated:

> However, per our 06/02 conversation, you need to resolve
> the partnership situation with Manuel in order for us to
> execute it.

Id.

37.    Furthermore, before the execution of the Operating and Venture Agreements, Ms.

Santiago Bauzá understood that Carmen (representing DMSA) was "going to play a central role

in the expenditures of Diálogo, LLC."  Santiago Dep. 96.

38.    On June 9, 2004, Mr. Pike of DMSA sent to Ms. Santiago Bauzá, in response to

her request, a joint venture agreement and the organizational documents for the formation of the new company, Diálogo, LLC.  Am. Compl. II ¶ 13; Answer ¶ 13.  These documents were executed by DMSA and included a Venture Agreement and an Operating and Members Agreement (Diálogo, LLC) for the new company.  Id.

39.    The same day, June 9, Ms. Santiago Bauzá executed these documents on her own behalf and returned them to DMSA by facsimile.  Am. Compl. II ¶ 14; Answer ¶ 14, Santiago Dep. 97, 106.

40.    At the time of execution of the Venture and Operating Agreements, Ms. Santiago Bauzá was represented by Attorney Arnold Greenhut, but she did not have Attorney Greenhut review either of these agreements.  Santiago Dep. 108.

41.    Concurrent with Ms. Santiago Bauzá's execution of the documents, Gabriela Romero, who worked in the office of Diálogo Bilingue, Inc., advised Ms. Santiago Bauzá to consult with her attorney about these agreements.  Santiago Dep. 259.

42.    As contemplated in the Venture Agreement, and as set forth in the Operating and Members Agreement (Diálogo, LLC) ("the Operating Agreement"), DMSA and Ms. Santiago Bauzá entered into the Operating Agreement to form a limited liability company called Diálogo, LLC.  Am. Comp. II ¶ 15 and Ex. 20; Answer ¶ 15.  Under the Operating Agreement, DMSA and Ms. Santiago Bauzá agreed that the value of DMSA's initial capital contribution was (or was deemed to be) $50,000 and the value of Ms. Santiago Bauzá's initial capital contribution was (or was deemed to be) $1.00.  Id., Ex. 1 at 8, 30.  As set forth in the Operating Agreement, the membership interests of the Company are as follows:  DMSA - 51%, Ms. Santiago Bauzá - 49%. Id., Ex. 1 at 30.

43.    Under the Venture Agreement, Ms. Santiago Bauzá and DMSA formed a joint

venture and agreed that, among other things:

- They would create a limited liability company called Diálogo LLC for the joint venture and that Ms. Santiago Bauzá had a 49% membership interest and DMSA had a 51% membership interest;

- The Company will be managed by a board of directors, consisting of two representatives from DMSA and one designated by Ms. Santiago Bauzá;

- DMSA and LSB [Lillian Santiago Bauzá] shall through the Company jointly pursue the Spanish language and bilingual print and media business;

- Ms. Santiago Bauzá shall devote her efforts exclusively to the Company, and she shall not provide "such services, directly or indirectly for itself or any other entity or person to the extent it relates to the Business;"

- They will keep confidential the proprietary information of the Company.

Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 97 and Ex. 19.

44.    With respect to initial capital contributions, the Venture Agreement provided that "DMSA shall contribute the initial capital to launch the LLC in an amount that DMSA deems appropriate (including through travel, promotional costs, legal fees, accounting fees, billing fees and the labor of management and staff of DMSA)." Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 99. There is no term in the Venture Agreement providing that DMSA shall provide initial capital in the amount of $50,000 cash to launch the LLC. See id.

45.    The Venture Agreement also provided that "LSB [Lillian Santiago Bauzá] acknowledges all expenditures must be done with the concurrence of DMSA." Am. Compl. II ¶ 16 and Ex. 2; Answer ¶ 16; Santiago Dep. 98-99.

46.    As Ms. Santiago Bauzá testified at her deposition, the Venture Agreement "accurately reflect[ed] [her] understanding and discussions with Mr. Pike about what the venture

was all about," Santiago Dep. 98, and "accurately reflected what [her] obligations were and what DMSA['s] obligations [were]."  Id.

47.     Under the Operating Agreement, the Company was "formed for the object and purpose of developing Spanish language newspaper(s) and media."  Am. Compl. II ¶ 17 and Ex. 1; Answer ¶ 17.

48.     Under Section 12.7 of the Operating Agreement, Ms. Santiago Bauzá agreed to act exclusively on behalf of the Company.  She agreed that:

> LSB shall employ its diligent efforts for the Company and LSB shall not provide such services, directly or indirectly for itself or any other entity or person to the extent that it relates to the business.

Am. Compl. II ¶ 18 and Ex. 1, at 22; Answer ¶ 18.  Ms. Santiago Bauzá also agreed that she "may not resign from the Company prior to the dissolution and winding up of the Company." Am. Compl. II ¶ 18 and Ex. 1, at 10; Answer ¶ 18.

49.     Also in Section 12.7 of the Operating Agreement, the parties agreed that:

> DMSA or an Affiliate thereof may engage in or possess an interest in other business ventures of any nature of description, independently or with others, similar or dissimilar to the business of the Company . . .

Am. Compl. II ¶ 19 and Ex. 1, at 22; Answer ¶ 19.  Under this section of the Operating Agreement, DMSA was not obligated to act exclusively for the Company.

50.     Ms. Santiago Bauzá also agreed that the proprietary information of the Company was to be kept confidential.  Section 12.8 of the Operating Agreement provides, in relevant part:

> DMSA and LSB acknowledge and agree that all efforts and actions undertaken by them for the Company in connection with the business of the Company are to be kept confidential.  Neither DMSA nor LSB will disclose to any person or entity, directly or indirectly, any Proprietary Information (as hereinafter defined) relating to the Company's business without the prior written consent of the

> LLC.  For the purposes of this Agreement, "Proprietary
> Information" means all advertiser and subscription lists,
> advertiser and subscription prospects, marketing information
> and data, product information, strategic or technical
> information, financial information, supplier information,
> billing rates and advertiser provided information, documents
> and data.

Am. Compl. II ¶ 19 and Ex. 1, at 22; Answer ¶ 19.

51.    Under the Operating Agreement, the dissolution and winding up of the

Company's affairs require "the written consent of all Members."  Am. Compl. II ¶ 20 and Ex. 1,

at 24; Answer ¶ 20.

52.    Section 4.1 of the Operating Agreement explains the members' initial capital

contributions to the Company.  Section 4.1(a) provides:

> Each Member has contributed or is deemed to have contributed to the
> capital of the Company the amount set forth opposite the Member's name
> on Schedule A attached hereto.  The agreed value of the Capital
> Contributions made or deemed to have been made by each Member shall
> be set forth on Schedule A.

Pike Aff. II ¶ 22 and Ex. 4, at 8 (emphasis added).  Schedule A provides that the agreed value of

DMSA's capital contribution was $50,000, and Ms. Santiago Bauzá's capital contribution was

$1.00.  Id. at ¶ 22 and Ex. 4, at 30.

53.    DMSA's initial capital contribution, which the parties agreed had a value of

$50,000, was comprised of its marketing and strategy studies.  Pike Aff. II ¶ 23.

54.    Ms. Santiago Bauzá understood that as of June 9, 2004, the capital contributions

of DMSA (in the amount of $50,000) were already made or were deemed to have been made.

Santiago Dep. 110.

55.    Ms. Santiago Bauzá understood that under the Venture Agreement and Operating

Agreement, she agreed that "[her] conduct would be dedicated exclusively to the venture,"

Santiago Dep. 101, and she would not work on any other venture, including Diálogo Bilingue, Inc.  Id. at 101-102.

56.     All her efforts were "to be dedicated to Diálogo, LLC, the [Maine] corporation." Santiago Dep. 102.

57.     As Ms. Santiago Bauzá testified at her deposition, she "[brought] a business to the venture."  Santiago Dep. 105.  Since she had to dedicate her work life to Diálogo, LLC, Id., her contribution to the Company was "all of the contacts, advertising list[s], customer list[s] that [she] had with respect to Diálogo Bilingue."  Id. at 105-106.

58.     Furthermore, Ms. Santiago Bauzá also understood that anything that Mr. Pike had said to her previously was superceded by the terms of the Operating Agreement dated June 9, 2004.  Santiago Dep. 107; Am. Compl. II ¶ 15 and Ex. 1, at 28; Answer ¶ 15.

59.     Ms. Santiago Bauzá never consulted her attorney Arnold Greenhut about the Venture Agreement and Operating Agreement, and she never talked to any lawyer representing Mr. Pike, including Attorney Mark Googins or Verrill Dana, LLP.  Santiago Dep. 108-109.

60.     Ms. Santiago Bauzá understood that her legal obligations were governed by the Operating Agreement.  Santiago Dep. 113.

61.     In an e-mail dated June 15, 2004 to one of her partners in Diálogo Bilingue, Inc., Ms. Santiago Bauzá stated:  "I had decided to close Diálogo Bilingue corporation."  Santiago Dep. 114.  According to Ms. Santiago Bauzá, this corporation was not going to conduct business any longer.  Id. at 114-115.

62.     On June 10, 2004, the day after she executed the Venture Agreement and Operating Agreement, Ms. Santiago Bauzá secured the domain name registration "eldialogo.com".  Santiago Dep. 115-116.  At the time, she was operating exclusively on behalf

of Diálogo, LLC.  Id. at 116.  On the registration form, it provided that the account holder was

"El Diálogo, LLC," but as Ms. Santiago Bauzá admitted, the Massachusetts company El

Diálogo, LLC was not "even in [her] consciousness at that time."  Santiago Dep. 117.

63.    Shortly after Ms. Santiago Bauzá agreed to the terms of the Operating Agreement

and the Venture Agreement, she wrote an e-mail to Gerry Pike of DMSA to provide him with an

update of the Company.  Am. Compl. II ¶ 21; Answer ¶ 21.  She stated:

> Just an update of what I've been doing in the last two weeks.
> I informed Manuel that I was going to close the Diálogo
> [B]ilingual Corporation.  Open a bank account under
> Diálogo LLC, I need the ID # of the venture for the bank and
> clients.  Attached please find copy of the new media kit, new
> name logo and other form just for your information and
> [advice] if you wish.
>
> All new business are under Diálogo LLC contract.

Id. (emphasis supplied).

64.    In June, 2004, the Company established an office at Suite 405, 250 Open Square

in Holyoke, Massachusetts, where another DMSA joint venture was located.  Pike Aff. II ¶ 26.

65.    On or about July 1, 2004, the Company published and distributed the first issue of

its bilingual newspaper, **El Diálogo**.  Santiago Dep. 132.  It published numerous issues after that,

on a bi-weekly basis, from July, 2004 until February, 2005.  Pike Aff. II ¶ 27; Santiago Dep. 118,

131.

66.    Before July 1, 2004 and before the first issue of El Diálogo was published, neither

Ms. Santiago Bauzá nor Diálogo Bilingue, Inc. had published a newspaper entitled **El Diálogo**.

See Santiago Dep. 132; Pike Aff. II ¶ 27.

67.    In this e-mail (and all other documents), there is no written documentation stating

that DMSA is required to satisfy its alleged obligation to contribute $50,000.  Santiago Dep. 157.

68.     In December 2004, Ms. Santiago Bauzá and her husband met in Holyoke, Massachusetts to have dinner with Mr. Pike.  Santiago Dep. 163.  Immediately before dinner, Ms. Santiago Bauzá gave Mr. Pike a copy of the financial statements of Diálogo, LLC from July 1, 2004 to December 13, 2004.  Santiago Dep. 164.

69.     These financial statements dated December 13, 2004 were prepared by the Company's bookkeeper, Tracy Learned.  Santiago Dep. 164-165.

70.     Before she gave the financial statements to Mr. Pike, Ms. Santiago Bauzá reviewed these financial statements, and she believed that they were accurate.  Santiago Dep. 165.

71.     Ms. Santiago Bauzá testified that in her view, she had exclusive control over the business, the finances, and the financial reporting of the company, Diálogo, LLC.  Santiago Dep. 170.

72.     In the financial statements given to Mr. Pike in December 2004, the report stated that the net income for the period July 1, 2004 to December 13, 2004 was $21,204.23.  Santiago Dep., Ex. 36.

73.     In the first edition of El Diálogo, there was an editorial that introduced the new newspaper.  Santiago Dep. 132 and Ex. 27.  The editorial provided:

> El Diálogo, your bilingual newspaper has been created for all of our appreciated readers.  El Diálogo feels the commitment to be invited in the events and daily activities that our people experience in the region.

Id., Ex. 27, at 2.

74.     The editorial continued:

> Our goal is to assume social, cultural economic and information responsibility with our public.  In addition, to infuse reflection within the residents of our community

> through the articles and news develop in the Western Massachusetts region.
>
> If we analyze the word Dialog "Diálogo" is define[d] as : a conversation between two or more people around a theme or a controversy. This is precisely our intention as a local newspaper, to originate a dialog between different areas of our society and to participate in the resolution of the conflict that develops inside of it.
>
> Please come and joined us in our journalistic journey.

Santiago Dep., Ex. 27, at 2.

The newspaper indicated that Gabriela Romero wrote that editorial.  Id.

75.    On the masthead of the first edition of El Diálogo newspaper, it listed Lillian Santiago as publisher and managing director, Hector Bauzá as sales director, and Gabriela Romero as art director.  Id., Ex. 27, at 2.

76.    On July 22, 2004, Ms. Santiago Bauzá sent Gerry Pike (of DMSA) a status report of Diálogo, LLC and the first two editions of the newspaper.  Santiago Dep. 133-134 and Ex. 28.

77.    On July 22, 2004, Mr. Pike responded to Ms. Santiago Bauzá's status report. Santiago Dep. 133 and Ex. 28.

78.    On August 2, 2004, Ms. Santiago Bauzá sent an e-mail to Mr. Pike in which she stated:

> Since our last meeting I had analyzed our discussions around the financial state and future of El Diálogo.  To be honest this venture has a tremendous potential but we need to come to a better understanding of the financial situation.  In light of that, I attached a simple but honest financial statement of El Diálogo reality for the next 4 and ½ months.
>
> I included the cost of each session of the newspaper from edition, printing and distribution.  I also included a copy of our clients and amount of contracts.  The reality is that in order for us to break even we must [sell] $11,000 per month.  As you know this is not possible without a good sale[s] team.

Santiago Dep. 135-136 and Ex. 29.

79.     On or about August 11, 2004, Ms. Santiago Bauzá sent another update about the

newspaper.  Santiago Dep. 141 and Ex. 30.  In this e-mail, Santiago Bauzá wrote:

> Just an update about the printing.  I received the quotation from
> Eagle Printing we are saving around $600.00 per edition 16
> page 10,000 copies + $80.00 + $90.00 delivery.  20 pages
> 10,000 copies $1107.00 + $90.00 delivery.  With Star Press I
> pay $1,300 to $1,800 for the same amount.  So this is excellent
> news.
>
> However, we need to upgrade our Apple system to be able to
> convert the files to PDF on Quark in order to work with the
> new printer.  Can you check with NY to see if they have the
> software so we don't have to purchase it?  Let me know.

Santiago Dep. 140 and Ex. 30.  As she acknowledged, this e-mail did not state that Mr. Pike and

DMSA were not living up to their obligations under the Operating Agreement or the Venture

Agreement.  Santiago Dep. 141-142.

80.     In response, on or about August 11, 2004, Mr. Pike replied:  "Thank you for all

the excellent news!! Re: the software and the laptop Mac that we have for you, please call Willie

Matos @ HispanAmerica.  His phone number is 212-415-2860.  Best. GP."  Santiago Dep. 141,

Ex. 30.

81.     On or about August 13, 2004, Ms. Santiago Bauzá wrote an e-mail to Mr. Pike

and stated:

> Hi Gerry:
>
> I already have the tickets and hotel it was very inexpensive.  Jet
> Blue $131 round trip and the hotel was around 500.00 with all
> [included].  So I think I made good.  Thank you! . . .
>
> We need money . . . and I think this is the lead.

Santiago Dep. 141, Ex. 31.  In response, Mr. Pike stated:  "Hi Lillian.  I salute your [savvy] buy.

Good luck.  Best.  GP." Id.

82.    On or about August 17, 2004, Ms. Santiago Bauzá wrote about the enterprise and

the new clients:  "I need the ID# for Diálogo LLC[.]  I have several clients that need the ID# in

order to do business with us.  U-MASS, and several others.  I cannot use the last business #.

Please let me know how to proceed with this."  Santiago Dep. 147-148 and Ex. 32.  These clients

and accounts were accounts of the new business, Diálogo LLC.  Santiago Dep. 148.

83.    Ms. Santiago Bauzá again admitted that she did not state in this August e-mail

communication that DMSA or Mr. Pike had failed to invest in the business.  Santiago Dep. 148.

84.    On October 14, 2004, Ms. Santiago Bauzá sent another update of Diálogo, LLC's

business, El Diálogo to Mr. Pike.  Santiago Dep. 149-150, Ex. 33.  She stated:

> I [sent] Carmen, Ana Morales' invoice for the design and
> development of the web $800.00.  I let her know that we had
> talked about it and she [needed] it [for] your final approval.
>
> *   *   *
>
> As you can see in the sales they are increasing.  I was able to
> pay Ana's fees for the October 1st edition, $730.00.  I am trying
> to pay all expenses from El Diálogo account but I cannot cover
> the sales person until that person start[s] selling.

Id.  DMSA paid the expenses of building the El Diálogo web site.  Santiago Dep. 150-151.

85.    In this October 14 e-mail, Ms. Santiago Bauzá did not include any statement that

DMSA had failed to satisfy its obligations under the Operating Agreement.  Santiago Dep. 151

and Ex. 33.

86.    On or about November 1, 2004, Ms. Santiago Bauzá wrote an e-mail to Mr. Pike

stating:

> I was just informed by Carmen that you will no longer pay
> for our salaries.  I am appalled at this decision without
> notifying me about it.  I feel that you have not been [out

front] with me.  If you want out of the business I can
understand and I will honor that.

Santiago Dep. 153, Ex. 35.  In response, Mr. Pike wrote, "You have concluded -wrongly- that a

"decision" has been made.  Carmen was told to hold payment until I spoke with you, based on

our conversation of last month in which we had a reminder that the plan as presented by you back

in July showed Dialogo on its feet in October."  Id.

87.     In this e-mail of November 1, 2004, Ms. Santiago Bauzá did not state that DMSA

was in breach of its alleged obligation to invest in the business.  Santiago Dep. 157 and Ex. 35.

88.     Specifically, these financial statements showed the monthly net income as

follows:                                          Net Income

| | Net Income |
|---|---|
| July 2004 | $   777.38 |
| August 2004 | 9,147.92 |
| September 2004 | 2,748.71 |
| October 2004 | 5,542.98 |
| November 2004 | 4,924.34 |

Santiago Dep., Ex. 36 at 1924.

89.     On the Company's financial statement dated January 24, 2005 for the period July

1, 2004 through December 31, 2004, Diálogo, LLC had a net income of $36,000.  Santiago Dep.

174-175 and Ex. 38.  At her deposition, Ms. Santiago Bauzá testified that the net income of

$36,000 "seem[ed] accurate."  Santiago Dep. 175.

90.     From the period of May 27, 2004 through December 21, 2004, Direct Merchants

S.A. Inc. paid a number of expenses of Diálogo, LLC.  Santiago Dep. 223-224 and Ex. 52.

These payments included the payments of $7,975 to Ms. Santiago Bauzá for her salary working

for Diálogo, LLC.  Santiago Dep. 224-225 and Ex. 52.

91.     In September 2004, the entity named El Diálogo, LLC did not exist and was not

even a figment of Ms. Santiago Bauzá's imagination.  Santiago Dep. 184.

92.     On or about December 15, 2004, Ms. Santiago Bauzá forwarded a draft contract for Mr. Francisco Solé.  Santiago Dep. 188 and Ex. 41.  In this e-mail, she stated, "Also, if you can let me know how you plan to contribute to this, knowing that I do not have the money to cover all payables.  Payables are approximately $10,000 including this arrangement, and we have sales of $7,000 for the next two months."  Santiago Dep. 186 and Ex. 41.

93.     In this e-mail, Ms. Santiago Bauzá did not state anything about DMSA's alleged obligation to invest $50,000 into the business.  Santiago Dep. 191-192.

94.     Ms. Santiago Bauzá prepared the draft agreement was between Diálogo, LLC and Francisco J. Solé.  Santiago Dep. 186-188 and Ex. 41, at 1863-64.

95.     On or about December 23, 2004, Mr. Pike sent an e-mail to Ms. Santiago Bauzá reminding her "to forward the [confidentiality agreement] you wanted to present to Sr. Solé so that our attorneys could review it along with the draft contract."  Santiago Dep. 190-191 and Ex. 42.  In response, Ms. Santiago Bauzá replied:  "I preferred that you use the draft contract and confidentiality documents of your choice."  Santiago Dep., Ex. 42.

96.     On or about January 5, 2005, Ms. Santiago Bauzá sent an e-mail to Mr. Pike stating in part:

> You know the value on recruiting Solé and the need this newspaper has to contract someone that knows about sales.  I need the contract today, I am going to contract this man and I am going to bill you for $3,000 I need to do so.
>
> I cannot continue holding El Diálogo the way I had.  I entered into this partnership with the hope of bringing this newspaper further . . .
>
> I acknowledge your investment, and I will pay back if [it] comes to that, but I cannot have a partner that I cannot talk [to].

Santiago Dep. 193-94 and Ex. 43.  In response, Mr. Pike replied, "You are in a partnership and

we are growing a business, which is by definition a frustrating experience." Santiago Dep., Ex.

43.

97.     In this January 5, 2005 e-mail, Ms. Santiago Bauzá did <u>not</u> state that DMSA had

not satisfied its obligations under the Operating Agreement.  Santiago Dep. 198 and Ex. 43.

98.     On or about January 11, 2005, Mr. Solé accepted the position of Director of

Advertising Sales of Diálogo, LLC.  Santiago Dep., Exs. 44 and 45.

99.     On January 14, 2005, Mr. Pike sent an e-mail to Mr. Solé, stating:

> Thank you for accepting the Diálogo offer letter.  We look
> forward to welcoming you next week and growing a viable
> publication together.  Per our previous conversation, please
> find the attached CA/NC [Confidentiality Agreement/Non-
> Compete Agreement] for your signature.

Santiago Dep. 203-204 and Ex. 45.  A copy of the agreement was attached to the e-mail.

Santiago Dep. 204 and Ex. 46.

100.    On or about February 3, 2005, Ms. Santiago Bauzá wrote an e-mail to Mr. Pike

about Mr. Solé's employment and stated:

> Gerry, the newspaper is on an incredible moment to grow,
> since Francisco arrived we had implemented many systems
> that are going to help us get the accounts we need.  I do not
> want to jeopardize this with semantics.  He is very clear in the
> confidentiality and noncompete agreement he signed, and he is
> committed to help me get this newspaper in the financial
> position it should be.

>                     *  *  *

> I do not want this to become an issue and want to continue in
> this positive trend.

Santiago Dep. 210-211 and Ex. 48.

101.    In that e-mail, Ms. Santiago Bauzá also stated:

> I do not feel this man is here to make us lose money or to go to

> another newspaper and take the accounts, especially when this
> place is so small and people do not forgive nor forget.

Santiago Dep., Ex. 48.

102.    In these e-mails during the period February 2 or February 3, 2005, Ms. Santiago Bauzá did not state that DMSA had not fulfilled its obligations under the Operating Agreement. Santiago Dep. 218.

103.    On February 11, 2005, Mr. Pike sent an e-mail to Mr. Solé and Ms. Santiago Bauzá regarding the Solé employment situation.  Santiago Dep., Ex. 51.  In this e-mail, Mr. Pike said, "Following through on our conversation, we have a solution that meets both of our requirements without compromise."  Id.

104.    From June 2004 through February 2005, Ms. Santiago Bauzá never informed DMSA that she thought DMSA was failing to abide by any of its obligations under the Venture Agreement or Operating Agreement.  During this period, Ms. Santiago Bauzá never asserted, as she now apparently claims, that DMSA was obligated to invest $50,000 in the Company.  Pike Aff. II ¶ 33.  Through March, 2005, however, DMSA had made over $40,000 in such out-of-pocket payments and also contributed over $5,000 in management services.  Pike Aff. II ¶ 29.

105.    In mid-February, the Managing Director of DMSA (Gerry Pike) was nearly completely incapacitated and could not monitor the developments at the Company.  Pike Aff. II ¶ 34.  On February 20, Mr. Pike wrote Francisco Javier Solé, an employee of the Company, and Ms. Santiago Bauzá an e-mail in which he stated:

> Beatriz [Mallory] and myself have been on our backs for a week,
> hospitalized on Wednesday and now under an intensive and
> accelerated program of antibiotics to prevent a spreading pneumonia
> and check a body temperature that at times hovered close to 103
> degrees.

Pike Aff. II ¶ 35 and Ex. 9.  At her deposition, Ms. Santiago Bauzá acknowledged that she saw

this e-mail on February 20, 2005.  Santiago Dep. 250.  She also admitted that on February 20,

she was aware that Mr. Pike had been to the hospital.  Id. at 251.  Compare Affidavit of Lillian

Santiago Bauzá dated April 6, 2005 (Dkt. No. 9) ¶ 48 ("I was unaware of any illness on the part

of Mr. Pike").

      106.    At some point, Ms. Santiago Bauzá drafted a letter dated February 17, 2005 (that

she did not mail until more than a week later) to inform Mr. Pike that she was unilaterally

closing down the business of the Company (which she had no authority to do).  The entire text of

this letter, including several false accusations, is reproduced below:

> Since our last meeting and telephone conversation I have
> reconsidered my position in Diálogo LLC.  Since the beginning I
> have had to endure your lack of commitment to this organization
> and your promised financial contributions to the business.  Your
> inconsistent communication on the decision making process and
> lack of financial support to the venture has caused a material
> deteriorations, to the point where we do not have staff support, nor
> are we able to continue without the business going into debt.
> Therefore, as operating manager, I have no other alternative but to
> close the business effective immediately.
>
> The landlord has been made aware of the situation; he is
> allowing you to leave the computer, software and other
> office furniture at that space until the end of the month.  You
> should take whatever steps are necessary to remove those
> items at your earliest.  All business paperwork, e.g. bank
> statements, check book and list of account payables will be
> sent to you shortly.
>
> If you have questions and or concerns you can address those
> to my attorney, Arnold Greenhut at 413-785-1504.

Am. Compl. II ¶ 34 and Ex. 4; Answer ¶ 34; Pike Aff. II ¶ 36 and Ex. 10.

      107.    As Ms. Santiago Bauzá admitted in her deposition testimony, there is no provision

in either the Operating Agreement or Venture Agreement that allowed her to unilaterally shut

down Diálogo, LLC.  Santiago Dep. 240-241.  She admitted that the legal documents only require the board of directors to unanimously approve the dissolution of the business.  Santiago Dep. 241.

108.    This letter, however, was not mailed until February 25, 2005.  Pike Aff. II ¶ 37.  Mr. Pike did not receive the letter, which was sent by certified mail, until March 5.  Id. at ¶ 38.

109.    On February 24, 2005, the day before Ms. Santiago Bauzá mailed the letter informing Mr. Pike she was unilaterally closing the Company, Ms. Santiago Bauzá entered into a lease agreement, which was dated February 18, 2005, to lease space for the newspaper.  Santiago Dep. 246 and Ex. 59.

110.    Ms. Santiago Bauzá never notified Mr. Pike by telephone, e-mail, fax, or regular U.S. mail of her unauthorized decision to unilaterally close the business of the Company until she sent the February 25 letter which Mr. Pike received on March 5.  Pike Aff. II ¶ 39; Santiago Dep. 245.

111.    As of May 13, 2005, almost three months after the letter dated February 17, Ms. Santiago Bauzá still had not sent the business paperwork of the Company to DMSA as she promised to do "shortly" in her February 17 letter.  Pike Aff. II ¶ 40.  Upon information and belief, Ms. Santiago Bauzá continues to use the Company's bank accounts.  Id.; Santiago Dep. 296-297.

112.    On or about February 20, 2005, without the knowledge and consent of DMSA, Ms. Santiago Bauzá physically moved the business, assets, and equipment of the Company out of its location at Suite 405, 250 Open Square Way in Holyoke, Massachusetts to a new location in the same building, Suite 120, 4 Open Square.  Pike Aff. II ¶ 41; Santiago Dep. 248.  The Company's assets at that time included the following valuable, confidential "Proprietary

24

Information" which Ms. Santiago Bauzá had agreed to maintain confidential, and not disclose to others without prior written consent: advertiser and subscription lists, advertiser and subscription prospects, marketing information and data, product information, strategic or technical information, financial information, supplier information, billing rates and advertiser provided information, documents and data. No consent was ever given for the disclosure or use of this Company property. Id.

113.    On March 13, 2005, Ms. Santiago Bauzá established a new Massachusetts limited liability company called El Diálogo, LLC (hereinafter "Newco"). Pike Aff. II ¶ 42; Santiago Dep. 270-273 and Ex. 65. The principal office of this new company is listed as Suite 120, 4 Open Square in Holyoke, the same location which Ms. Santiago Bauzá moved the business assets and equipment of the Company. Santiago Dep., Ex. 65.

114.    On each of March 1, 2005 and March 15, 2005, April 1, 2005, and April 15, 2005, Ms. Santiago Bauzá published an edition of **El Diálogo**. Pike Aff. II ¶ 43; Santiago Dep. 230-231 and Exs. 55, 56 and 57. The newspaper "**El Diálogo**" was virtually "identical" to the newspaper published on February 15, 2005 by Diálogo, LLC. Santiago Dep. 230. Newco's and Ms. Santiago Bauzá's use of "El Diálogo" is likely to cause confusion to the readers and damage the goodwill of the Company. Id. at 231.

115.    As reflected in the March 15, 2005 edition of El Diálogo, the newspaper is virtually unchanged from the previous editions of **El Diálogo**. Pike Aff. II ¶ 46.

116.    On or about March 21, 2005, Newco, through Ms. Santiago Bauzá as president, applied to register the trademark "**El Diálogo**" in Massachusetts. Am. Compl. II ¶ 43; Answer ¶ 43. In the application, Santiago Bauzá stated that the date of first use of the trademark "El Diálogo" was July 1, 2004. Id.

117.    In the application, Ms. Santiago Bauzá failed to state that the July 1, 2004 use of the mark "**El Diálogo**" was by Diálogo, LLC or that on July 1, 2004, the applicant Newco did not exist.  Santiago Dep. 282-283.  Ms. Santiago Bauzá failed to identify any other predecessor entity even though the Massachusetts registration form expressly required such information.  Id.

118.    Under the penalties of perjury, Ms. Santiago Bauzá stated in the application that the "foregoing statements are true and that [she] verily believes that said applicant [Newco] is the owner of the mark . . . and that no other person has the right in the Commonwealth of Massachusetts to use such mark."  Santiago Dep. 280-281 and Ex. 70.

119.    On or about April 21, 2005, the Commonwealth of Massachusetts approved Plaintiff Diálogo, LLC's application for registration of the trademark ("El Diálogo") and issued a certification of registration to Plaintiff Diálogo, LLC for that trademark.  Pike Aff. II ¶ 44 and Ex. 12.

120.    Plaintiff Diálogo, LLC is registered as a foreign limited liability company doing business in the Commonwealth of Massachusetts.  Pike Aff. II ¶ 45 and Ex. 13.

121.    DMSA's reasonable financial expectations for Diálogo, LLC were that it would be self-sufficient by now and would have greatly increased in value.  Pike Aff. II ¶ 48.

122.    In the bank account statements of Diálogo, LLC, there were a number of checks written on the Company's checking account after February 17, 2005.  Santiago Dep., Ex. 76.

DIÁLOGO, LLC and
DIRECT MERCHANTS S.A., INC.

By its attorneys,


Dated:   November 30, 2005          /s/ Seth W. Brewster
                                    George Field (BBO No. 164520)
                                    Seth W. Brewster (BBO No. 551248)
                                    Attorneys for Plaintiffs
                                    Verrill Dana, LLP
                                    One Portland Square
                                    P.O. Box 586
                                    Portland, ME  04112-0586
                                    (207) 774-4000
                                    gfield@verrilldana.com
                                    sbrewster@verrilldana.com


## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2005, I electronically filed Plaintiffs' Statement of Material Facts with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:  Keith A. Minoff, Esq. and Arnold Greenhut, Esq.  The exhibits to this Statement of Material Facts will be sent in paper form via Federal Express to the Court and Attorney Minoff and Attorney Greenhut on November 30, 2005.  I hereby certify that there are no non-registered participants.

                                    /s/ Seth W. Brewster


P:\sbrewster\Dialogo\Plfs' Stmt of Mat'l Facts 113005.doc

# EXHIBIT A

# (To Plaintiffs' Statement of Material Facts)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIÁLOGO, LLC and<br>DIRECT MERCHANTS S.A., INC., | ) ) ) | CIVIL ACTION NO. 05-cv-30076-MAP |

DIÁLOGO, LLC and
DIRECT MERCHANTS S.A., INC.,        )

       Plaintiffs,

v.

LILLIAN SANTIAGO BAUZÁ,
EL DIÁLOGO, LLC, and
FRANCISCO JAVIER SOLÉ,

       Defendants.

LILLIAN SANTIAGO BAUZÁ,
EL DIÁLOGO, LLC, and
FRANCISCO JAVIER SOLÉ,

       Counterclaim-Plaintiffs,

v.

DIÁLOGO, LLC  and
DIRECT MERCHANTS S.A., INC.,

       Counterclaim-Defendants.

## NOTICE OF FILING WITH CLERK'S OFFICE

Notice is hereby given that the documents, exhibits or attachments listed below have been

manually filed by Federal Express with the Court and are available in paper form only.  Copies

of the exhibits below will be also sent by Federal Express to Keith A. Minoff, Esq. and Arnold

Greenhut, Esq.:

       Deposition Transcript of Gerald Pike, with attached Exhibits

       Deposition Transcript of Lillian Santiago Bauzá, with attached Exhibits

The original documents are maintained in the case file in the Clerk's Office.

DIÁLOGO, LLC and
DIRECT MERCHANTS S.A., INC.

By their attorneys,

Dated:  November 30, 2005

/s/ Seth W. Brewster
George Field (BBO No. 164520)
Seth W. Brewster (BBO No. 551248)
Attorneys for Plaintiffs
Verrill Dana, LLP
One Portland Square
P.O. Box 586
Portland, ME  04112-0586
(207) 774-4000
gfield@verrilldana.com
sbrewster@verrilldana.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2005, I filed by United States Mail the exhibits referenced in Plaintiffs' Statement of Material Facts to the following:  Keith A. Minoff, Esq. and Arnold Greenhut, Esq., and hereby certify that there are no non-registered participants.

/s/ Seth W. Brewster

P:\sbrewster\Dialogo\Notice of Filing 113005.doc

2