UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30076-MAP

DIÁLOGO, LLC and )
DIRECT MERCHANTS S.A., INC., )
    Plaintiffs )
)
v. )
)
LILLIAN SANTIAGO BAUZÁ, )
EL DIÁLOGO, LLC, and )
FRANCISCO JAVIER SOLÉ, )
    Defendants )
)
LILLIAN SANTIAGO BAUZÁ, )
EL DIÁLOGO, LLC, and )
FRANCISCO JAVIER SOLÉ, )
    Plaintiffs in Counterclaim )
)
v. )
)
DIÁLOGO, LLC and )
DIRECT MERCHANTS S.A., INC., )
    Defendants in Counterclaim

## OPPOSITION OF DEFENDANTS LILLIAN SANTIAGO BAUZÁ AND EL DIÁLOGO, LLC TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiffs' summary judgment motion represents the fourth time that they have attempted to obtain judicial relief on their claims without a trial. Initially, the plaintiffs moved this Court for a temporary restraining order enjoining Ms. Santiago and her new company, El Dialogo, LLC, from continuing to publish her newspaper based on a claim that plaintiff Dialogo, LLC owned the trademark rights to "El Dialogo" and that Ms. Santiago and her new company had misappropriated property of Dialogo, LLC consisting primarily of alleged trade secrets. This

417586

court denied the TRO on the grounds that the plaintiffs had failed to demonstrate that they were likely to prevail on their claims at trial because, among other reasons, Dialogo, LLC had not established a right to the "El Dialogo" mark. Following expedited discovery, which included the depositions of the principal players, Ms. Santiago and Gerry Pike of DMSA, plaintiffs moved for a preliminary injunction seeking the same relief sought in their application for a TRO based on the same arguments. Again, this Court denied the relief, finding that Ms. Santiago had used the "El Dialogo" mark first and that there was no evidence that she had ever transferred her rights to the new entity, Dialogo, LLC, which she had formed with Mr. Pike. Not content with the Court's ruling, the plaintiffs filed an interlocutory appeal with the First Circuit based on the same arguments which they had already made twice, unsuccessfully, to this Court. The Court of Appeals affirmed this Court's denial of the preliminary injunction.

Since that ruling, the parties have not engaged in any additional discovery. The record on summary judgment is identical to the record that this court considered when it denied temporary and preliminary injunctive relief. Plaintiffs' instant motion merely rehashes the same arguments and should be disposed of by this Court in the same fashion. By contending that there is no genuine dispute as to the material facts underlying their claims and Ms. Santiago's counterclaims, plaintiffs chose to simply ignore the many factual disputes running through this case, which include the following:

1. Whether Dialogo Bilingue, Inc. had already established its own right to the marks "Dialogo" and "El Dialogo" before Dialogo, LLC first published its own version of the newspaper on July 1, 2004;

2. Whether Dialogo, LLC owns the trademark rights to "El Dialogo";

417586

3. Whether Dialogo, LLC acquired any trademark rights to "El Dialogo" from Ms. Santiago Bauza or Dialogo Bilingue, Inc.;

4. Whether Gerry Pike of DMSA promised Ms. Santiago Bauza that DMSA would contribute $50,000 in starting capital for the new venture;

5. Whether DMSA made a capital contribution of $50,000 toward the new venture;

6. Whether Mr. Pike insisted that Ms. Santiago Bauza devote her full energies to the new venture and quit her job when they met to discuss the new venture in May, 2004;

7. Whether Mr. Pike's statements and promises led Ms. Santiago Bauza to resign her job at Holyoke Medical Center in June, 2004;

8. Whether DMSA performed its other obligations under the Operating Agreement to provide financial and other support for the operations of Dialogo, LLC;

9. Whether and to what extent Ms. Santiago Bauza has been damaged as a result of DMSA's breach of contract;

10. Whether Dialogo, LLC operated at a profit or a loss from July 1, 2004 through December 13, 2004;

11. Whether Mr. Pike's representations to Ms. Santiago Bauza at their meeting in May 2004 that DMSA would contribute $50,000 in starting capital were false and were made by him to induce her to enter into the Venture Agreement and Operating Agreement for Dialogo, LLC and resign her job at Holyoke Medical Center;

12. Whether and to what extent Lillian Santiago Bauza has been damaged as a result of DMSA's misrepresentations; and

13. Whether the defendants have misappropriated trade secrets or other property belonging to Dialogo, LLC. and, if so, the extent to which Dialogo, LLC has been damaged.

417586

These and other disputed facts must ultimately be decided by a jury and not by this Court. The plaintiffs' motion must therefore be denied in all respects.

## II.  RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

The Plaintiffs' Statement Of Undiputed Facts contains myriad facts which are hotly disputed and many others which have no bearing on the instant motion. (See Defendants' Response to Plaintiffs' Statement Of Undiputed Facts, which is being filed contemporaneously as a separate document).

## III.  ARGUMENT

### A.  A Genuine Issue Of Material Fact Exists As To Whether Or Not Defendants Are Infringing Dialogo, Llc's Trademarks.

#### 1.  Dialogo LLC Does Not Own The Trademark Rights To "El Dialogo."

The plaintiffs contend that Dialogo, LLC was the undisputed first user of the designation "El Dialogo" and, therefore, owns the trademark rights to that name. In fact, the "Dialogo" mark was established and used by another corporation, Dialogo Bilingue, Inc., as early as June 2003, more than one year before Dialogo, LLC was formed.

> The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection with a peculiar line of business. *Blanchard Importing & Distrib. Co. v. Charles Gilman & Son, Inc.*, 353 F.2d 400, 401 (1st Cir. 1965), *cert. denied*, 383 U.S. 968, 86 S. Ct. 1273, 16 L.Ed.2d 308 (1966). Trademark rights do not generally arise from registration. "[R]egistration does not create the underlying right in a trademark. That right which accrues from the use of a particular name or symbol, is essentially a common law property right. *Keebler Co. v. Rovira Bisquit Corp.*, 624 F.2d 366, 372 (1st Cir. 1980), citing *Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795, 796-97 (3rd Cir.), *cert. denied*, 388 U.S. 847, 70 S. Ct. 88, 94 L.Ed. 518 (1949). An essential element of a claim of trademark infringement is a likelihood of confusion among prospective purchasers of plaintiff's products and services caused by defendants' use of plaintiff's marks. See *Baker v. Simmons Co.*, 307 F.2d 458, 461 (1st Cir. 1962).

*Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 815-816 (1st Cir. 1987).

417586

Dialogo Bilingue, Inc. first began publishing the newspaper "Dialogo Bilingue" in June, 2003. It began as a monthly publication and became a bi-monthly in February, 2004. Defendants' Exhibit ("Def. Ex.") C, Affidavit of Ms. Santiago, ¶ 4. The newspaper that was produced by Dialogo Bilingue in 2003 was the same in all respects, i.e., bilingual format, layout, content and advertisements, as the "El Dialogo" newspaper first published by Dialogo, LLC in June, 2004 and currently being published by defendant El Dialogo, LLC. Def. Ex. C, Affidavit of Ms. Santiago, ¶¶ 5, 6. Although the newspaper was called "Dialogo Bilingue," the word "Dialogo" was featured prominently in the banner, the masthead and at the bottom of each page, appearing in bolder, larger type than the word "bilingue". Def. Ex. G.

In April, 2003, two months prior to the first publication of Dialogo Bilingue, Ms. Santiago and her partners in Dialogo Bilingue purchased the domain name "Dialogo." Def. Ex. C, Affidavit of Ms. Santiago, ¶ 9. Well before June 9, 2004, when Dialogo LLC was first formed, the "Dialogo Bilingue" newspaper was commonly known in the community simply as "Dialogo" or "El Dialogo". In addition, "El Dialogo" is commonly known simply as the new name and/or the continuation of the newspaper formerly known as "Dialogo Bilingue." Def. Ex. A.

Therefore, by July 1, 2004, when Dialogo, LLC published its first issue of "El Dialogo," Dialogo Bilingue, Inc. had already established a property right in the marks "Dialogo" and "El Dialogo" under the so-called "secondary meaning doctrine." The "secondary meaning doctrine" has been explained by the First Circuit as follows:

> [W]ords which have a primary meaning of their own, such as bug, may, by long use in connection with a particular product, come to be known by the public as specifically designating that product. *Volkswagenwerk AG v. Rickard*, 492 F.2d 474, 477 (5th Cir. 1974) (citations omitted). Secondary meaning is generally the test for determining whether the plaintiff has created a property right in the mark. It can be developed as a result of extensive advertising of a product with the mark.

417586

*Volkswagenwerk AG v. Hoffman*, 489 F. Supp. 678, 681 (D.S.C. 1980); *Time, Inc. v. Life Television Corp.*, 123 F. Supp. 470, 474-75 (D. Minn. 1954).

The establishment of secondary meaning in a word is an issue of fact. *Rickard*, 492 F.2d at 477-78. Accordingly, we must determine whether a genuine issue of fact lies regarding the establishment of a secondary meaning in the word Beetle.

"[I]t is appropriate to consider (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture."

*Rickard*, 492 F.2d at 478, quoting 3 Callman, Unfair Competition, Trademarks, and Monopolies, § 19.27 (4th ed. 1983).

*Volkswagenwerk AG v. Wheeler, supra*, 814 F.2d at 816.

Applying these factors, Dialogo Bilingue, Inc. had already established its own right to the marks "Dialogo" and "El Dialogo" before Dialogo LLC first published its own version of the newspaper, now called "El Dialogo", on July 1, 2004. At a minimum, this presents a genuine issue of material fact which precludes summary judgment.

### 2. El Dialogo LLC Never Acquired Any Trademark Rights From Ms. Santiago Or Her Former Company.

In denying the plaintiffs' motion, this Court explicitly found that Ms. Santiago was the first user of the "Dialogo" mark. Def. Ex. I at 24. It further found that Dialogo LLC never purchased or otherwise acquired the right to use the word "Dialogo" from Ms. Santiago or her former company, Dialogo Bilingue, Inc. As this Court stated,

> [i]f the intent in the transaction at the time that this corporation was being set up, Dialogo, LLC, was to purchase the right to use the word 'Dialogo', that was a very important asset that at that point belonged to the defendant [Santiago] that was never explicitly transferred, and I don't think the evidence is clear enough for me to be able to say that the plaintiffs have a likelihood of success on the merits on that point.

Def. Ex. I at 41.

417586

The two documents which were central to the transaction in which Dialogo, LLC was formed were the Venture Agreement, Defendant's Exhibit D, and the Operating Agreement. Def. Ex. E. The Venture Agreement is a two-page document in which the parties contemplate that they would be executing and delivering an Operating Agreement to form a Maine limited liability company known as Dialogo, LLC. The Operating Agreement is a 29-page document which describes in great detail the operation of the LLC and spells out the respective contributions of its two members, DMSA and Ms. Santiago. Section 4.1, entitled "Capital Contributions", states in part that "[e]ach member has contributed or is deemed to have contributed to the capital of the Company the amounts set forth opposite the Member's name on Schedule A attached hereto. The agreed value of the Capital Contributions made or deemed to have been made by each Member shall be set forth on Schedule A." Def. Ex. E. Schedule A provides that Ms. Santiago's capital contribution will be $1 and that DMSA's capital contribution will be $50,000. Def. Ex. E.

Nowhere in the Operating Agreement is there any language providing for the assignment or transfer of any trademark rights from Ms. Santiago to Dialogo, LLC. As this Court pointed out at the hearing on plaintiff's motion for preliminary injunction, it would have been "simple" to provide for a transfer of these rights to the LLC in the Operating Agreement:

> All that would have had to have been done at the time of the transfer would have been to put in a paragraph that says she's transferring all of her rights, title and interest in the trademark Dialogo into the new corporation and bingo, there you are. But that wasn't done, and so we have some rather ambiguous wording in the transcript about exactly what went over and what didn't go over.

Def. Ex. I at 25.

417586

### 3. Dialogo, LLC's Additional Arguments On Their Trademark Claims Are Not Applicable To This Case.

The plaintiffs contend in their motion that Ms. Santiago's previous use of "Dialogo Bilingue" did not create rights in "Dialogo" alone or in "El Dialogo". This ignores the fact that both "Dialogo" and "El Dialogo" had established a secondary meaning in the eyes of the public as a shorthand reference to the newspaper "Dialogo Bilingue" before the first issue of "El Dialogo" was ever published on July 1, 2004. (See discussion, *supra* at page 5).

The so-called "anti-dissection rule," which the plaintiffs cite, has no application here. In the case of *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568 (6th Cir. 1987), the issue before the court was whether there was a likelihood of confusion between the marks "Little Caesar" and "Pizza Caesar." The court found that the two marks were not confusingly similar despite the fact that they both employed the word "Caesar". There was no dispute in that case that the plaintiff owned the trademark rights to "Little Caesars". The only issue was whether the defendant was infringing on those trademark rights. In this case, by contrast, this Court previously found insufficient evidence to support the plaintiffs' threshold claim that it owned the trademark rights to "El Dialogo" based on first use. In fact, the court found that Ms. Santiago had used the mark first and had never transferred or assigned her trademark rights to the plaintiffs. Def. Ex. 1 at 24-25, 41.

### 4. Judicial Estoppel Does Not Apply

Plaintiffs argue that the equitable principle of judicial estoppel bars Ms. Santiago from claiming that she personally or Dialogo Bilingue, Inc. used or owned the mark "El Dialogo" before July 1, 2004. Judicial estoppel does not apply here and therefore does not bar Ms. Santiago or Dialogo Bilingue, Inc. from claiming use and ownership of "El Dialogo."

417586

"Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants." *Otis v. Arbella Mutual Insurance Company*, 443 Mass. 634, 639-40, 824 N.E.2d 23, 28 (2005) (internal quotation marks omitted; citations omitted). While no set formula determines the applicability of judicial estoppel, the Supreme Judicial Court of Massachusetts has recognized two "fundamental" elements to a claim of judicial estoppel. *Id.* at 640-641, 824 N.E.2d at 29. The first element is that the position being asserted must be "mutually exclusive" of the position asserted in a previous proceeding. *Id.* The second element is that the party asserting the disputed position must have successfully convinced the court to accept its prior position. *Id.* Neither element is satisfied in this case.

The filing of a trademark application is not part of a judicial proceeding. In Massachusetts, applicants file trademark applications with the Secretary of the Commonwealth. No court reviews or accepts trademark applications. Without conceding the first element, plaintiffs have not satisfied the second element of a claim of judicial estoppel. Plaintiff does not allege that either Ms. Santiago or Dialogo Bilingue, Inc. ever successfully convinced a court that that the first use of "El Dialogo" occurred on July 1, 2004.

The Supreme Judicial Court has also identified two circumstances, both of which are present here, in which the application of judicial estoppel may not be appropriate, even where a party can establish the two elements of a claim of judicial estoppel. "[I]t may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 642, 824 N.E.2d at 30 (internal quotation marks omitted; citations omitted). Ms. Santiago listed the first use of the mark "El Dialogo" as July 1, 2004 in error in her trademark

417586

application. This is clear from the numerous statements from members of the Holyoke community attesting to the fact that the "Dialogo Bilingue" newspaper was known in the community simply as "Dialogo" or "El Dialogo" well before the creation of Dialogo, LLC. Def. Ex. A. Application of the doctrine of judicial estoppel would therefore be inappropriate here. Ms. Santiago is not attempting to manipulate the judicial process; she simply made an error when filling out an application to the Secretary of the Commonwealth. In fact, this action was not even filed until after she applied for the trademark. Plaintiff's Statement of Material Facts, ¶ 116.

Application of the doctrine is also inappropriate where the prior position adopted by a party was "clearly wrong" but was adopted in good faith. *Otis* at 642, 824 N.E.2d at 30. Ms. Santiago was clearly wrong when she listed July 1, 2004 as the first use of the mark "El Dialogo" on her trademark application. The plaintiffs cannot establish that this was anything more than a good faith error on her part. She should therefore not be estopped from claiming that she or Dialogo Bilingue, Inc. personally used or owned the mark "El Dialogo" before July 1, 2004.

5. **The Plaintiff Did Not Acquire Any Trademark Rights Through Abandonment**

The plaintiffs also contend that Ms. Santiago abandoned any rights she had to the Dialogo name when she stopped publishing "Dialogo Bilingue" with her former company and began devoting her efforts to the newly formed Dialogo, LLC. "The party asserting abandonment of a trademark must establish that the owner of the mark both (1) discontinued use of the mark and (2) intended not to resume its use. The burden of proof is on the party claiming abandonment." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004), *citing* the Lanham Act, 15 U.S.C.A. § 1127. No evidence has been presented that Ms. Santiago's former company,

417586

Dialogo Bilingue, Inc., ever took any actions to relinquish its rights to the "Dialogo" and "El Dialogo" marks.

In *Vais*, the Fifth Circuit Court of Appeals affirmed the district court's grant of summary judgment based on a determination that defendant, George Vais, had abandoned the "Vais" trademark by selling his business and moving to Greece. *Id.* at 290, 294-95. The fact that defendant George Vais had discontinued use of the "Vais" mark was not disputed by the parties. *Id.* at 293. The issue on appeal was whether Vais had the intent to abandon his right to the "Vais" mark. *Id.* Plaintiffs had introduced declarations and affidavits of former customers of George Vais setting forth specific facts underlying their belief that George Vais had no intention of resuming his former trade in this country once he sold his business. *Id.* Plaintiffs also introduced a magazine article about George Vais' retirement, the sale of his business, and the allergy to chemicals which prompted his decision to retire and move to Greece. *Id.*

Plaintiff's contend that Ms. Santiago abandoned Dialogo Bilingue, Inc.. Assuming, without conceding, that that is true, Ms. Santiago's abandonment of Dialogo Bilingue, Inc. is irrelevant to the question of whether Dialogo Bilingue, Inc. abandoned its proprietary right to the marks "Dialogo," "El Dialogo," and "Dialogo Bilingue." Plaintiffs have introduced no evidence to show that Dialogo Bilingue, Inc. did not intend to resume use of the marks.

Further, to the extent that Ms. Santiago may have abandoned Dialogo Bilingue or that Dialogo Bilingue, Inc. may have abandoned its marks by ceasing publication, Ms. Santiago continued to publish the newspaper throughout June of 2004. Def. Ex. C, Affidavit of Ms. Santiago, ¶ 7, 8. Therefore, if anyone assumed ownership of the "El Dialogo" mark "abandoned" by Dialogo Bilingue, Inc., it was Ms. Santiago. The "El Dialogo" newspaper was not published by Dialogo, LLC until July 1, 2005. Def. Ex. H, Affidavit of Gerry Pike, ¶ 19.

417586

Ms. Santiago had continued her use of the marks "El Dialogo" and "Dialogo" until that time. Neither the Venture Agreement nor the Operating Agreement transfers any right that Ms. Santiago has in those marks to Dialogo, LLC.

Plaintiffs have failed to make any showing that Dialogo Bilingue, Inc. had the requisite intent to abandon its marks. If Dialogo Bilingue, Inc. did, in fact, abandon its marks, they were then used by Ms. Santiago, and any proprietary right to them became vested in her. Plaintiffs have therefore failed to establish that any abandonment by Dialogo Bilingue, Inc. gives them a proprietary interest in the marks "Dialogo," "El Dialogo," or "Dialogo Bilingue."

Plaintiffs' argument based on equitable estoppel is premised on arguments that defendants' contest elsewhere. Ms. Santiago stole nothing from Dialogo, LLC. In any case, the claim that she did is based on disputed facts. (See discussion, infra at section C.) A grant of summary judgment based on equitable estoppel is therefore unwarranted.

## B. DMSA's Material Breach Of The Operating Agreement Excused Ms. Santiago From Further Performance Under The Agreement.

The plaintiffs allege that Ms. Santiago breached the Operating Agreement and breached her fiduciary duties to Dialogo, LLC by terminating her relationship with the LLC and continuing to publish "El Dialogo" on her own through a newly formed Massachusetts corporation known as "El Dialogo, LLC". However, defendants claim that DMSA itself materially breached the Operating Agreement by failing to make its promised $50,000 initial capital contribution and by otherwise failing to provide needed financial support to the LLC. Under Massachusetts law, DMSA's material breach excused Ms. Santiago from any further performance under the Agreement. *Ward v. American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-102, 443 N.E. 2d 1342 (1983). Ms. Santiago was therefore entitled to withdraw from the

417586

Case 3:05-cv-30076-MAP   Document 57   Filed 01/11/2006   Page 13 of 15

Page 13 of 15

LLC, as she did by her letter of February 17, 2005, and was no longer bound by any restrictions on her employment that may have been contained in the Operating Agreement.

At the hearing on plaintiffs' motion for preliminary injunction, this Court observed that the plaintiffs' claims that Ms. Santiago breached the Operating Agreement and her defense to those claims based on DMSA's material breach amounted to a "horse race" in which "Ms. Santiago claimed that Mr. Pike's compliance with the agreement collapsed before hers did and, therefore, she was allowed to go on and do whatever she needed to do under those circumstances." Def. Ex. I at 30. The Court also sharply questioned the plaintiffs' assertion that DMSA was not required to contribute $50,000 in starting capital, despite the plain language of the Operating Agreement and Schedule A. Def. Ex. I at 32-35.

Thus, whether DMSA materially breached the Operating Agreement and whether Ms. Santiago was therefore excused from further performance under that Agreement clearly involve disputed facts which must be decided by the factfinder at trial.

### C. Plaintiff's Misappropriation and Breach of Fiduciary Duty Claims are Based on Disputed Facts

There is also no basis for the plaintiffs' claims that Ms. Santiago misappropriated trade secrets and other assets allegedly belonging to the LLC in violation of the Operating Agreement and Massachusetts law. Although trade secrets are defined broadly in M.G.L. c. 266, § 30 to include such items as "management information" and "merchandising information," the definition of a trade secret has been further refined by the Massachusetts courts. In the case of *Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840, 282 N.E.2d 921 (1972), the Supreme Judicial Court of Massachusetts set out six factors of relevant factual inquiry used to determine whether information sought to be protected is in fact and in law "confidential." These factors are (1) the extent to which the information is known outside of the business; (2) the extent to which

417586

it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. at 840, *citing*, Restatement of Torts, § 757, Comment b (1939), *quoted in Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 49 (1998).

Here, the plaintiffs have not even attempted to apply these six factors to the advertiser-related and other information which they claim Ms. Santiago wrongfully misappropriated. If these factors were applied, the information in question would not be considered "confidential" or a "trade secret." The companies that advertised in "El Dialogo" beginning in June, 2004 were the same companies that had advertised in "Dialogo Bilingue" between June, 2003 and May, 2004. Def. Ex. C, Affidavit of Ms. Santiago, ¶¶ 6, 19. The identity of these advertisers appears in each issue of "El Dialogo" and is hardly a secret. The plaintiffs also failed to point to any measures taken by Dialogo, LLC to guard the secrecy of this information or establish that Dialogo, LLC invested any significant effort or money in developing this information. It was clear from Ms. Santiago's testimony that the information in question was developed not by Dialogo, LLC but by Dialogo Bilingue, Inc. which had previously established relationships with these same advertisers and vendors. Def. Ex. C, Affidavit of Ms. Santiago, ¶¶ 6, 19. Also, before Ms. Santiago became involved with DMSA, she already had in place rental space, office equipment and supplies which she was using to publish "Dialogo Bilingue". Def. Ex. C, Affidavit of Ms. Santiago, ¶ 16.

417586

Case 3:05-cv-30076-MAP   Document 57   Filed 01/11/2006   Page 15 of 15

Page 15 of 15

Similarly, DMSA cannot claim that Ms. Santiago breached any fiduciary duties she may have had to DMSA or to the LLC based on DMSA's conduct. The plaintiffs' c. 93A claims are largely repetitive of their other claims and also do not support the granting of a motion for summary judgment. Plaintiffs' conversion claims are similarly repetitive and do not support the granting of a motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing, defendants Lillian Santiago Bauza and El Dialogo, LLC, respectfully urge that the Plaintiffs' Motion for Summary Judgment be denied in all respects.

THE DEFENDANTS/
PLAINTIFFS-IN-COUNTERCLAIM
LILLIAN SANTIAGO BAUZÁ and
EL DIÁLOGO, LLC

By /s/ Keith A. Minoff
Keith A. Minoff, Esq., of
Robinson Donovan Madden & Barry, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301 Fax (413) 785-4658
BBO No.: 551536
kminoff@robinson-donovan.com

### CERTIFICATE OF SERVICE

I, Keith A. Minoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on January 10, 2006.

Subscribed under the penalties of perjury.

/s/ Keith A. Minoff
Keith A. Minoff, Esq.

417586