UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30076-MAP

| | |
|---|---|
| DIÁLOGO, LLC and <br> DIRECT MERCHANTS S.A., INC., <br>     Plaintiffs <br> <br> v. <br> <br> LILLIAN SANTIAGO BAUZÁ, <br> EL DIÁLOGO, LLC, and <br> FRANCISCO JAVIER SOLÉ, <br>     Defendants <br> <br> LILLIAN SANTIAGO BAUZÁ, <br> EL DIÁLOGO, LLC, and <br> FRANCISCO JAVIER SOLÉ, <br>     Plaintiffs in Counterclaim <br> <br> v. <br> <br> DIÁLOGO, LLC and <br> DIRECT MERCHANTS S.A., INC., <br>     Defendants in Counterclaim | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

NOW COME the defendants, Lillian Santiago Bauzá and El Dialogo, LLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, respond to the Statement of Material Facts provided by the plaintiffs in support of their Motion for Summary Judgment.

The defendants respond as follows to Plaintiffs' Statement of Material Facts:

1.   Agree.

2.   Agree.

3.   Agree.

4. Agree.

5. Agree.

6. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Well before June 9, 2004, when Dialogo LLC was first formed, the "Dialogo Bilingue" newspaper was commonly known in the community simply as "Dialogo" or "El Dialogo". *See* Letters of Andrew Morehouse, Director, Solutions Community Development Corporation; Xenia Rosado-Merced, Community Outreach Manager, Holyoke Medical Center, attached as Exhibit A.

13. Agree.

14. Agree.

15. Agree.

16. Agree.

17. During the month of May 2004, Ms. Santiago and Mr. Gerry Pike, Managing Director of Direct Merchants S.A., Inc. ("DMSA"), met in North Haven, Connecticut to discuss a possible investment by DMSA in the newspaper. Deposition of Lillian Santiago, May 9, 2005 ("Santiago Dep.") at 53-60, 69-73; relevant pages attached as Exhibit B. Contrary to plaintiffs' characterization of Ms. Santiago's testimony, Ms. Santiago testified that Gerry Pike promised

417587

Ms. Santiago that DMSA would invest $50,000 in starting capital for Dialogo, LLC, and that she would not have entered into an agreement with Mr. Pike or DMSA absent such an undertaking. Ex. B, Santiago Dep. at 69-73. He also insisted that she resign from job at Holyoke Medical Center to devote her full time and energies to the new venture. Affidavit of Ms. Santiago, ¶ 14, attached as Exhibit C; Ex. B, Santiago Dep. at 130.

18. Disagree to the extent that plaintiffs imply that Ms. Santiago was not already operating a bilingual print and media business or that the newspaper that she had previously been publishing as a director of Dialogo Bilingue, Inc. differed in any material aspect from the newspaper published by Dialogo, LLC or the newspaper currently being published by El Dialogo, LLC. Ex. C, Affidavit of Ms. Santiago, ¶¶ 5, 6.

19. Agree.

20. Agree.

21. Agree.

22. Agree.

23. Agree.

24. Agree.

25. Agree.

26. Agree.

27. Agree.

28. Agree.

29. Agree.

30. Agree.

31. Disagree. See paragraphs 32, 33, and 34, below.

417587

32. Ms. Santiago did not testify that she "started something new." Ex. B, Santiago Dep. at 66. She responded "Yes" to the following leading question put to her by plaintiff's counsel: "So [Dr. Manuel Frau] rejected your offer and so therefore you started with something new?" Ex. B, Santiago Dep. at 66. As discussed in paragraphs 33 and 34, below, Ms. Santiago testified earlier in the same deposition that she considered the newspaper published by Dialogo, LLC to be a continuation of the newspaper previously published by Dialogo Bilingue, Inc. Ex. B, Santiago Dep. at 61.

33. The newspaper that was produced by Dialogo Bilingue, Inc. in 2003 was the same in all respects, i.e., bilingual format, layout, content and advertisements, as the "El Dialogo" newspaper first published by Dialogo, LLC in June, 2004 and currently being published by defendant El Dialogo, LLC. Ex. C, Santiago Affidavit at ¶¶ 5, 6.

Plaintiffs mischaracterize Ms. Santiago's testimony on this point:

> Question: So the thinking was that you were going to create a new newspaper. Dialogo Bilingue was no longer?
>
> Answer: No. That was not the thinking.
>
> Question: Is that what, with respect to when you mentioned the word new newspaper, what did you mean by that?
>
> Answer: That the way it looks different. You know, new look, new way of doing that newspaper. Not a new identity. Not a new business.

Ex. B, Santiago Dep. at 61.

34. Disagree. As of July 1, 2004, Ms. Santiago began publishing "El Dialogo" for Dialogo LLC, which was, in all respects, a continuation of "Dialogo Bilingue," a newspaper which she had been publishing along with her partners since June, 2003. Ex. C, Affidavit of Ms. Santiago at ¶¶ 4-8, 16, 19. As of June 16, 2004, Dialogo Bilingue, Inc., ceased publishing the newspaper. Santiago Dep. at 75-81. Between June 16, 2004 and July 1, 2004, Ms. Santiago operated the

417587

newspaper independently. Ex. C, Affidavit of Ms. Santiago, ¶¶ 7, 8. The publication "Dialogo Bilingue" was not discontinued. It was continued under new corporate ownership and using the shortened form of its name preferred by Ms. Santiago. Ex. B, Santiago Dep. at 61-62.

35. Agree.

36. Agree.

37. Agree that it was Ms. Santiago's understanding that Carmen was to have a significant role in overseeing Dialogo, LLC's income and expenditures. Ex. B, Santiago Dep. at 95-96. Disagree to the extent that plaintiffs imply that an understanding existed that Carmen was to have a decision-making role in the management of Dialogo, LLC. Ex. B, Santiago Dep. at 95. Disagree to the extent that plaintiffs imply that any action or inaction of the defendants resulted in a diminished role for Carmen. Ex. B, Santiago Dep. at 70, 151-152. Disagree to the extent plaintiffs imply that Carmen did have a significant role in overseeing Dialogo, LLC's financial affairs. *Id.*

38. Agree.

39. Agree.

40. Agree.

41. Agree.

42. Disagree that the Operating Agreement provided that DMSA had made its initial capital contribution as of June 9, 2004 or that it was not obligated under the Operating Agreement to make that initial capital contribution after June 9, 2005. The Operating Agreement, which superseded the Venture Agreement, provided that DMSA would make a capital contribution of $50,000.00. A copy of the Venture Agreement is attached as Exhibit D; a copy of the Operating Agreement is attached as Exhibit E.

417587

43. Agree.

44. Disagree. Although the Venture Agreement stated that DMSA was to contribute the initial capital to launch the LLC "in an amount that DMSA deems appropriate," Exhibit D, the Operating Agreement, which superseded the Venture Agreement, provided that DMSA would make a capital contribution of $50,000.00. Ex. E.

45. Agree.

46. Agree.

47. Agree.

48. Agree.

49. Agree.

50. Agree.

51. Agree.

52. Agree.

53. Disagree. DMSA's initial capital contribution under the terms of the Operating Agreement was to be $50,000 cash. DMSA's marketing and strategy studies were not part of its initial capital contribution and the parties did not agree that they had a value of $50,000. Suppl. Affidavit of Ms. Santiago, ¶¶ 2, 3, attached as Exhibit F; Ex. B, Santiago Dep. at 69-72, 83, 100, 111, 144. Ms. Santiago never agreed that DMSA initial capital contribution was comprised of its marketing and strategy studies or that those studies had a value of $50,000. Ms. Santiago would not have partnered with Mr. Pike or DMSA on that basis because those marketing and strategy studies were of no value to her. Ex. F, Suppl. Affidavit of Ms. Santiago, ¶¶ 2, 3.

54. Disagree. DMSA's initial capital contribution had not been made as of June 9, 2004, nor was it deemed to have been made. It was Ms. Santiago's understanding that DMSA's initial

417587

capital contribution was to be $50,000 cash. Ex. F, Suppl. Affidavit of Ms. Santiago, ¶¶ 2, 3; Ex. B, Santiago Dep. at 69-72, 83, 100, 111, 144.

55. Agree.

56. Agree.

57. Agree.

58. Agree.

59. Agree.

60. Agree.

61. Agree.

62. Agree.

63. Agree.

64. Agree.

65. Agree.

66. Disagree. Although the newspaper was called "Dialogo Bilingue," the word "Dialogo" was featured prominently in the banner, the masthead and at the bottom of each page, appearing in bolder, larger type than the word "bilingue." *See* Exhibit G. The newspaper was known in the community as "El Dialogo" or "Dialogo" well before July 1, 2004. Ex. A.

67. Disagree. The Operating Agreement obligates (and requires) DMSA to contribute an initial capital contribution of $50,000. Ex. E.

68. Agree.

69. Agree.

70. Disagree with the implication that at the time Ms. Santiago gave the financial statements to Mr. Pike she believed them to be accurate or that she failed to disclose their inaccuracy. Ex.

417587

F, Suppl. Affidavit of Ms. Santiago, ¶ 7; Ex. B, Santiago Dep. at 171-172. In fact, she discovered they were inaccurate in that they reflected that Diálogo, LLC had earned a profit when, in fact, it had not. Ex. F, Suppl. Affidavit of Ms. Santiago, ¶¶ 7, 9; *See also* ¶ 89, below.

71.  Disagree. Plaintiffs have mischaracterized Ms. Santiago's testimony. Ms. Santiago testified that she was responsible for all aspects of the day-to-day operation of the newspaper. Ex. B, Santiago Dep. at 123-124.

72.  Agree.

73.  Agree.

74.  Agree.

75.  Agree.

76.  Agree.

77.  Agree.

78.  Agree.

79.  Disagree. See paragraph 83, below.

80.  Agree.

81.  Agree.

82.  Disagree to the extent that plaintiffs imply that the companies that advertised in El Diálogo beginning in June, 2004 were not the same companies that had advertised in Diálogo Bilingue between June, 2003 and May, 2004, they were. Ex. C, Affidavit of Ms. Santiago, ¶¶ 5, 6; Ex. F, Suppl. Affidavit of Ms. Santiago, ¶ 19.

83.  Disagree. Plaintiffs attempt to mischaracterize both the e-mail messages at issue and the testimony of Ms. Santiago by referring to alleged, variously stated, failures on the part of Ms. Santiago to inform Mr. Pike that he was in breach of the Operating Agreement. Plaintiff's

417387

Statement of Material Facts at ¶¶ 79, 83, 85, 87, 93, 97, 102. Each of the e-mail messages referred to is, on its face, an attempt to encourage Mr. Pike to comply with his obligation under the Operating Agreement. Ms. Santiago consistently and repeatedly informed Mr. Pike that he was in breach of the Operating Agreement both through the e-mail messages that plaintiff refers to, in telephone conversations, and in person. Ex. C, Affidavit of Ms. Santiago, ¶¶ 21, 24 - 26, 28 - 33, 38; Ex. F, Suppl. Affidavit of Ms. Santiago, ¶ 8; Ex. B, Santiago Dep. at 135-137, 140, 144, 146, 157-158, 161-162, 195-198, 216, 222, 242-243, 255, 269, 295.

84. Agree.

85. Disagree. See paragraph 83, above.

86. Agree.

87. Disagree. See paragraph 83, above.

88. Agree.

89. Disagree. The financial statement dated January 24, 2005 is inaccurate. Ex. F, Suppl. Affidavit of Ms. Santiago, ¶ 7; Ex. B, Santiago Dep. at 174-180. Ms. Santiago testified that during the period July 1, 2004 through December 31, 2004 Dialogo, LLC operated at a loss. Ex. F, Suppl. Affidavit of Ms. Santiago, ¶ 9; Ex. B, Santiago Dep. at 176-177.

90. Agree.

91. Agree.

92. Agree.

93. Agree. See paragraph 83, above.

94. Agree.

95. Agree.

96. Agree.

417587

97.   Disagree. See paragraph 83, above.

98.   Agree.

99.   Agree.

100.  Agree.

101.  Agree.

102.  Disagree. See paragraph 83, above.

103.  Agree.

104.  Disagree. Ms. Santiago consistently informed Mr. Pike and DMSA that DMSA was in breach of the Operating Agreement by failing to make the $50,000 initial capital investment that was required of it under the Operating Agreement. Ex. C, Affidavit of Ms. Santiago, ¶¶ 21, 24 - 26, 28 - 33, 38; Ex. F, Suppl. Affidavit of Ms. Santiago, ¶ 8; Ex. B, Santiago Dep. at 135-137, 140, 144, 146, 157-158, 161-162, 195-198, 216, 222, 242-243, 255, 269, 295. DMSA did not make "over $40,000 in such out-of-pocket payments" or contribute "$5,000 in management expenses" for the benefit of the newspaper. In fact, DMSA made out-of-pocket expenses totaling $18,618.73 on behalf of Dialogo, LLC. Ex. C, Affidavit of Ms. Santiago at Exhibit "B"; Ex. F, Suppl. Affidavit of Ms. Santiago, ¶¶ 5, 6.

105.  Agree.

106.  Agree.

107.  Agree.

108.  Agree.

109.  Agree.

110.  Disagree. In mid-January of 2005 Ms. Santiago met with Mr. Pike, brought his continuing breach of the Operating Agreement to his attention, told him that their business

417587

relationship had to end, and suggested that one of them buy the other out. Mr. Pike responded, "what do I want with a newspaper?" Ex. C, Affidavit of Ms. Santiago, ¶ 38; Ex. B, Santiago Dep. at 238-239.

111.  Ms. Santiago does not use the bank accounts of Dialogo, LLC and the deposition testimony cited by plaintiff does not support the proposition that she does. Ex. B, Santiago Dep. at 296-97; See Ex. C, Affidavit of Ms. Santiago, ¶ 41.

112.  Disagree. Ms. Santiago did not remove any assets belonging to Dialogo, LLC or DMSA from Suite 405, 250 Open Square Way, Holyoke, Massachusetts. Nor are any of the documents listed "proprietary information." To the extent that they even exist, they existed prior to the involvement of Gerry Pike and DMSA in the newspaper. Affidavit of Ms. Santiago, ¶¶ 5, 6, 16, 40.

113.  Agree.

114.  Disagree to the extent that the use of "El Dialogo" is likely to confuse readers or cause damage to the goodwill of Dialogo, LLC. The newspaper has remained unchanged in its bilingual format, layout, content, advertisements, and advertisers from its inception in 2003. Ex. C, Affidavit of Ms. Santiago, ¶¶ 5, 6. Further, upon information and belief, Mr. Pike is not running a newspaper and has no intention to do so. Ex. C, Affidavit of Ms. Santiago, ¶ 38; Ex. B, Santiago Dep. at 238-239.

115. On July 1, 2004, the first issue of "El Dialogo" was published. Affidavit of Gerry Pike, ¶ 19, attached as Exhibit H. Aside from the slight name change, "El Dialogo" was identical to "Dialogo Bilingue" in all material respects, including the bilingual format, the layout of the paper, the content of the articles and the advertisements. Ex. C, Affidavit of Ms. Santiago, ¶¶ 5, 6. Among its readership, "El Dialogo" came to be known simply as the new name and/or the

417587

continuation of the newspaper formally published by Ms. Santiago as "Dialogo Bilingue." Ex. A.

116. Agree.

117. Agree.

118. Agree.

119. Agree.

120. Agree.

121. Agree.

122. Agree.

                THE DEFENDANTS/
                PLAINTIFFS-IN-COUNTERCLAIM
                LILLIAN SANTIAGO BAUZÁ and
                EL DIÁLOGO, LLC

                By   /s/ Keith A. Minoff
                Keith A. Minoff, Esq., of
                Robinson Donovan Madden & Barry, P.C.
                1500 Main Street, Suite 1600
                Springfield, Massachusetts 01115
                Phone (413) 732-2301 Fax (413) 785-4658
                BBO No.: 551536
                kminoff@robinson-donovan.com

## CERTIFICATE OF SERVICE

I, Keith A. Minoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on January 10, 2006.

Subscribed under the penalties of perjury.

                            /s/ Keith A. Minoff
                          Keith A. Minoff, Esq.

417587