UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                               )
DIALOGO LLC, and               )
DIRECT MERCHANTS, S.A., INC.,  )
                               )
        Plaintiffs,            )
                               )
        v.                     )   CIVIL ACTION NO. 05-30076-MAP
                               )
LILLIAN SANTIAGO BAUZÁ,        )
EL DIALOGO, LLC, and           )
FRANCISCO JAVIER SOLE,         )
                               )
        Defendants.            )
_____)
```

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

      Plaintiffs, Dialogo LLC ("the Company" or "Dialogo, LLC") and Direct Merchants S.A., Inc. ("DMSA") (collectively "Plaintiffs"), respectfully submit this Reply to correct the misstatements of fact and misapplications of law which pervade Defendants Lillian Santiago Bauzá's and El Dialogo, LLC's (collectively, "Defendants") Opposition to Plaintiffs' Motion For Summary Judgment ("Defendants' Opposition").  Try as they might, Defendants cannot transform self-serving revisionist history and wishful paraphrasing of the factual record into grounds for a denial of summary judgment for Plaintiffs.  In short, stripped of its hyperbole, the Defendants' Opposition is a distortion of the undisputed facts in the record and of the applicable law which should not defeat Plaintiffs' Motion For Summary Judgment.

Distilling the undisputed evidence and law to its essence, this Court is left with a straightforward record which demonstrates that:

- Dialogo, LLC owns the rights to the mark "El Dialogo";

- Defendants' contention that prior use of a different mark, "Dialogo Bilingue," somehow creates a material dispute over ownership of the mark, "El Dialogo," fails as a matter of law;

- Defendant Santiago Bauzá breached her obligations and other terms of the Venture and Operating Agreements; and

- As a matter of law, Defendant Santiago Bauzá was not entitled to the "self-help" remedy of wholesale misappropriation of the Company's assets.

Accordingly, each of Defendants' so-called factual disputes, Defendants' Opposition at 2-3, are either immaterial to the core claims in this case, or are met squarely with undisputed evidence supporting each of Plaintiffs' causes of action, as set forth in Plaintiffs' Statement of Undisputed Facts, Plaintiffs' Memorandum in Support of Summary Judgment and discussed, selectively, below.

Plaintiffs therefore respectfully request that this Court grant summary judgment against Defendants on all claims in the Second Amended Complaint, or, in the alternative, on any claims therein.

I.  The Defendants Proffer No Defenses To Defeat, Much Less Dispute, Plaintiffs' Claim That The Company Owns The Rights To The Trademark "El Diálogo."

There is no merit to, and no material disputed issue created by, Defendants' contention that the "El Diálogo" mark was established and used by another corporation, Diálogo Bilingue, Inc. as early as June 2003." Defendants' Opposition at 4. First and foremost, as the Appeals Court for the First Circuit observed, "whatever the relationship between the two trademarks, Santiago implicitly brought to the new venture whatever interest she had in the Dialogo name . . . ." Dialogo, LLC v. Santiago-Bauzá, 425 F.3d 1,

2

4 (1st Cir. 2005) (Boudin, J.). In fact, Defendant Santiago Bauzá testified at her deposition that she [brought] a business to the venture." (PSMF ¶ 57).

Notwithstanding that Defendant Santiago Bauzá brought her prior business to the Company and that the inquiry as to ownership of the "El Dialogo" mark may well end on that undisputed fact alone, Defendants' arguments regarding use of the "El Dialogo" and "Dialogo Bilingue" marks, are completely disconnected from the undisputed factual record – including their own admissions. For example:

- Defendants *admit* that on or about July 1, 2004, the Company published and distributed the first issue of its bilingual newspaper, El Diálogo. It published numerous issues after that, on a biweekly basis, from July, 2004 until February 2005. Am. Compl. II ¶ 24; Answer ¶ 24.

- Defendants *admit* that "[b]efore July 1, 2004, neither Ms. Santiago Bauzá nor Diálogo Bilingue, Inc. had published a newspaper entitled El Diálogo." Am. Compl. II ¶ 25; Answer ¶ 25.

- Defendants *admit* that, in June 2004, Santiago Bauzá launched a new newspaper and "started something new." (PSMF ¶ 32). In mid-June 2004, Santiago Bauzá was in "the process of changing . . . of getting into another venture [Diálogo, LLC]." (PSMF ¶ 34).

- Defendants *admit* that, through a new corporation (Diálogo, LLC), Santiago Bauzá launched a new newspaper, with a "new look, new way of doing that newspaper." (PSMF ¶ 33).

- Defendants *admit* that, as of June 15, 2004, Santiago Bauzá "decided to close Diálogo Bilingue corporation," and that she intended that Diálogo Bilingue would not conduct business any longer. (PSMF ¶ 27).

- Defendants *admit* that, on June 10, 2004, Santiago Bauzá secured the domain name registration "eldialogo.com," acting exclusively on behalf of the Company. (PSMF ¶ 62).

- Defendants *admit* that El Dialogo was a new name, and needed a

3

new website.[1]  Id.

In short, it is undisputed the first use of the "El Dialogo" mark was following the formation of the Company and solely on behalf of Dialogo LLC.

Defendants' reliance on "the secondary meaning doctrine" and Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812 (1st Cir. 1987) to prop up its purported claim to the "El Dialogo" mark is similarly misplaced.  While it may well be that Diálogo Bilingue, Inc. was entitled to trademark protection for the trademark "Diálogo Bilingue" during the period of time that the corporation published the newspaper, as provided in Volkwagenwerk, that case and doctrine have no application to the undisputed facts in this case.  Defendants cannot claim rights to the trademark "El Diálogo" because, by her own admission, Santiago Bauzá and Diálogo Bilingue, Inc. abandoned any rights to "Diálogo Bilingue" or "Diálogo" by discontinuing the publication of "Diálogo Bilingue" and starting a new publication in June 2004.  Even -- assuming arguendo -- that Diálogo Bilingue, Inc. (not Santiago Bauzá) still owned rights to the trademark "Diálogo Bilingue," Diálogo Bilingue, Inc. does not own the rights to "Diálogo" or "El Diálogo" under the "anti-dissection rule."[2]  See Plaintiffs' Motion for Summary Judgment at 12-13.

---

[1] Defendants' argument that in April 2003, "Ms. Santiago and her partners in Dialogo Bilingue purchased the domain name 'Dialogo,'" Defendants' Opposition at 5, is simply unfounded.  As the record demonstrates, one of her Dialogo Bilingue partners, Manuel J. Frau, purchased the domain name (dialogobilingue.com) in April 2003.  (PSMF ¶ 11).  He did not purchase eldialogo.com.  Id.

Furthermore, Defendants' argument – "the 'Dialogo Bilingue' newspaper was commonly known in the community simply as 'Dialogo' or 'El Dialogo,'" Defendants' Opposition at 5, is flatly contradicted by Defendant Santiago Bauzá's own deposition testimony.  (PSMF ¶ 12).

[2] Defendants' attempt to distinguish Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc., 834 F.2d 568 (6th Cir. 1987) is misplaced.  Whether the issue is ownership of a mark or confusion between marks, the same rule of law applies that Defendant may not argue that prior use of the term "Dialogo" in a composite mark creates a right to a different composite mark, "El Dialogo."

Finally, Defendants' contention that judicial estoppel is not applicable in this case is simple incorrect. Judicial estoppel is applicable where an inconsistent position is taken in a prior proceeding, <u>including</u> statements made in the course of trademark applications. <u>See</u> <u>Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.</u>, 333 F. Supp.2d 239, 246 (D. Del. 2004). In <u>Freedom Card</u>, the United States District Court for the District of Delaware applied judicial estoppel to hold that, where a party previously took the position before the United States Patent and Trademark Office that the descriptive term "fuel," when used in conjunction with the FREEDOM CARD mark, eliminated concern that the marks FREEDOM CARD and FUEL FREEDOM CARD would be confusingly similar, it could not argue later that the CHASE housemark in combination with the FREEDOM CARD mark is confusingly similar. <u>Id.</u> Here, where Santiago Bauzá explicitly and indisputably represented in her Massachusetts trademark application that the first use of the mark "El Diálogo" was on July 1, 2004, she is likewise judicially estopped from claiming that Bauzá or Diálogo Bilingue, Inc. ever used the mark "El Diálogo" before July 1, 2004. <u>See also</u> <u>Otis v. Arbella Mutual Ins. Co.</u>, 443 Mass. 634, 639-640, 824 N.E.2d 23 (2005) (and cases cited therein).[3]

II.     Defendants Concede Lillian Santiago Bauzá's Obligations Under The Venture And Operating Agreements And Do Not Dispute Her Breaches Of Those Obligations.

Tellingly, Defendants' <u>Opposition</u> does not dispute that Santiago Bauzá had fundamental obligations under the Venture and the Operating Agreements which she

---

[3] In addition, the principles of equitable estoppel bar Defendant Santiago Bauzá representing to DMSA that she was closing the business of Diálogo Bilingue, Inc. and then subsequently stealing the business and the trademark "El Diálogo" from the Company. <u>See</u> <u>Boylston Development Group, Inc. v. 22 Boylston Street Corp.</u>, 412 Mass. 531, 542, 591 N.E.2d 157, 163 (1992).

simply did not abide by. Indeed, the undisputed facts clearly set forth Defendants' obligations and breaches:

- Under Section 12.7 of the Operating Agreement, Ms. Santiago Bauzá agreed to act exclusively on behalf of the Company, Am. Compl. II ¶ 18 and Ex. 1; Answer ¶ 18. (PSMF ¶ 48).

- Ms. Santiago Bauzá agreed that she "may not resign from the Company prior to the dissolution and winding up of the Company." Am. Compl. ¶ 18 and Ex. 1, at 10; Answer ¶ 18. (PSMF ¶ 48). Under the Operating Agreement, the dissolution and winding up of the Company's affairs require "the written consent of all Members." Am. Compl. II ¶ 20; Answer ¶ 20. (PSMF ¶ 51).

- Under Section 12.8 of the Operating Agreement, Ms. Santiago Bauzá agreed that the proprietary information of the Company was to be kept confidential. Am. Compl. II ¶ 19; Answer ¶ 19. (PSMF ¶ 50).

Yet, at some point, Ms. Santiago Bauzá determined, while working for the Company, that she would was unilaterally closing down the business, Am. Compl. II ¶ 34; Answer ¶ 34; PSMF ¶ 106, and without the consent of knowledge of the Company, she physically moved the business, its assets – including confidential proprietary information – to a new location and a new company. PSMF ¶ 112.

Bound by Defendant Santiago Bauzá's admissions of these and other breaches of the Operating and Venture Agreements, Defendants assert a quintessential red herring in an effort to create a disputed fact -- that DMSA breached the Operating Agreement by failing to make "its promised $50,000 initial capital contribution" and that Santiago Bauzá "was therefore entitled to the self-help remedy of withdrawing from the LLC and taking with her the Company's assets, including the "El Dialogo" mark. Defendants' Opposition at 12-13. As an initial matter, Defendants point to no applicable authority to suggest that, in light of her various breaches of the agreements, Santiago Bauzá was

6

entitled to the self-help of unilaterally closing the Company and taking its assets for her own use, including the "El Dialogo" mark.

Moreover, Plaintiffs did not breach the Venture Agreement or the Operating Agreement. Neither Agreement provided that DMSA would make an initial capital contribution of $50,000 cash. Under the Operating Agreement, the expertise and strategic planning and research that DMSA brought to the company was deemed to constitute a capital investment of $50,000. Indeed, each party explicitly acknowledged that the other had met its contribution obligations at the time of the execution of the agreements, as follows:

> Each Member *has contributed* or is *deemed to have contributed* to the Capital of the Company in the amount set forth opposite the Member's name on Schedule A. The *agreed value* of the Capital Contributions made or *deemed to have been made* by each Member shall be set forth on Schedule A.

PSMF ¶ 52. (emphasis added). Santiago Bauzá confirmed this understanding in her deposition, admitting that she understood that as of June 9, 2004, "either those capital contributions were already made or were deemed to be made." (PSMF ¶ 54). Moreover, the Operating Agreement provided that "No Member shall be required to make any <u>additional</u> capital contribution to the Company." Am. Compl. II ¶ 17 and Ex. 1, at 8; Answer ¶ 17. (emphasis added).

The Venture Agreement also corroborates this understanding, stating that "DMSA shall contribute the initial capital to launch the LLC <u>in an amount DMSA deems appropriate</u>." Defendant Bauzá further confirmed in her deposition that the Venture Agreement "accurately reflected . . . what [DMSA's] obligations [were]." (PSMF ¶ 46). In fact, the First Circuit expressly referred to these provisions in both the Operating

Agreement and Venture Agreement.  Dialogo, LLC, 425 F.3d at 2.  Thus, notwithstanding Defendants' present argument to the contrary, Defendants point to no document, no contractual term, and no other evidence which suggests that DMSA's obligations amounted to a commitment to infuse $50,000 cash into the parties' joint venture as an initial contribution.

Second, even assuming *arguendo* that DMSA breached the Operating Agreement, as a matter of law, Santiago Bauzá's is not entitled, as a matter of law, to the "self-help" exercise of wholesale misappropriation of all the Company's assets.  As an initial matter, by her own admission, Defendant Bauzá concedes that the plain terms of the Operating and Venture Agreements did not allow her to unilaterally shut down the Company, much less appropriate the venture's assets.  (PSMF ¶ 107).   Nor does she cite any case where a party is permitted to exercise the self-help to which Defendant Bauzá availed herself.  In fact, the applicable law is to the contrary.  "Not all breaches of contract by one party will excuse performance by the other.  In evaluating a breach of contract, a court must determine 'whether the defendant's breach entitled the plaintiff merely to recovery for that breach while continuing to abide by the contract, or was so material in all circumstances as to justify the plaintiff in throwing the contract over and suing for the total breach.'"  Dunkin Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp.2d 147, 155 (D. Mass. 2001), quoting Center Garment Co. v. United Refrigerator Co., 369 Mass. 633, 638, 341 N.E.2d 669 (1976).  Here, where the Operating Agreement plainly provides for a claim for breach of the Agreement, the self-help remedy of unilaterally closing the business and absconding with the Company's assets is neither contractually available nor

8

permissible under the governing law. Indeed, upon review of these facts, the First Circuit observed:

> Ordinarily a co-venturer who walks off with the business, which may well be what happened in this case, is likely to be civilly liable . . . It might be debatable whether such a breach automatically entitles one side to seize the business.

Dialogo, LLC, 425 F.3d at 3.

III.    By The Terms Of The Agreements And By Defendant Bauzá's Own Admissions, She Misappropriated The Company's Assets and Breached Her Fiduciary Duty.

Defendants also fail to identify disputed issues of fact to defeat Plaintiffs' claims for misappropriation and breach of fiduciary duty. As discussed above, see infra at 6, Defendant Bauzá admitted her obligations under the Operating and Venture Agreements, including those which identify her fiduciary obligations as a co-venturer, and the undisputed facts demonstrate that she breached those fiduciary duties. Defendant Bauzá likewise misappropriated assets of the Company. Not only is it undisputed that under Section 12.8 of the Operating Agreement, Santiago Bauzá acknowledged the existence of, and need to protect and keep confidential, proprietary information of the Company, Am. Compl. II ¶ 19; Answer ¶ 19, PSMF ¶ 50, but contrary to Defendants' arguments in their Opposition, the Company attracted new clients, new accounts and new business during the course of its operation that were not the same businesses who were clients of Dialogo Bilingue. (PSMF ¶ 82).

Accordingly, Plaintiffs are likewise entitled to summary judgment on these claims, also, as the material facts are admitted and, hence, undisputed.

CONCLUSION

Defendants' Opposition is, simply stated, a failed attempt to conjure up disputed facts by distortion of the evidence and avoidance of the undisputed facts and governing law. For the reasons discussed above and those set forth in detail in Plaintiffs' Memorandum in Support of Summary Judgment, and based upon the materials submitted therewith, this Court should grant Plaintiffs summary judgment on all claims set forth in the Second Amended Complaint and Defendants' Counterclaims or, in the alternative, on any claims therein.

WHEREFORE, the Plaintiffs request that this Court GRANT Plaintiffs' Motion For Summary Judgment.

DIALOGO, LLC and
DIRECT MERCHANTS S.A., INC.

By their attorneys,

Dated: March 3, 2006
/s/ Seth W. Brewster_____
George P. Field (BBO No. 164520)
Seth W. Brewster (BBO No. 551248)
VERRILL DANA, LLP
One Portland Square
Portland, ME 04112-05586
(207) 774-4000

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2006, I electronically filed Plaintiffs' Reply Memorandum In Support Of Plaintiffs' Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Keith A. Minoff, Esq. and Arnold Greenhut, Esq., and I hereby certify that there are no non-registered participants.

/s/ Seth W. Brewster_____