UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIALOGO LLC, and )
DIRECT MERCHANTS, S.A., INC. )
    Plaintiffs )
v ) CIVIL ACTION NO. 05-30076MAP
)
LILLIAN SANTIAGO BAUZA, )
EL DIALOGO, LLC, and )
FRANCISCO JAVIER SOLE )
)
    Defendants )

## REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO SOLE'S MOTION FOR SUMMARY JUDGMENT

A reading of the Plaintiff' Opposition reveals two important points. The first is that the Plaintiffs are in agreement with virtually all of the material facts as presented by the Defendant Sole (hereinafter 'Sole") in his Motion for Summary Judgment. Namely, (a) that Sole was hired to work for the Plaintiffs on or about January 2005, (b) Sole did perform the work for which he was hired, (c) Sole ended his working relationship with the Plaintiffs on or about February 28, 2005, and (d) Sole received approximately $512.00 in commissions. They do not refute or offer proof that he did not receive from the Plaintiffs, $3,000.00 agreed upon compensation for that period of time (6 weeks).

The second is that the Plaintiffs are still under the mistaken belief that a genuine issue of material fact still exists by virtue of their claim that Sole breached a non-

compete/confidentiality agreement he allegedly executed sometime after he commenced work for the Plaintiffs. This argument falls short on a number of grounds:

1. The Plaintiffs arguments are all premised on the existence of this alleged executed document. It has never been produced. The Plaintiffs did not attach a copy to its complaint. The Plaintiffs did not offer it as part of the required automatic disclosure under F.R.C.P. Rule 26. The Plaintiffs never conducted any discovery requesting or asking Sole about the document. The Plaintiffs do not attach an executed copy to their Opposition. They rely on the affidavit of Pike who 'believes' the document was signed, but has no first hand knowledge to support that assertion.

2. Notwithstanding the above, whether or not Sole signed the document is irrelevant, and because it is irrelevant, the Plaintiffs have no basis for any of their claims.

To support the underpinnings to *all* of the Plaintiffs' claims against Sole, the Plaintiffs must argue that Sole acted in concert with the other Defendants, and in fact went to work for the newspaper El Dialogo ('Newco'). And to support their case, the Plaintiffs rely on a single piece of documentation; Soles' appearance on the masthead of the first two issues of Newco.

The rest of the Plaintiff's opposition is based on the affidavit of Pike who relies on what he believes to have occurred, or what he was told by others, but not on his own personal knowledge, and therefore should be stricken.

No other pleading, document or testimony is attached to the Plaintiffs Opposition to support the assertion that Sole breached the alleged non-compete/confidentiality agreement, thus creating a material question of fact that would allow the Plaintiffs to escape this Motion.

On the other hand, there is support for Sole's position that he did not work for Newco. We have his affidavit that specifically denies this contention (affid. of Sole, para 9. ). Mr. Sole states that after Pike refused to compensate him, he resigned and went to work for Bauza and Assoc., a company that does marketing; a company that has nothing to do with Newco or any newspaper.

Self serving, perhaps, but there is also the testimony of Lillian Santiago, the publisher of Newco, whose deposition was taken by the Plaintiffs on May 9, 2005.(see excerpts attached hereto and marked as Ex. 'A') In that deposition, the Plaintiffs asked Santiago specific questions with respect to Sole:

Q: Now I am now turning to what has been marked as Exhibit 55. I'm going to have you look at the list of employees and consultants to the company [Newco] and tell me whether that is accurate? As of March 1

A: It's not accurate because Mr. Sole was no longer with us. That was a mistake.

Q: So you are saying that as of March 1, 2005, Sole was no longer with the company?

A: Yes

Santiago Depo, Ex. 'A' pg 233 Ln 19-34 and pg 234 Ln 1-8

There is further questioning of Ms. Santiago about Sole's relationship to Newco, and her testimony is consistent with the assertions of Sole. He did not, nor does he now work for Newco. She testified that since his resignation on February 28,2005, Sole has been working with her husband, Hector Bauza at his advertising agency. (Santiago Depo, Ex. 'A' pg 236 Ln 5-10, 23-24. Santiago stated that Sole's name on the masthead was "an error", and when she discovered it, she told the printer to remove his name (Santiago Depo Ex 'A', pg 234 Ln 9-20).

3

As one can see from the Plaintiff's opposition, their entire case is premised on Sole's breach of the non-compete/confidentiality agreements. But if Sole is not working for Newco or any other newspaper, where is the basis for their claims?

The Plaintiffs also completely ignore the fact that they never paid Sole for the work he did. Sole had the absolute right to resign and seek compensation from the Plaintiffs.

Based upon what the Plaintiffs have provided in their opposition, there is an absence of evidence to support their case. Under Celotex Corp. v Catrett 106 S. Ct. 2548,2552 (1986) such an absence of evidence would entitle Sole to summary judgment.

Another way of approaching the issue is found in Kourouvacillis v General Motors Corp. 575 NE2d 734,738 (Mass.) (1991). Once a moving party meets its burden, the burden then shifts to the non-moving party to show with *admissible* (emphasis added) evidence, the existence of a dispute as to a material fact. The opposing party must do more than simply rest on its pleadings and mere assertions of disputed fact in order to defeat a motion for summary judgment. In this case, the Plaintiffs rely totally on; (a) an unsigned non-compete/confidentiality agreement, and (b) a newspaper masthead that the publisher states was in error. This would seem to fall short of the standard raised in the above referenced cases. Accordingly, Sole should be entitled to Summary Judgment.

DATED:     March 24, 2006                    The Defendant Francisco Javier Sole,
                                             by his Attorney

                                             _____
                                             ARNOLD GREENHUT, ESQ.
                                             BBO #210150
                                             Greenhut & Catuogno
                                             1331 Main Street
                                             Springfield, MA 01103
                                             Telephone: (413) 785-1520

## CERTIFICATE OF SERVICE

I, ARNOLD GREENHUT, ESQ., hereby certify that on the 24th day of March, 2006, I caused a copy of the foregoing, Reply Memorandum to Plaintiffs' Opposition to Defendant Sole's Summary Judgment to be served on the parties to the case via facsimile and by mailing a copy first class mail, postage prepaid to:

Keith A. Minoff, Esq.
Robinson & Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115

George Field, Esq.
Verrill Dana, LLP
One Boston Place, Suite 2330
Boston, MA 02108

Nancy Pelletier, Esq.
Robinson & Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115

Seth W. Brewster, Esq.
Verrill Dana, LLP
One Boston Place, Suite 2330
Boston, MA 02108

_____
ARNOLD GREENHUT, ESQ.

LILLIAN SANTIAGO-BAUZA
May 9, 2005

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DIALOGO, LLC and                    \*

DIRECT MERCHANTS S.A, INC.,         \*

              Plaintiffs \*

vs.                                 \* No. 05-30076-MAP

LILLIAN SANTIAGO-BAUZA,              \*

EL DIALOGO, LLC and                  \*

FRANCISCO JAVIER SOLE,               \*

              Defendants \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

VIDEO DEPOSITION OF:

LILLIAN SANTIAGO-BAUZA

BULKLEY, RICHARDSON & GELINAS

1500 Main Street, Suite 2600

Springfield, Massachusetts

May 9, 2005

(10:12 a.m. to 5:34 p.m.)

Tacy A. Malandrinos

Court Reporter

CATUOGNO COURT REPORTING SERVICES
Springfield, MA    Worcester, MA    Boston, MA    Providence, RI    Manchester, NH

**LILLIAN SANTIAGO-BAUZA**
May 9, 2005



Page 233

```
19    Q.    Now I am now turning to what has
20   been marked as Exhibit 55. Now Exhibit 55, I'm
21   going to have you look at the list of employees
22   or consultants to the company and tell me
23   whether that is accurate?
24         MR. MINOFF:  As of March 1?
```

59 (Pages 230 to 233)

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Providence, RI   Manchester, NH

# LILLIAN SANTIAGO-BAUZA
## May 9, 2005

### Page 234

1  MR. BREWSTER: As of March 1.
2  THE WITNESS: It's not accurate
3  because Mr. Francisco Sole was no longer
4  with us. That was a mistake.
5  Q. (By Mr. Brewster) So you are
6  saying that as of March 1, 2005 Sole was no
7  longer with the company, is that right?
8  A. Yes.
9  Q. With respect to that version as you
10 can compare what has previously been marked as
11 Exhibit 54, Gabriela's name has been removed
12 from that, is that right?
13 A. Yes.
14 Q. But Mr. Sole's name had not been?
15 How did that happen?
16 A. I had a conversation with Anna. I
17 call her immediately and I said you forget to
18 delete Mr. Sole out of Dialogo. He is no longer
19 with us. You can see in the next edition we
20 corrected that immediately.
21 Q. Now Gabriela had essentially
22 suddenly resigned on the 28th of February, isn't
23 that right?
24 A. Yes.

### Page 235

1  Q. So immediately before this
2  publication came out, is that right?
3  Immediately before the March 1 publication came
4  out?
5  A. Yes. This publication came out the
6  7th.
7  Q. And however there had been time
8  enough to remove her from that list, is that
9  right?
10 A. Yes. Because another graphic
11 artist was doing the design and he is going to
12 put his name there. He is going to get credit
13 for what he is doing. He is going to remove
14 her.
15 Q. But she had not given two weeks
16 notice like Mr. Sole, is that right?
17 A. No.
18 Q. And again, I'm going to show you
19 what has been previously marked as Exhibit 56.
20 Again that's also inaccurate because Mr. Sole
21 was no longer with the company in that version,
22 is that right?
23 A. That's correct.
24 Q. And the same applies to the April 1

### Page 236

1  edition, is that right?
2  A. Yes.
3  Q. When was the last time you
4  communicated with Mr. Sole?
5  A. I communicate with Mr. Sole often
6  because he work for Open Square now, so he is
7  doing property management and contract or
8  whatever with Mr. John Aubin. And he is working
9  with my husband in advertising in the
10 advertising agency.
11 Q. So you have been in constant
12 communication with Mr. Sole since February 28?
13 A. Not constant, but yes, I talk to
14 him.
15 Q. You see him on a regular basis?
16 A. Yes.
17 Q. And his job is with your husband in
18 advertising and sales?
19 A. No.
20 Q. What?
21 A. My husband doesn't need anybody to
22 sell for him.
23 No. It's mainly consulting. He
24 works with my husband in presentations and so

### Page 237

1  forth, so he is basically consulting. He is not
2  an employee. He is not -- it's just consulting.
3  Q. With respect to Exhibit 55 of the
4  publication. Exhibit 55 is simply a
5  continuation of El Dialogo, is that right?
6  What had been previously
7  published?
8  A. El Dialogo newspaper?
9  Q. Yes.
10 A. Yes.
11 Q. So therefore while Exhibit 54, the
12 February 15 edition, had volume two number two,
13 Exhibit 55 had volume two number three, is that
14 right?
15 A. Yes.
16 Q. So this was not a new enterprise?
17 A. It was new to me.
18 Q. Well, with respect to, it is the
19 same old newspaper, just in a different company,
20 is that right?
21 A. Yes.
22 Q. And that's, the same applies for
23 Exhibit 56 and Exhibit 57. It's just a
24 continuation of the newspaper, again volume two,

60 (Pages 234 to 237)