```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MASSACHUSETTS


DIÁLOGO, LLC, ET AL.,           )
        PLAINTIFFS              )
                                )
        v.                      )    C.A. No. 05-30076-MAP
                                )
LILLIAN SANTIAGO BAUZÁ,         )
ET AL.,                         )
        DEFENDANTS              )
```

### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 48)

September 29, 2006

PONSOR, D.J.

## I. INTRODUCTION

This is a suit brought by Plaintiffs Diálogo, LLC and Direct Merchants S.A., Inc. ("DMSA") against Defendants Lillian Santiago Bauzá ("Santiago"), El Diálogo, LLC, and Francisco Javier Solé ("Solé"). Plaintiffs have asserted claims against Solé for breach of contract, misappropriation of trade secrets, conversion, tortious interference with contractual relations, and unjust enrichment. Solé denies Plaintiffs' allegations and has set forth a counterclaim for breach of contract and fraudulent misrepresentation.

Pending before the court is Solé's motion for summary judgment on every claim brought against him by Plaintiffs and each counter-claim brought by him against Plaintiffs. For the reasons set forth below, this motion will be allowed

in part and denied in part.

## II. FACTS

The following facts are set forth in the light most favorable to Diálogo, LLC and DMSA, the non-moving parties. See Napier v. F/V DEESIE, Inc., 454 F.3d 61, 63 (1st Cir. 2006) (citation omitted).

Diálogo, LLC is a limited liability company organized under the laws of Maine for the purpose of developing Spanish language and bilingual print and media business. Pursuant to a Venture Agreement and Operating Agreement executed on June 9, 2004, Diálogo, LLC has two members: DMSA and Santiago.

In July, 2004, Diálogo, LLC began publishing El Diálogo, a bilingual newspaper based in Holyoke, Massachusetts.[1] In early January, 2005, Solé met with Santiago and Gerry Pike, the Managing Director of DMSA, to discuss the possibility of Solé's working on behalf of Diálogo, LLC. During this meeting, the parties talked about whether Solé would serve as a consultant or employee and how (and how much) he might be paid.

---

[1] Plaintiffs and Santiago vigorously dispute whether El Diálogo was a continuation of Diálogo Bilingue, a bilingual newspaper previously published by Santiago, her husband, and two other partners. At this point, the court has not determined whether El Diálogo was a continuation of an old newspaper or a new one.

On January 6, 2005, Santiago sent Solé a letter offering him the position of Director of Advertising Sales.  See Dkt. No. 68, Ex. A, Letter from Lillian Santiago Bauzá, Publisher, Diálogo, LLC, to Francisco Javier Solé (Jan. 6, 2005).)  In the letter, Santiago stated that Solé would earn a base salary of $2,000 a month and a commission on advertising sales.  (Id. at 1.)

On January 11, 2005, Solé signed the letter and faxed it back to Santiago, thereby accepting the offer.  (Id. at 2.) That same day, Solé sent a letter to Santiago stating that he was "pleased to accept the offer" and that he would "begin work on January 17, 2005."  (Dkt. No. 68, Ex. B, Letter from Francisco Javier Solé to Lillian Santiago Bauzá, Publisher, El Diálogo (Jan. 11, 2005).)

On January 14, 2005, Pike sent an e-mail to Solé, thanking him for accepting Diálogo, LLC's offer.  (Dkt. No. 68, Ex. C, E-mail from Gerry Pike, Managing Director, DMSA, to Francisco Javier Solé (Jan. 14, 2005, 20:38 EST).)  Pike also attached to the e-mail a copy of a Confidentiality and Non-Compete Agreement and asked Solé to sign it and return one copy by fax to Santiago and another to him.  (Id.)

During a subsequent meeting with Santiago and Solé, Pike claims that he saw Solé sign the Confidentiality and Non-Compete Agreement.  (Dkt. No. 68, Pike Aff. ¶ 6, Mar. 3,

2006.) According to Pike, "Santiago retained a copy of this signed agreements [sic] on behalf of DMSA." (Id.)

The Confidentiality and Non-Compete Agreement set forth, among other things, a definition of "Proprietary Information" that included:

> (a) advertising clients, marketing and advertising plans and studies; (b) proprietary consumer research; (c) methods of operation and distribution; (d) statistical data and analyses; (e) know-how; (f) trade secrets; (g) product and/or service concepts, designs and specifications; (h) production processes and procedures; (i) existing and proposed agreements; (j) business records; (k) financial statements and data; (l) employee information; and, (m) any notes, analyses, studies, or compilations, summaries, or other information derived or generated from or reflecting ongoing operations of Diálogo and its clients.

(Dkt. No. 68, Ex. D, Confidentiality & Non-Compete Agreement ¶ 1.) Pursuant to this agreement, such proprietary information was the exclusive property of Diálogo, LLC and was not to be used or disclosed in any way without the prior written consent of Diálogo, LLC. (Id. at ¶ 2.) The Confidentiality and Non-Compete Agreement also prohibited Solé from owning, managing, operating, consulting, or engaging in a substantially similar business for twenty-four months following his departure from Diálogo, LLC. (Id. at ¶¶ 8, 9.)

On January 17, 2005, Solé began working for Diálogo, LLC. (Dkt. No. 48, Solé's Mot. Summ. J. 3; Dkt. No. 67,

Pls.' Resp. to Solé's Statement of Uncontested Material Facts ¶ 2.)  On February 3, 2005, Santiago sent Pike an e-mail indicating that Solé had signed the Confidentiality and Non-Compete Agreement.  (Dkt. No. 68, Ex. E, E-mail from Lillian Santiago to Gerry Pike (Feb. 3, 2005, 14:15 EST).)

On February 14, 2005, Santiago wrote a check to Solé for $505.25, stating in the memo line that it was for a January 15th commission.  It is undisputed that Solé was never paid his base salary and that this was the only compensation Solé received during his tenure as Diálogo, LLC's Director of Advertising Sales.

On February 28, 2005, Solé tendered his resignation. (Solé's Mot. Summ. J. 3; Pls.' Resp. to Solé's Statement of Uncontested Material Facts ¶ 4.)  Although Solé and Santiago claim Solé never worked for Santiago's new publishing company, El Diálogo, LLC, his name appeared on the masthead of the March 15, 2005 and April 1, 2005 editions of <u>El Diálogo</u>, and he was listed as the company's Sales Director on its website until March 23, 2005.  (Pike Aff. ¶ 12.) Based on the foregoing, Plaintiffs allege that Solé violated his Confidentiality and Non-Compete Agreement by working for Santiago's company within twenty-four months of leaving Diálogo, LLC.

On April 26, 2005, Plaintiffs filed their second amended

complaint, asserting claims for: violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); violation of Mass. Gen. Laws ch. 93A, § 11 (Count II); common law trademark infringement and unfair competition (Count III); breach of contract by Santiago (Count IV); breach of contract by Solé (Count V); misappropriation of trade secrets resulting in damages (Count VI); misappropriation of trade secrets necessitating injunctive relief (Count VII); conversion (Count VIII); breach of fiduciary duties by Santiago (Count IX); tortious interference with contractual relations by Santiago (Count X); tortious interference with contractual relations by Solé (Count XI); unjust enrichment (Count XII); constructive trust (Count XIII); a declaratory judgment concerning the trademark "El Diálogo" (Count XIV); violation of Mass. Gen. Laws ch. 110B, § 10 by Santiago and El Diálogo, LLC (Count XV); and violation of Mass. Gen. Laws ch. 110B, § 11 by Santiago and El Diálogo, LLC (Count XVI).

On May 5, 2005, Solé filed his answer and asserted a counterclaim for breach of contract and fraudulent misrepresentation.[2] On May 25, 2005, Plaintiffs denied

---

[2] Solé's answer and counterclaim seem to have come in response to Plaintiffs' first amended complaint. (See Dkt. No. 22, Solé's Answer to First Am. Compl. & Countercl.) Ordinarily, this might be a source of concern. In this case, however, the only difference between Plaintiffs' first and second amended complaints involves Count XVI, which does not concern Solé. It also bears noting that instead of raising

Solé's allegations and asserted a cross-claim for indemnification against Santiago.

### III. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the moving party "has asserted that no genuine issue of material fact exists, the party opposing summary judgment has the burden of pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." Council of Ins. Agents & Brokers v. Juarbe-Jimenez, 443 F.3d 103, 107 (1st Cir. 2006) (internal quotation marks and citation omitted).

Establishing the existence of a trialworthy issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Instead, the

---

this issue, Plaintiffs tendered an answer to Solé's counterclaim and filed a cross-claim against Santiago.  (See Dkt. No. 35, Pls.' Reply to Solé's Countercl. & Cross-cl. against Santiago.)

nonmoving party must present "enough competent evidence" to permit a rational trier of fact to find in its favor. Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (citations omitted).

A.  Plaintiffs' Second Amended Complaint.[3]

    1.  Breach of Contract (Count V).

Although Plaintiffs have not produced a signed copy of the Confidentiality and Non-compete Agreement, the facts, taken in the light most favorable to them, do suggest that Solé executed the agreement. (See E-mail from Lillian Santiago to Gerry Pike (Feb. 3, 2005, 14:15 EST) ("[Solé] is very clear in the confidentiality and non-compete agreement he signed . . . .").) Likewise, while Santiago and Solé aver that Solé never worked for Santiago's new company, evidence that Solé's name appeared on El Diálogo mastheads after his resignation from Diálogo, LLC could convince a reasonable juror otherwise. Accordingly, neither of Solé's

---

[3] While at least eight of the sixteen counts found in the second amended complaint appear to assert misconduct by Solé, Plaintiffs have made no effort to prosecute claims against Solé for violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), violation of Mass. Gen. Laws, ch. 93A, § 11 (Count II), or common law trademark infringement and unfair competition (Count III). Consequently, the court will allow Solé's motion for summary judgment with respect to these claims. Macaulay v. Anas, 321 F.3d 45, 52 (1st Cir. 2003) ("It is one thing to tick off a laundry list of potential theories at the start of litigation. It is quite another to develop the theories that actually will be prosecuted and keep them in play." (citation omitted)).

first two arguments entitles him to summary judgment with respect to Plaintiffs' breach of contract claim. The problem, from Plaintiffs' perspective, is the undisputed fact that Diálogo, LLC never paid Solé the base salary it promised him when he accepted the company's offer.

It is well-established that "[a] material breach by one party excuses the other party from further performance under the contract." Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 11 (1st Cir. 2006) (citing Lease-It, Inc. v. Mass. Port Auth., 600 N.E.2d 599, 602 (Mass. App. Ct. 1992)). In Massachusetts, a material breach occurs when one party fails to perform "an essential and inducing feature of the contract." Id. (internal quotation marks and citation omitted).

While the question of whether a breach is material is typically one for the jury, Prozinski v. Ne. Real Estate Servs., LLC, 797 N.E.2d 415, 423 (Mass. App. Ct. 2003) (citations omitted), cases do arise where the "materiality question . . . admits . . . only one reasonable answer," Teragram Corp., 444 F.3d at 11 (stating that when "the evidence on the point is either undisputed or sufficiently lopsided," a court "must intervene and address what is ordinarily a factual question as a question of law" (citations omitted)). Diálogo, LLC's primary obligation

under the contract was to pay Solé for the work he did. Having failed to do so, Plaintiffs cannot recover for any damages based on Solé's alleged refusal to abide by his end of the bargain. See id. ("[O]nce relieved from performance, the injured party is not liable for further damages incurred by the party in material breach." (citing Lease-It, 600 N.E.2d at 602)).

    2.    <u>Misappropriation of Trade Secrets (Count VI)</u>.

In opposing Solé's motion for summary judgment, Plaintiffs claim that Solé violated his agreement "to protect and keep confidential . . . information regarding advertising clients, marketing and other advertising," as well as his pledge not to compete with Diálogo, LLC for two years following his departure from the company.

While Massachusetts case law clearly proscribes a former employee from misappropriating trade secrets acquired during his former employment, the employer must establish that the "information sought to be protected is, in fact and in law, confidential." <u>Warner-Lambert Co. v. Execuquest Corp.</u>, 691 N.E.2d 545, 547 (Mass. 1998) (citing <u>Jet Spray Cooler, Inc. v. Crampton</u>, 282 N.E.2d 921 (Mass. 1972)). To do so, an employer must point to specific information conveyed to the erstwhile employee and explain

> (1) the extent to which the information is known outside of the business; (2) the extent to which it

> is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

<u>Moore v. Marty Gilman, Inc.</u>, 965 F. Supp. 203, 217 (D. Mass. 1997) (citing <u>Jet Spray Cooler</u>, 282 N.E.2d at 925)).

In this case, Plaintiffs' submissions either track the language of Mass. Gen. Laws ch. 93, § 42 (<u>see</u> Pls.' Second Am. Compl. ¶¶ 78, 79 (alleging that Solé' "embezzled, stole[] or unlawfully carried away, concealed, or copied, or by fraud or deception obtained" at least one "tangible or intangible or electronically kept or stored [item], which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement")), or recite the terms of the Non-Compete and Confidentiality Agreement.  Conspicuously absent is any indication of what information Solé is alleged to have misappropriated.  While the record reflects that Plaintiffs did take certain measures to protect company information, the court cannot infer that this information was not widely known, valuable and/or not easily duplicated.

Moreover, to the extent that this claim rests upon the

11

(disputed) fact that Solé breached the non-compete agreement by working for Santiago's new company, it is "plain that a material breach of an employment agreement by an employer may discharge an employee from further obligation under a non-compete provision of that agreement." Intertek Testing Ser. Na, Inc. v. Dash, No. 98903F, 2001 WL 1174178, at *1 (Mass. Super. July 20, 2001) (citing Ward v. Am. Mut. Liab. Ins. Co., 443 N.E.2d 1342 (Mass. App. Ct. 1983)).[4]

As previously noted, Diálogo, LLC materially breached its contract with Solé by failing to pay him a base salary of $2,000 a month.  Consequently, Solé could not be held liable for working for another bilingual newspaper business by virtue of his purported execution of a non-compete agreement.

    3.    <u>Conversion (Count VIII)</u>.

In their second amended complaint, Plaintiffs contend that Solé took "the property, assets, equipment, employees, goodwill, and confidential information of Diálogo, LLC . . .

---

[4] Like the restrictive covenant in Intertek Testing, the non-compete provision in this case was not contained in the employment agreement that Diálogo, LLC breached.  However, unlike Intertek Testing, there is no evidence that Solé received separate consideration for signing the Non-Compete Agreement.  Accordingly, Diálogo, LLC's material breach of Solé's employment agreement excuses Solé from any obligation to refrain from competition.  See Lantor Inc. v. Ellis, No. CIV. A. 98-01064, 1998 WL 726502, at *8-9 (Mass. Super. Oct. 2, 1998).

[w]ithout authorization . . . and transferred such assets to El Diálogo, LLC." (Second Am. Compl. ¶ 87.)

Under Massachusetts law, a plaintiff asserting a conversion claim must demonstrate that:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993) (citations omitted)).

Citing "the parties['] dispute" over whether Solé absconded with the property of Diálogo, LLC, Plaintiffs' argue that their claim for conversion "is [not] ripe for summary judgment." (Dkt. No. 66, Pls.' Mem. Opp'n Solé's Mot. Summ J. 7.) The court cannot agree. This cause of action is, in fact, ripe for summary judgment because Plaintiffs have offered no evidence on an essential element of their case. Specifically, Plaintiffs have not shown that Solé refused their demand for property in which Plaintiffs had an ownership or possessory interest. As the First Circuit has observed, "[w]here a defendant's possession is not wrongful in its inception, demand and refusal are

prerequisites to an action for conversion." In re Halmar Distributors, Inc., 968 F.2d 121, 129 (1st Cir. 1992) (citing Atl. Fin. Corp. v. Galvam, 39 N.E.2d 951 (Mass. 1942); Abington Nat'l Bank v. Ashwood Homes, Inc., 475 N.E.2d 1230 (Mass. App. Ct. 1985)). Because Plaintiffs have not fulfilled these prerequisites, the court must allow Solé's motion for summary judgment with respect to Plaintiffs' claim for conversion.

    4.   Tortious Interference with Contract (Count XI).

To set forth a claim for tortious interference with contractual relations, a plaintiff must demonstrate: (1) the existence of a contract from which the plaintiff might benefit; (2) the defendant's awareness of the contract; (3) the defendant's deliberate interference with the contract for an improper purpose or by improper means; (4) and damage suffered by the plaintiff by that interference. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 245 (Mass. App. Ct. 2004) (citing United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20 (Mass. 1990); Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333 (Mass. 1996)), review denied by 818 N.E.2d 1068 (Mass. 2004). In an attempt to satisfy this burden, Plaintiffs allege that Solé improperly interfered with Diálogo, LLC's contractual relationship with Santiago "through the means of fraud

14

and/or intimidation" and thereby caused Plaintiffs harm. (Second Am. Compl. ¶¶ 99-102.)

"[A]lthough specificity is not required at the pleading stage, it is required at the summary judgment stage." <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 151 (1st Cir. 2006) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002)). Because this theory of liability relies exclusively on unsubstantiated speculation, it cannot survive Solé's motion for summary judgment. <u>See</u> <u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 366-67 (1st Cir. 2004) ("[C]onclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat summary judgment." (internal quotation marks and citation omitted)).

    5.    <u>Unjust Enrichment</u>.

"To satisfy the elements of unjust enrichment, a plaintiff must show: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." <u>Massachusetts v. Mylan Labs.</u>, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (citation omitted). In support of their unjust enrichment claim, Plaintiffs assert that Solé accepted certain benefits, conferred upon him by Plaintiffs, which he should

15

not be entitled to keep without reimbursing Plaintiffs for their value.

Solé's motion for summary judgment will be allowed with respect to this cause of action. Once again, Plaintiffs have failed to specify what exactly Solé received. Significantly, the record clearly reflects what Solé did <u>not</u> receive, <u>i.e.</u>, the base salary Diálogo, LLC promised to pay when Solé signed on as Sales Director.

B.  <u>Solé's Counterclaims</u>

    1.  <u>Breach of Contract</u>.

Solé's motion for summary judgment will be allowed with respect to this counterclaim, on the issue of liability, for the reasons set forth in Section III.A.1. Whether Solé can recover significant damages on this claim is debatable and must await trial.

    2.  <u>Fraudulent Misrepresentation</u>.

An action for fraudulent misrepresentation requires a plaintiff to prove that the defendant: "made a false representation of material fact; for the purpose of inducing reliance; and that [the] plaintiff relied upon the representation to his or her detriment." <u>Cummings v. HPG Intern., Inc.</u>, 244 F.3d 16, 22 (1st Cir. 2001) (citing <u>Danca v. Taunton Sav. Bank</u>, 429 N.E.2d 1129, 1133 (Mass. 1982); <u>Snyder v. Sperry & Hutchinson Co.</u>, 333 N.E.2d 421, 428

(Mass. 1975)).  Although this counterclaim is not entirely clear, Solé appears to argue that Plaintiffs fraudulently misrepresented how he would be paid and whether he would serve Diálogo, LLC as a consultant or an employee.

Plaintiffs deny these allegations, and in this instance, the disputed facts are material and must be resolved before liability can be determined.  Consequently, Solé's motion for summary judgment with respect to this counterclaim must be denied.

## IV. CONCLUSION

For the reasons stated above, the court hereby ALLOWS Solé's motion for summary judgment with respect to every claim brought against him by Plaintiffs.  The court also ALLOWS Solé's motion for summary judgment as to liability with respect to his breach of contract counterclaim and DENIES Solé's motion for summary judgment with respect to his counterclaim for fraudulent misrepresentation.

The clerk will set this case for a status conference to determine further proceedings.

It is So Ordered.

                                       /s/ Michael A. Ponsor
                                       MICHAEL A. PONSOR
                                       U. S. District Judge