UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| DIALOGO, LLC and | ) | |
| DIRECT MERCHANTS S.A., INC., | ) | CIVIL ACTION NO. 05-30076-MAP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LILLIAN SANTIAGO BAUZA, | ) | |
| EL DIALOGO, LLC, and | ) | |
| FRANCISCO JAVIER SOLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT/PLAINTIFF-IN-
COUNTERCLAIM LILLIAN SANTIAGO BAUZA'S MOTION FOR LEAVE TO
FILE FOR PARTIAL RECONSIDERATION**

Pursuant to Local Rule 7.1(b)(2), Plaintiffs Dialogo, LLC and Direct Merchants

S.A., Inc. ('DMSA") (collectively, "Plaintiffs") file their opposition to

Defendant/Counterclaim-Plaintiff Lillian Santiago Bauza's ("Santiago's") motion for

leave to file a motion for reconsideration on the Court's entry of summary judgment on

Count III of Santiago's Counterclaim, which is a claim based on an alleged violation of

Mass. Gen Laws Ch. 93A, § 11.

**STANDARD FOR MOTION FOR RECONSIDERATION**

A federal district has the discretion to reconsider its orders and revise them at any

time prior to final judgment.  See Bethleham Steel Export Corp. v. Redondo Constr.

Corp., 140 F.3d 319, 321 (1st Cir. 1998).  A district court must balance the need for

finality against the duty to render just decisions.  Davis v. Lehane, 89 F. Supp.2d 142,

147 (D. Mass. 2000).  The court therefore should grant a motion for reconsideration only

when there is (1) an intervening change in the law; (2) the discovery of new evidence not

previously available; or (3) a clear error in law in the first order.  Id. at 147.  See Graham

v. Malone Freight Lines, 43 F. Supp.2d 77, 79 (D. Mass 1997) (stating that a motion for

reconsideration is appropriate when a court made a clear error of law).

## THE COURT'S RULING

In its Memorandum and Order Regarding Plaintiff's Substitute Motion for

Summary Judgment dated December 18, 2006 (Dkt. No. 76), the Court ruled on Count III

of Santiago's Counterclaim as follows:

> Like Plaintiffs, Defendants argue § 17.9 of the Operating Agreement
> should not preclude their invocation of Mass. Gen. Laws ch. 93A, § 11
> since their cause of action pursuant to this provision is rooted in conduct
> that occurred outside the parties' contract. Specifically, they state that their
>
> > 93A counterclaim is based on a misrepresentation made by
> > . . . Pike to . . . Santiago that he would contribute $50,000
> > in starting capital towards their new venture which induced
> > . . . Santiago to quit her job and enter into the Operating
> > Agreement with . . . Pike's company, DMSA."
>
> (Dkt. No. 74, at 2).
>
> As noted above, § 4.1 of the Operating Agreement does not compel either
> party to do anything, but merely acknowledges their past capital
> contributions to establish their respective membership interests. Based on
> the plain language of this provision, Santiago's reliance on a prior
> misrepresentation by Pike concerning DMSA's willingness to contribute
> $50,000 in cash was unreasonable. Accordingly, the court will allow
> Plaintiffs' motion for summary judgment with respect to Count III of
> Defendants' counterclaim.

Dkt. No. 76, at 47.  The Court's ruling is based, in part, upon Santiago's representation to

the Court in her summary judgment papers that "[t]he defendants' 93A counterclaim is

based on a misrepresentation made by Gerry Pike to Ms. Santiago that he would

contribute $50,000 in starting capital towards their new venture which inclined Ms.

Santiago to quit her job and enter into the Operating Agreement with Mr. Pike's company

DMSA." Dkt. No. 74, at 2.

### THE COUNTERCLAIM

In fact, the Court's ruling -- that the only alleged misrepresentation set forth in the

Counterclaim is the alleged misrepresentation about the $50,000 capital contribution -- is

consistent with the Counterclaim itself. The Counterclaim expressly sets forth the

alleged misrepresentation:

- "More specifically, Mr. Pike proposed to Ms. Santiago the following: (a) that DMSA would establish a capital account with 'starting capital' of $50,000 from which to draw as needed; . . ." Counterclaim, ¶ 9 (Dkt. No. 16).

- "Although DMSA had promised to provide 'starting capital' of $50,000 and the Operating Agreement and Members Agreement so provided, . . ." Counterclaim, ¶ 12 (Dkt. No. 16).

- "Ms. Santiago spoke or met with Mr. Pike eight to ten times to discuss the need for DMSA living up to its part of the Venture by supplying the promised $50,000 in 'starting capital'." Counterclaim, ¶ 15 (Dkt. No. 16).

- "Mr. Pike represented, on behalf of DMSA, that DMSA would establish a capital account and contribute $50,000 in 'starting capital' to the joint venture from which to draw as needed." Counterclaim ¶ 20 (Dkt. No. 16).

This alleged misrepresentation -- the alleged promise to make a $50,000 capital

contribution -- is the only alleged misrepresentation in the Counterclaim.

Santiago refers to the Court's ruling on Count II (misrepresentation claim) of the

Counterclaim and argues, "In fact, the Chapter 93A claim, like the misrepresentation

claim set forth in Count II of the counterclaim, is based also on Mr. Pike's representation

that DMSA would "provide other necessary financial support to the joint venture. (See

Defendant's Counterclaim at ¶ 23 . . . .)." There is, however, no alleged

mispresentation in Count II of the Counterclaim that "DMSA would provide other

3

necessary financial support to the joint venture." See Dkt. No. 77, at 2.  Count II of the

Counterclaim provides, in relevant part:

> 20.     Mr. Pike represented, on behalf of DMSA, that DMSA
> would establish a capital account and contribute $50,000 in "starting
> capital" to the joint venture from which to draw upon as needed.
>
> 21.     This representation was material to Ms. Santiago's decision
> to quit her job at Holyoke Medical Center and devote her full time and
> energies to the joint venture and enter into the Venture Agreement and
> Operating Agreement and Members Agreement with DMSA.
>
> 22.     DMSA knew that Ms. Santiago considered these
> representations to be material.
>
> 23.     DMSA knew or should have known when it made these
> representations to Ms. Santiago that DMSA had no intention of
> establishing a capital account or contributing $50,000 in "starting capital"
> or providing other necessary financial support to the joint venture.
>
> 24.     DMSA made these representations to induce Ms. Santiago
> to enter into the Venture Agreement and Operating Agreement and
> Members Agreement.
>
> 25.     Ms. Santiago reasonably relied upon these representations.

Counterclaim, ¶ ¶ 20 - 25 (Dkt. No. 16).   As paragraph 20 of the Counterclaim makes

clear, the only alleged mispresentation is the one about the $50,000 capital contribution.

Counterclaim, ¶ 20.

Paragraph 23 (of the Counterclaim) does not allege that DMSA made a

representation about "providing other necessary financial support to the joint venture."

Instead, Paragraph 23 provides, in relevant part.

> . . . DMSA had no intention of . . . providing other necessary financial
> support to the joint venture.

Id. at ¶ 23.  Of course, Defendants' response to Plaintiffs' Statement of Facts is consistent

with the Counterclaim: "Ms. Santiago testified that Gerry Pike promised Ms. Santiago

that DMSA would invest $50,000 in starting capital for Dialogo, LLC, and that she

would not have entered into an agreement with Mr. Pike or DMSA absent such an

undertaking." Defendants' Response to Plaintiffs' Statement of Material Facts, ¶ 17, at 2

-3 (Dkt. No. 58).

Nowhere in the Counterclaim, discovery, or the summary judgment pleadings did

Santiago allege that Plaintiffs made the mispresentation that they "needed provide other

necessary financial support to the joint venture." Pursuant to Rule 9(b) of the Federal

Rules of Civil Procedure, "the circumstances constituting fraud . . . should be stated

with particularity." Fed. R. Civ. P. 9(b). Specifically, the fraud/misrepresentation

allegations must specify time, place and context of the alleged false representations.

United States ex rel. Karvelas v. Melrose - Wakefield Hosp., 360 F.3d 220, 226 (1st Cir.

2004), citing Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 -19 (1st Cir. 2002). There

is no allegation in the action that sets forth the time, place, and other details of any

allegation about "providing other necessary financial support to the joint venture."[1]

---

[1] As set forth above, the Counterclaim itself does not state that this is a false representation that was made.
Supra at 3-4.

## CONCLUSION

For the reasons set forth, the Court should deny Defendant Santiago's motion for

leave to file a motion for reconsideration.

                                        DIALOGO, LLC and
                                        DIRECT MERCHANTS S.A., INC.

                                        By its attorneys,


Dated:   January 17, 2007               /s/ Seth W. Brewster
                                        George Field (BBO No. 164520)
                                        Seth W. Brewster (BBO No. 551248)
                                        Attorneys for Plaintiffs
                                        Verrill Dana, LLP
                                        One Boston Place
                                        Suite 2330
                                        Boston, MA  02108
                                        (617) 367-0929
                                        gfield@verrilldana.com
                                        sbrewster@verrilldana.com


## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2007, I electronically filed Plaintiffs' Opposition to Defendant/Plaintiff-In-Counterclaim Lillian Santiago Bauza's Motion For Leave To File For Partial Reconsideration with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:  Keith A. Minoff, Esq. and Arnold Greenhut, Esq., and I hereby certify that there are no non-registered participants.

                                        /s/ Seth W. Brewster

6